# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CRISTINA NICHOLE IGLESIAS (a.k.a.** ) | |
| **CRISTIAN NOEL IGLESIAS),** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 19-cv-00415-JPG** |
| **vs.** ) | |
| ) | |
| **WARDEN TRUE,** ) | |
| **IAN CONNORS,** ) | |
| **DEBORAH SCHULT** ) | |
| **ALIX McLEAREN,** ) | |
| **DONALD TRUMP and** ) | |
| **JOHN DOES #1-10,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

Plaintiff Cristina Iglesias, an inmate with the Federal Bureau of Prisons ("BOP") who is currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority that occurred in connection with her placement and treatment in a male-only prison facility under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e. Plaintiff seeks injunctive, declaratory and monetary relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. See 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C.

1

§ 1915A(b).  At this juncture, the factual allegations of the pro se complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff is a transgendered inmate, anatomically male but identifying as female.[1]  (*Id.*, pp. 2, 7).  She has been diagnosed with gender dysphoria and has been receiving hormone replacement therapy since 2015.  (*Id.*, pp. 7, 48).  Plaintiff has also been diagnosed with borderline personality disorder.  (*Id.*, p. 48).  She is being held at USP Marion, a male-only facility, and is required to "liv[e] outwardly as a male."  (*Id.*, pp. 8-9).  Plaintiff has a history of suicidal ideation and attempts, as well as one attempt at self-castration.  (*Id.*).

Plaintiff has requested transfer to a female institution on multiple occasions, which have been denied.  (*Id.*, p. 9).  She has been harassed and abused on multiple occasions.  (*Id.,* p. 10).  She has also requested sex reassignment surgery, laser hair removal and for her official paperwork to be altered to reflect that she is female.  (*Id.*, pp. 9-11).  All of these requests have either been denied or drawn a string of non-responses delaying (and constructively denying) the requested relief.  Plaintiff identifies another male-to-female transgendered inmate—Peter Langdon— who was transferred from USP Marion to a female facility in Texas.  (*Id.*, p. 20).  Plaintiff asserts that they are similarly situated in all other respects.

Further, Plaintiff states that the Bureau of Prisons' Transgender Offender Manual was recently revised to require the Transgender Executive Council ("TEC") to "use biological sex as the initial determination for [facility] designation[.]"  (*Id.*, p. 84).  The policy also instructs the TEC to consider issues such as health and safety of the transgendered inmate, behavioral history,

---

[1] As Plaintiff self-identifies as female, the Court will refer to Plaintiff using female pronouns.

overall demeanor, likely interactions with other inmates, etc. (*Id.*). The policy further states that assignment based on identified gender "would be appropriate only in rare cases after consideration of all of the [stated] factors and where there has been significant progress toward transition as demonstrated by medical and mental health history." (*Id.*).

Based on the allegations in the Complaint, the Court finds it convenient to reorganize the *pro se* action into the following enumerated Counts:

Count 1: **Eighth Amendment claim for deliberate indifference to a serious medical condition against Defendants**

Count 2: **First Amendment claim for denial of Plaintiff's requests to have her official paperwork reflect a sex and gender of "female".**

Count 3: **Fourteenth Amendment Equal Protection "class of one" claim.**

Count 4: **Eighth Amendment claim for failure to protect her from abuse and sexual assault.**

Count 5: **ADA/RA claims for failure to accommodate a serious disability.**

Count 6: **Fifth and Fourteenth Amendment claim for gender discrimination against Defendants Trump, John Doe #10 (U.S. Attorney General), and John Doe #9 (Director of the Bureau of Prisons) for formulating and implementing a discriminatory regulation requiring use of biological sex as the initial determinant for facility placement.**

**The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the First Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

### Discussion

### Count 1

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's first claims fall under the general umbrella of deliberate indifference to a serious medical need—that her gender dysphoria causes her significant suffering in being forced to live as a man amongst male prisoners, and that she has been denied the accommodations and treatments which would alleviate that suffering. The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Carlson v. Green*, 446 U.S. 14 (1980). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

Gender dysphoria has generally been recognized as an objectively serious medical condition within the 7th Circuit for more than 30 years. *See Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987) and *Mitchell v. Kallas*, 895 F.3d 492, 499 (7th Cir. 2018). The first hurdle is therefore cleared.

However, "a defendant cannot be liable under *Bivens* on the basis of *respondeat superior* or supervisory liability, rather, there must be individual participation and involvement by the defendant…. each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (internal citations omitted). To establish deliberate indifference, a plaintiff must show that a given defendant "actually knew of and disregarded a substantial risk of harm." *Mitchell*, 895 F.3d at 498 (7th Cir. 2018) (citation omitted). Here, Plaintiff frames each of her deliberate indifference allegations against "Defendants" as a whole, with no indication of who knew what facts that should have led

them to conclude that Plaintiff's medical needs were not being served. This makes it impossible to determine from the body of the Complaint which of the Defendants had sufficient knowledge and personal involvement to support a claim that they were deliberately indifferent. The closest Plaintiff comes is Ian Connors, the National Inmate Appeals Administrator for the Bureau of Prisons. Plaintiff has included several pieces of correspondence from Connors as exhibits to her Complaint. Those letters, responding to Plaintiff's administrative remedy appeals, show that he was aware of Plaintiff's claims that she was not receiving treatment or accommodation she believed necessary for her gender dysphoria, including facility reassignment, gender reassignment surgery and laser hair removal. (Doc. 1, pp. 60, 62, 65 and 69). While an official—especially a grievance official—does not have "a free-floating obligation to put things to rights," *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), these letters are enough to make out a plausible claim that Connors had some personal involvement in the alleged deprivation of needed treatment and accommodation. As such, Count 1 will proceed against Connors, and be dismissed without prejudice as to the remaining Defendants.

## Count 2

Plaintiff asserts that her First Amendment rights have been compromised by officials' refusal to change her records to identify her as female. Plaintiff cannot bring this type of claim against federal officials pursuant to *Bivens* in light of the Supreme Court's recent decision in *Ziglar v. Abbasi*, ––– U.S. ––––, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017). *Ziglar* suggests that the only valid contexts for constitutional claims against federal officers are those previously recognized by the Court under the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. at 397 (Fourth Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender discrimination); and *Carlson*, *supra* (Eighth Amendment deliberate indifference to medical needs). The Supreme Court held that federal courts should not expand

*Bivens* actions to reach contexts that the Supreme Court has not officially recognized unless "special factors" counsel otherwise. *Ziglar*, 137 S.Ct. at 1859-60. Plaintiff's First Amendment claim does not fit under any of the three scenarios recognized by *Bivens*. Further, the Supreme Court has stated the "[w]e have never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012).

Nor are there any "special factors" in this case that would urge expanding Bivens here. These include questions like "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damage action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Ziglar*, 137 S.Ct. at 1858. As with other cases where this Court has declined to extend *Bivens*, Plaintiff has alternative avenues to obtain relief, she can go through the Bureau of Prison's administrative remedies program, as demonstrated by the administrative remedies attached to her Complaint. The Court therefore declines to extend *Bivens* to Plaintiff's First Amendment claim. Count 2 is dismissed with prejudice.

## Count 3

The Supreme Court has interpreted the Due Process Clause of the Fifth Amendment as forbidding the Federal Government from denying to any person the equal protection of the laws. *See United States v. Windsor*, 133 S. Ct. 2675, 2695-96 (2013). Equal protection principles extend to protect people from so-called "class-of-one" discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment. *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016) (*citing Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). To prevail on a class-of-one equal protection theory, "a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference

in treatment." *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (*citing Engquist v. Or. Dep't of Argric.*, 553 U.S. 591, 601–02 (2008) (internal quotations omitted)).

Plaintiff cites Peter Langdon as her example of a similarly-situated prisoner. However, Plaintiff has failed to plead any facts to suggest that she has been *intentionally* treated differently from Langdon by any of the Defendants. As such, Count 3 is dismissed without prejudice.

## Count 4

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A plaintiff asserting a claim for failure to protect must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the defendant was deliberately indifferent to his health or safety. *Id.* at 834.

Plaintiff states that she has been subject to abuse and sexual assault due to her status as a transgendered woman in a male prison. However, she has not alleged that any of the Defendants knew or had reason to know that she is under threat and were deliberately indifferent to the fact. As such, she has failed to state a claim as to the Defendants. Count 4 will be dismissed without prejudice.

## Count 5

According to the ADA, "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA likewise states that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal

Service." 29 U.S.C. § 794. Discrimination under both includes the failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrs.*, 685 F.3d 667, 672 (7th Cir. 2012).

As an initial matter, the claim cannot proceed under the ADA. The ADA does not apply to federal agencies. *Dyrek v. Garvey*, 334 F.3d 590, 597 n. 3 (7th Cir. 2003) (*citing* 42 U.S.C. § 12111(5)(B)). Instead, the Court will evaluate Plaintiff's claim under the RA.

The general definition of "disability" for RA purposes is "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1).[3] "Major life activities" include operation of a major bodily function. 42 U.S.C. § 12102(2)(B). Gender dysphoria would appear to fall squarely within the realm of limiting major bodily functions, and therefore arguably qualifies under the general definition of disability.[4] Further, Plaintiff adequately alleges that she is being denied accommodations and access to treatments, programs and facilities on the basis of her gender dysphoria.

The question is whether Plaintiff is an "otherwise qualified individual with a disability" as defined in the RA.[5] The RA specifically exempts "gender identity disorders not resulting from physical impairments" from the definition of disability. 29 U.S.C. § 705(20)(F).[6] The term "gender identity disorder" was replaced by the term "gender dysphoria" in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") on 2013, with the publication of the fifth edition ("DSM-5). There is significant disagreement as to whether gender dysphoria falls into the ADA

---

[3] The RA incorporates by reference the definitions of the terms germane to this claim from the ADA. 29 U.S.C.A. § 705(20)(B).

[4] Although Plaintiff has also been diagnosed with borderline personality disorder, none of her allegations indicate that she is being denied access to any programs, facilities or treatments on that basis.

[5] The RA expressly incorporates the definition of "disability" set forth in the ADA. See 29 U.S.C. § 705(9)(B).

[6] The ADA contains the same exclusionary language. 42 U.S.C. § 12211(b)(1)

or RA's categorical exclusion among the few courts which have discussed the issue. *See Parker v. Strawser Constr., Inc.,* 307 F. Supp. 3d 744, 753–54 (S.D. Ohio 2018) (gender dysphoria not resulting from physical impairment is within the ADA's exclusionary language); *Michaels v. Akal Sec., Inc.*, No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (gender dysphoria is a gender identity disorder and therefore excluded); *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (gender dysphoria resulting in substantial limits on major life activities falls outside the ADA's exclusionary language); *Doe v. Massachusetts Dep't of Correction*, No. CV 17-12255-RGS, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysmorphia and suggesting that there may be a physical etiology underlying gender dysmorphia sufficient to take it out of "not resulting from physical impairments" category). No Courts of Appeal appear to have ruled on the issue. At this point in the case, the Court cannot categorically say that gender dysphoria falls within the RA's exclusionary language and will err on the side of caution to allow Plaintiff's claim to proceed. However, the Court would welcome briefing on the issue if an appropriate motion were filed.

Although Count 5 will proceed, it will not proceed against all Defendants. The RA does not permit suits against defendants in their individual capacities. *See Jaros*, 684 F.3d at 670. The proper defendant is the agency or its director in his or her official capacity. *Id*. at 670 n. 2. Plaintiff has identified John Doe #9 as the head of the Federal Bureau of Prisons.[7] As such, Count 5 will proceed as to the Director of the Federal Bureau of Prisons and is dismissed with prejudice as to the remaining Defendants.

**Count 6**

---

[7] The Federal Bureau of Prisons website indicates that Hugh J. Hurwitz is the Acting Director of the agency.

Finally, Plaintiff brings a claim against the Director of the Bureau of Prisons, John Doe #10 (the United States Attorney General) and President Donald Trump, alleging that the May 11, 2018 changes to the Transgender Offender Manual represent gender discrimination and therefore a violation of Plaintiff's right to equal protection. To establish a *prima facie* case of discrimination under Equal Protection, a plaintiff must "show that [s]he is a member of a protected class, that [s]he is otherwise similarly situated to members of the unprotected class, and that [s]he was [intentionally] treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (*quoting McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993). Equal protection claims typically involve alleged discrimination on account of race, national origin or gender. Discrimination based on a person's transgender status or discrimination based on sex stereotyping may also be actionable as an equal protection claim. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017).

Plaintiff has failed to state a claim against these Defendants. Again, individual liability for alleged constitutional deprivations requires personal involvement. Plaintiff makes only the bare allegation that Trump, Doe #9 and Doe #10 are "responsible for" the revisions to the Transgender Offender Manual. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to adequately state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, Count 6 is dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **IAN CONNORS**. **COUNT 1** shall be **DISMISSED** without prejudice against Defendants True, John Does #1-10, Deborah Schult, Alix McLearen and Donald Trump. **COUNT 5** shall **PROCEED** against **DIRECTOR OF THE FEDERAL BUREAU OF PRISONS (official capacity only). COUNT**

**5** shall be **DISMISSED** with prejudice as to Defendants True, John Does #1-8, John Doe #10, Deborah Schult, Alix McLearen and Donald Trump

       **IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** with prejudice as to all Defendants for failure to state a claim upon which relief may be granted.

       **IT IS FURTHER ORDERED** that **COUNTS 3, 4 and 6** are **DISMISSED** without prejudice as to all Defendants for failure to state a claim upon which relief may be granted.

       Plaintiff's Motion for Service of Process at Government Expense (Doc. 2) is **DENIED as moot.** Summons will be issued and served on Defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server.

       The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **IAN CONNORS and DIRECTOR OF THE FEDERAL BUREAU OF PRISONS**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **IAN CONNORS and DIRECTOR OF THE FEDERAL BUREAU OF PRISONS** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

       In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office

---

[1] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

**IT IS FURTHER ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), should all the parties consent to such a referral.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).


**IT IS SO ORDERED**.

**DATED: 7/25/2019**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.