# U.S. District Court

## Southern District of Illinois

Cristina Nicole Iglesias,
AKA- Cristian Noel Iglesias,
#17248-018

(
(
(

(   Case No.# 3:19-cv-00415-JPG

VS.

(

Director of Federal Bureau-
Of Prisons, et al

(
(

## Motion For Preliminary Injunction

Comes now Plaintiff, Cristina Nicole Iglesias, AKA- Cristian Noel Iglesias- Federal Bureau of Prisons #-17248-018, Moves and Request that this Court issue a Preliminary Injunction, Ordering the Federal Bureau of Prisons to give her access to adequate medical care, including sex reassignment surgery. Order the Defendants to take all actions reasonably necessary to Provide Iglesias sex reassignment surgery Promptly as Possible, and Order a transfer to a Bureau of Prisons female Prison.

(1)

- Background -

Plaintiff, is currently housed in the Federal Bureau of Prisons located at the United States Penitentary - Marion, Illinois. Plaintiff, is a transsexual woman, a person ~~whose~~ whose female gender identity is different from the male gender assigned to her birth. Plaintiff, suffers from Gender dysphoria (severe) and has cut herself in an attempt to rid herself of male parts. Plaintiff, has suffered great torture her time in a males Prison because of her feminity. Plaintiff, has requested since 2015 to have the Gender Affirming surgery. Plaintiff has exhausted 2 different times her Administrative Remedies, which go on with No change. Gender Dysphoria is a "serious medical condition codified in the International Classification of Diseases (10th-revision; World Health Organization) and the —

(2)

American Psychiatric Associations Diagnostic and Statistical Manual of Mental Disorders - 5th Edition (DSM-V)." It is "characterized by an incongruence between one's experienced/expressed - gender and assigned sex at birth, and clinically significant distress or impairment of functioning as a result." Id. The condition is associated with "severe and unremitting emotional pain." Id. Without treatment, people with Gender Dysphoria experience anxiety, depression, suicidality and other mental health issues, Id. Male to Female transsexuals without access to appropriate care may result in attempting auto-castration (which Plaintiff has done Priviosly) in order to alleviate their distress.

Gender Dysphoria intensifies with age.

Plaintiff, contends that she is "a woman trapped in a male's body" and that her (spirit) is imprisoned in a way that causes excruciating - pain and frustration to a point that therapy

(3)

and other remedies are the only way to relieve that agony. Plaintiff has suffered great anxiety caused by her Gender Dysphoria that she fears "the worst happening".

- WPATH Standards of Care -

The World Professional Association for Transgender Health (WPATH) has developed Standards of Care for Treatment or Health of Transsexual, Transgender, and Gender-Non conforming People ("Standards of-Care") which are recognized as authoritative Standards of Care by the American — Medical Association, the American Psychiatric Association and the American Psychological Association. The Standards of Care explain the treatment for Gender Dysphoria is individualized. * Note - The Federal Bureau of Prisons states they follow (WPATH).

(4)

"What helps one Person alleviate Gender-Dysphoria might be different from what helps another Person." They address (Standards of Care) a variety of theraputic options, including changes in gender expression and role, hormone therapy, Surgery and Psychotherapy.

One treatment for gender dysphoria is sexual-reassignment surgery (SRS). "Vaginoplasty is the ~~definitive~~ definitive male-to-female sex reassignment-surgery." It involves the removal of the Patients'-male genital and creation of female genitals, and has two theraputic Purposes. SRS for transsexual female Patients both remove the Principal Source of testosterone in the body and creates congruence between the Patients gender identity and Primary Sex characteristics. standards of care explain. While many transsexual, transgender, and gender-non-coforming individuals find comfort with their gender-identity, role and expression without surgery, —

(5)

for many others  surgery is essential and medically necessary to alleviate their Gender-Dysphoria. For the latter group, relief from Gender Dysphoria cannot be achieved without modification of their primary and/or secondary sex characteristics to establish greater congruence with their gender idenitity.

Standards of Care at 36: ("For many indriduals with severe gender Dysphoria cannot be achieved without Surgical Intervention. to modify Primary sex characteristics, ie, genital resconstruction

See standards of care ("Follow-up studies have shown onundeniable benefical effect of sex reassignment Surgery on postoperative outcomes. In any professional experience, the successrate is extremely high. "SRS is not thought to be experimental now that it has been repealeldly positively evaluated for over twenty years."

(6)

The Standards of Care set forth six eligibility criteria for vaginoplasty in male to Female Patients:

(1.) Persistent, well documented gender-dysphoria:

(2.) Capacity to make fully informed decision and to consent for treatment.

(3.) Age of majority in a given country.

(4.) If Significant medical or mental health concerns are present, they must be well controlled,

(5.) 12 continuous months of hormone-therapy as appropriate to the patients gender goals (unless hormones are not clinically-indicated):

(6.) 12 continuous month of living in a gender-role that is congruent with patients' identity.

(7)

Standards of Care. They also require two referrals from qualified mental health professionals who have independently evaluated patient. "If the first referral is from patients Psychotherapist, the second referral should be from a person who has only had evaluative role with role with patient."[1]

The Standards "in their entirety apply to all transsexuals, transgender, and gender nonconforming people, in respective of their housing situation." They expressly provide that "People should not be discriminated against in their access to appropriate health care based on where they live, including institutional enviroments such as prisons. The Standards of Care allow for "reasonable accomodations to the institutional enviroment," such as use of injectable hormones where diversion of oral Prescriction is highly likely, but they make clear that denial of needed changes in gender role -

or access to treatments, including sex reassignment surgery on the basis of residence in an institution are <u>not</u> reasonable accomodations under the standards of care.

## Iglesias's Treatment:

Iglesias sought hormone therapies in 2015 and shortly after requested consideration for (S.RS) in 2016. In 2016 Plaintiff was diagnosed with Gender Dysphoria. Iglesias's has been on continous hormone therapy since 2015 with frequent adjustments, since that time Iglesias has become "biological-female". She lives as a women, and now since taking hormones is now hormonally-reassigned. The Bureau of Prisons allows Iglesias to have long hair in which she does and has had bras and panties

issued to her since 2013. The B.O.P
allows certain items for her to purchase
make-up (eyeshadow, Blush, foundation, lip gloss.
Her apperance is that of a women with
Significant breast growth. She is housed
in General Population in a male's prison.
I glesias treatment includs Psychotherapy
for her Trauma in which the Plaintiff
Suffered many years of abuse due to her
being feminate all her life including seyal-
abuse and is currently in treatment for
her Gender Dysphoria, she currently see's
Dr. Owings on a weekly basi's, She is
compliant with all treatment.
Plaintiff, Still has "excrusiating Pain and -
frustration" as a result of her gender -
dysphoria, not widthstanding no help —

(10)

from the Bureau of Prisons for the one treatment to help alleviate her pain and frustration and torture.

Her Medical Records reflect a consistant diagnosis of gender dysphoria as well as Iglesias desire to obtain SRS. (Please see enclosed medical Records.)

Iglesias struggles with her constant and are more pronouced (emotions) from not being able to complete the required surgeries ("SRS".

Iglesias's Appeal seeking SRS.
    Iglesias requested thru medical and Psychology Services on or around 2016.

Iglesias wound up filing appeals in 2016 requesting SRS which were denied. Iglesias filed again in 2018 and on march 2, 2018 was notified that I would notified when the TCCT reaches a decision. * NOTE - the Response was a template with old diagnosis of Gender Identity - Disorder, however, had Central office really reveiwed Plaintiff, she has had the Offically Recognized diagnoses of Gender Dysphoria, this caused great stress, frustration, feeling of despair. On 6/10/19 Plaintiff went to her Chronic Care Clinic where she discussed her desire to have the S,R,S, however, Dr. Pass stated that there has been no guidence, nor any word from Central office (T.C.C.T) as to how, -

(12)

where or when any surgery will be done if ever. The Bureau of Prisons has no Policy against S.R.S, they have NO Policy to offer guidence or to allow for it. (See enclosed the Clinical Practioners guidence December 2016,) it states how Institutions refer someone but does not offer Where, how or whom will perform S.R.S. This causes great stress, frustration, it also exaspirates Iglesias's Gender-Dysphoria. There has been NO real Proof that the Bureau of Prisons has reveiwed Iglesias for S.R.S. This causes torture with causes Plaintiff to want to do self-treatment, Causing the worsening of Plantiffs. Gender Dysphoria-

(13)

- Puts Plaintiff at risk, depression, self-harm. (including auto-castration) and suicide.

The Bureau of Prisons has a moral obligation to provide <u>all</u> necessary and adequate medical care including sex reassignment surgery. Gender Dysphoria is a severe medical condition. Interfering, hindering, or plain negligence of medical care and not having <u>NO</u> - Policy or guidence constitutes a 8th Admendment violation "deliberate- indeference". The Appeal for the S.R.S was 3-2-18, I have and continue to ask for the S.R.S to no avail the Bureau of Prisons is status quo.

- Jurisdiction -

This Court has Jurisdiction because Plaintiff is in the Southern District of -

— Illinois and the Claims arise under federal law.

Motion For Preliminary Injuction.

A. Legal Standard.

" A Plaintiff seeking a Preliminary Injuction must establish that she/he is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of Preliminary relief, that the balance of equities tips in her favor and that the injection is in the Public interest." Winter, V. Natural Resources Defense Council, INC. 555 U.S. 7, 20 (2008). "Serious going to the merits balance of hardships that tips sharply towards the Plaintiff can support issuance of a Preliminary Injuction, so long as the Plaintiff also shows that there is a likelihood of irreparable injury and that the Injuction is in the Public Interest." Alliance for the Wild Rockies V. Cottrell 632 F.3d 1127, 1135 (9th Cir. 2011).

( 15 )

" A Preliminary Injunction is an extraordinary remedy never awarded as of right." Winter 555 U.S. at 24. It may take may two forms. " A Prohibitory injunction Prohibits a Party from taking Preserves the Status quo Pending a determination of the action on the merits." Marlyn Nutraceuticals, INC v. Mucos Pharma - GmbH & Co.  571 F.3d 873, 878 (4th Cir.).

A mandatory Injunction orders a Party to take action. Because a mandatory injunction "goes well beyond simply maintaining the status gou Pendente lite it is Particulary disfavored. IN general, mandatory Injuctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases, or where the injury complained of is capable of compensation in damages." Anderson U. U.S. 612 F.2d 1112, 1115

(16)

Under the Prison Litigation Reform Act
("PLRA")

In any civil action with respect to
Prison conditions, to the extent
Otherwise authorized by law, the Court may
enter a temporary Restraining Order
or an order for Preliminary injuctive-
relief. Preliminary Relief must be
narrowly drawn, extend no further than
necessary to correct harm the Court finds
requires Preliminary Relief, and be the
least intrusive means necessary to Correct
that harm. The Court shall give substantial
weight to any adverse impact on public-
Safety or the Operation of the criminal-
Justice system.  18 U.S.C § 3626(a)(2).

(17)

- Likelihood of Success on the Merits:

To obtain a Preliminary Injuction requiring defendants to Provide S.R.S, Iglesias must first establish she is likely to succeed on the merits of S.R.S. claims. She

contends that Defendants violated her Constitutional Rights under 42 U.S.C 1985 and 4042 as well at the ADA 42 U.S.C 12101 et. seq. by denying her medically necessary treatment for Gender Dysphoria in violation of the Eighth's Amendmendment Prohibitation against "cruel and unusual Punishment" and the Fourteenth Amendmendmat's Equal Protection clause.

- Deliberate Medical Indifference-
     Legal Standard:

   " Deliberate Indifference to a serious medical needs of Prisoners constitutes the " unnecessary and wanton infliction of Pain " Proscribed by the 8th Amendment." Estelle V. Camble, 429 U.S. 97. 104 (1976)

18

Such an indifference may be manifested by prison doctors in their response to the prisoners needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.

Second, she "must show defendant's response to the need was deliberately indifferent." This second prong "is satisfied by showing a purposeful act or failure to respond to a prisoners pain or possible medical need (b) harm caused by the indifference. "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." "However, the U.S. Supreme Court has also recognized that while "deliberate indifference" under Estelle requires more than showing of mere negligence, something less than (a showing of) acts or ommissions for the very purpose of causing harm or —

(19)

- or "with knowledge that harm will result
will suffice." Mandala v. Coughlin 920 F. Supp.
342, 353, ( E.D.N.Y,) 1996 (citing Farmer v. Brenna
511 U.S. 825, 835 (1994,)

- serious medical need -

Iglesias is likely to suceeed in establishing
a serious medical need. She has presented
extensive and consistant evidence that not-
withstanding years of treatment in the form
of hormone theorpy and counseling, she continues
to experinee symptoms of Gender Dysphoria.
The "psychological and emotional pain" Iglesias
experiences as a result of her gender dysphoria
means she is unable to complete (her) existence
or complete who she is. See Lopez v. smith,
203 F.3d. 1122, 1131 "chronic and substantial pain."
is an example of a serious medical need.) The
WPATH standards of care explain that some
individuals are unable to obtain relief from -

(20)

- gender dysphoria without surgical intervention. and describes S.R.S as "essential and medically-necessary." for this group of patients. WPATH Standards of Care are not disputed by the B.O.P however, the B.O.P staff at USP-Marion have recommened S.R.S, the Admin-istrative Remedy # 920251-A1, dated: 3-2-18 states that USP marion sent ~~the~~ request to the (TCCT) meaning that in the eyes of medical and mental Health staff here I qualify as I have been told by staff. But the T.C.C.T have failed to act on it. Plaintiff further contends that Clinical-Encounter Date: 6-10-19, states on page-4 Gender Dysphoria- discussed this quite a bit today- She declines offer of anti deppressant medication - Says that the sessions with psychology are helpful, but that she needs the gender-affirming surgery - She understands that there has been <u>NO</u> further direction -

(21)

- from our Central Office regarding
how/when/where this surgery will be done.
* Enclosed a Exhibit (1) Page 1-4 by
Dr. Pass. Clinical Director,

WPATH Standards of Care are the
accepted Standards of Care for the
treatment of transgender patients
like Iglesias. Johnson, 708 F. 3d, 520, 522-23
(4th Circuit) describing the Standards of Care
as "the generally accepted protocols" for
the treatment of gender dysphoria; Soneeya v.-
Spencer, 851 F. Supp. 2d, 228, 231 (D. Mass 2012)

Iglesias, has satisfied all of the
eligibility criteria for S.R.S as the
record demonstrates (1) her persistent gender-
dysphoria (2) her capacity to make fully
informed decision and consent to treatment.
(3) her majority; (4) that significant medical-

(22)

- and mental health concerns are well controlled.
(5) that she has recieved 12 continous months of hormone therapy (6) that she lived in a female gender role for 12 continous months

Iglesias contends that just because the Defendants have provided a prisoner (her) with some treatment consistent with the Standards of Care, Plaintiff contends that the Defendants have provided her with consititutionally adequate treatment". De'lonta-708 F.3d at 526, see also Fields V. Smith-653 F.3d 550, 556 (7th Cir. 2011), Ortiz-V. City of Imperial, 884 F.2d 1312, 1314 (9th) (a Plaintiff alleging deliberate Medical-indifference" need not prove complete failure to-treat." "Note" The First Circuit has opined that there is "no material difference" between a providers letter confirming eligibility, but not reccomanding S.R.S, and what the Standards of Care refers to as a Letter of reccomendation, Kosilek V.S-Pewever.  774 F.3d 5d 63,88 (1st Circuit).

(23)

Moreover, Bureau of Prisons, have Provided no credible support for the idea that Iglesias must demonstrate that she is likely to commit suicide or attempt auto-castration (Please note Iglesias has attempted to auto-castration in 2009 and the Bureau of Prisons did nothing and has thoughts of auto-castration that she claims is always Plan-B if the B.O.P or Court fails to provide S.R.S. She is not required to demonstrate that she is a risk of death or imminent self harm. and that her pain is new or risk of injury,

- Deliberate medical indifference -
Iglesias has shown the likelyhood of Proving that Prison officals are -

(24)

- deliberately indifferent to her serious medical need. "Deliberate indifference to medical needs may be shown by circumstantial evidence when facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir 2003) citing Farmer, 511 U.S. at 842.

Iglesias has presented evidence suggesting that prison officals deliberately ignored her symptoms and continue to do so of Gender Dysphoria and are being deliberately indifferent to the Recognized Standards of care. Iglesias Clearly stated in her Appeals she -

(25)

she suffered great anxiety, depression etc.

- Irreparable Harm-

Iglesias has clearly demonstrated and established she is suffering irreparable harm and that it will likely to get worse in the absence of a Preliminary Injuction. Iglesias has stated in Administrative Remedies and in the Complaint that she is in " — excruciating pain and "psychological and great emotional pain" as the result of her

Gender Dysphoria, Emotional distress, anxiety, depression and other psychological-problems can constitute irreparable injury. Iglesias is at risk of worsing of her gender-dysphoria without the S.R.S.

Furthermore, the deprivation of Iglesias' constitutional rights under the 8th Amendment -

(26)

- is itself sufficent to establish irrepar-
able harm. See, Elrod v. Burns, 427, U.S. 347,373.
(1976). "( Unlike monetary injuries, constitutional-
violations cannot be adequately through damages
and therefore constitute irreparable harm,

The Bureau of Prisons cannot say that
Iglesias cannot establish irreparble injury
because " She can point to no relevant
Circumstance that make the Provision (S.R.S)
suddenly urgent." The mere fact that the
B.O.P has acknowledged the Administrati-
ve Remedies and have Not answered
as to when I will be Notified or given
the S.R.S. from 3-2-18 constitutes
Irreporable Harm,

- Balance of the Equities -
The Courts "must balance the competing
Claims of injury and must consider the -

(27)

— "consider the effect of each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24. "In excesing their sound discretion, Courts of equity should Pay Particular regard for the Public consequences in employing that extraordinary remedy of Injunction. Plaintiff ask this Court to issue a Preliminary Injunction because she has proven that if the Bureau of Prisons does not act, she will worsen and her Gender-Dysphoria will continue to cause her to Suffer unnecessary Pain if denied S.R.S. and continue irreparable harm. No B.O.P Offical can state that the Balance of Equities outweigh in her interest. The Court must not allow Political views out-

(28)

The Right thing to do under
the 8th Amendment "Cruel & Unusal-
Punishment. SHe has proven that
the Bureau of Prisons has failed
to provide the necessary treatment
S.R.S.
  The Court should also note
that there is no safety or security
concerns to Provide S.R.S. and
cannot override what is in Iglesias
interest interest in recieving Constit-
utionaly adequate care. The Bureau of
Prisons may have never housed
someone undergoing S.R.S, but
it does have experience housing
inmates who require surgery and
housing one post-operative male to female
transsexual Individual. And Iglesias
also contends that housing her
in a female Prison (Please note
the B.O.P already houses transsexual/
transgender female in female prison
is in the best interest of Justice.
She would be safer and she -

(29)

- contends that if she were further along in her breast development she would feel safer. She has suffered Sexual abuse due to her being a transsexual female in a males Prison. See Admin. Remedy # 897368-A1, Iglesias also contends it is torture to see B.O.P documents that say male instead of female ( see Admin. Remedy #_ 945168-A-3 Dated: 2-5-19,

There are no Public Interest in seeing Iglesias continued Suffering during the Pendency of this litigation. - PLRA.

Iglesias feels she has shown this Court that she Will likely to succeed on the merits of her 8th Amendment claim, that she will likely to suffer irreparable harm without an injuction, that the balance of the Equities tips in her favor and that an Injuction is in the Public Interest. An Injuction granting her access to adequate medical care, including referral to a qualified Surgeon for S.R.S and transfer to a Bureau of Prisons female Institution, is narrowly drawn, extend no further than necessary to correct the Constitutional violat- ion and is the least intrusive means to correct the violation. See 18 U.S.C 3626. There is no evidence granting this relief will have any adverse impact on Public Safety or Operation- of the Criminal Justice system. 18 U.S.C 3626(a)2)

(30)

Plaintiff, Request this Court issue an Preliminary Injuction to ensure that Iglesias will not have to continue to suffer irreparable harm and will have adequate medical / - mental Health care including the S.R.S. she needs.

An Injuction granting her access to adequate medical care, including referral to a qualified surgeon for S.R.S and a transfer to a Bureau of Prisons female institution. Planififf, Moves this court Grant Preliminary Injuction Ordering the Federal Bureau of Prisons to grant access to adequate medical care, including referral to a qualified surgeon for S.R.S and transfer to a female Institution.

9/3/19
Date:

Cristina Iglesias

(31)



Legal Mail

MAIL CLEARED

Cristian Iglesias #17248-018
United States Penitentary-Marion
P.O. Box - 1000
Marion, Illinois 62959

17248-018
United Sta District Court
750 Missouri AVE
E Saint Louis, IL 62201
United States

UNITED STATES
POSTAL SERVICE.

Retail

US POSTAGE PAID
$0.00

Origin: 62959
09/09/19
1648600059-1

1 Lb 8.90 Oz
1006

C002

PRIORITY MAIL 1-DAY®

EXPECTED DELIVERY DAY: 09/10/19

SHIP
TO: 750 MISSOURI AVE
EAST SAINT LOUIS IL 62201-2954

USPS TRACKING NUMBER

RECEIVED

SEP 10 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

Warden
United States Penitentiary
Marion, IL. 62959
Date: SEP 0 5 2019

The enclosed letter was processed through
special mailing procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or problem over
which this facility has jurisdiction,
you may wish to return the material for
further information on clarification.
If the writer encloses correspondence for
forwarding to another address, please return
to enclosure. The above ad...

X Mail    62y