**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

CRISTINA NICHOLE IGLESIAS
(a.k.a. CRISTIAN NOEL IGLESIAS),

Plaintiff,

v.

IAN CONNORS, *et al.*,

Defendants.

Case No. 19-cv-00415-RJN

Judge Nancy J. Rosenstengel

**DECLARATION OF CRISTINA NICHOLE IGLESIAS**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Cristina Nichole Iglesias, am the Plaintiff in the above captioned case. I have personal knowledge of this information set forth herein and if called upon to testify, I would testify to the truth of the following:

1. I am a 46-year-old woman in the custody of the Federal Bureau of Prisons ("BOP") at Fort Dix in Fort Dix, New Jersey. Fort Dix is a men's prison.

2. I am a transgender woman and have identified as female for most of my life even though I was assigned male at birth.

3. Since a very young age, I have known that I am female. At the age of 12, I asked my mother for gender-confirmation surgery ("GCS") because of my need to live as a girl in a body that fully reflected who I am. I acted in a very feminine manner and consequently was subjected to emotional and physical abuse at the hands of my father during this time.

4. I left school after the tenth grade. I began socially transitioning by wearing my hair in a female hairstyle and wearing female clothes, and I took birth control medication so I could develop breasts.

5. My social transition helped me and other people see me as the woman I am, but it was not enough.

6. I entered the BOP in 1994. Since then, I have always been held in men's prisons. I have been held in men's prisons because I was assigned male at birth, even though I shared with BOP that I identify as female.

7. Soon after I entered BOP custody, I was diagnosed with gender identity disorder in or around 1994 by Dr. Brian Gray, a BOP psychologist who treated me. In 2015, my diagnosis was changed to gender dysphoria in accordance with updated medical terminology.

8. I first requested hormone therapy from BOP medical staff in 2011 but was initially denied treatment. It was not until 2015, four years later, that medical staff finally approved my request to begin hormone therapy. I experienced several changes in my body as a result of hormone therapy, such as developing breasts.

9. In addition to hormone therapy, I have done everything I can to live completely as the woman I know myself to be while in prison. I wear a bra, women's underwear, and use makeup and grooming items when they are available to me. However, I am still held in men's prisons and some prison staff refer to me by male pronouns.

10. Despite hormones, female clothing, and grooming items, I continue to suffer from extreme mental and physical anguish because of my gender dysphoria.

11. Throughout the years I have been in BOP custody, I have dealt with devastating symptoms from the condition, including severe depression, anxiety, stress, and thoughts of self-treatment through castration. In 2009, my gender dysphoria was so bad that I attempted to remove my testicles and penis. My gender dysphoria continues to intensify and worsen as time goes on and I grow older, causing me even more distress.

12. I have also been placed on suicide watch many times by BOP staff because of my need for treatment. I continue to suffer from suicidal thoughts due to my need for permanent hair removal and GCS.

**My Requests for Surgery.**

13. Beginning in 2016, I started requesting GCS informally and formally to treat the gender dysphoria I am still suffering from.

14. I made these requests to BOP staff members, Dr. Randall Pass, the clinical team at United States Penitentiary at Marion ("USP-Marion"), and Defendant Hollingsworth, USP-Marion's current warden.

15. Dr. Pass is the clinical director at USP-Marion, and he confirmed that I met the WPATH criteria for GCS and should receive it.

16. On January 6, 2018, I appealed Defendant Hollingsworth's and the Regional Director's denials of my request for GCS to the Central Office Administrative Remedies Division. I explained that the delay was causing me further emotional and psychological distress, depression, anxiety, stress, and thoughts of self-mutilation.

17. On March 2, 2018, Defendant Connors, a national inmate appeals administrator at the BOP, responded and acknowledged that BOP's Transgender Clinical Care Team ("TCCT"), which is overseen by the Transgender Executive Council ("TEC"), had received my request for GCS. Defendant Connors said that he was going to defer to the TCCT to make a decision.

18. In November 2019, I was transferred from USP-Marion to Federal Medical Center-Lexington ("FMC-Lexington"). I was told by staff at USP-Marion that I was being transferred there to receive GCS. After I arrived there, I was told that there were no surgeons in Kentucky who performed the GCS I needed.

19. On December 3, 2019, I filed an appeal to the Central Office Administrative Remedies Division. In my appeal I again requested GCS and all treatments necessary to prepare me for it as called for by the WPATH standards.

20. On December 18, 2019, I had a consultation with a nurse practitioner named Tammy C. Thomas at the Endocrinology Department at the University of Kentucky HealthCare. BOP set the consultation up to evaluate me for GCS. Ms. Thomas evaluated me and found that I met the WPATH standards for GCS and she recommended that I have it.

21. On March 13, 2019, I received a response to my December 3, 2019 appeal to the COARD. Defendant Connors issued the BOP's decision and said that I could not have GCS because I did not meet the requirements to be transferred to a female facility and because my hormone levels "have not been maximized or stabilized."

**My Request for Permanent Hair Removal.**

22. I also need permanent body and facial hair removal for the treatment of my gender dysphoria.

23. Defendant Hollingsworth and BOP's Regional Director denied my request for permanent hair removal. I appealed on March 7, 2018. On April 6, 2018, Defendant Connors denied my appeal on the grounds that I had not reported any major emotional or environmental problems during my last visit with Psychological Services. The denial was also based on the provider not indicating that I needed it.

**My Requests for Transfer to a Female Facility.**

24. As part of treatment for my gender dysphoria and for my safety, I have also repeatedly requested to be transferred to a women's facility. Those requests have been denied and I have appealed them.

25. On November 21, 2016, I requested transfer to a women's facility by sending a request to Loretta Lynch, who was the United States Attorney General at the time. My request was forwarded to the warden at the Federal Correctional Complex in Butner, North Carolina.

26. On December 21, 2016, I received notification that my request was "under review as part of an ongoing process."

27. On May 31, 2017, I appealed the Regional Director's decision denying my request to be transferred to a women's facility. I explained that I needed the transfer for my gender dysphoria treatment and for my safety.

28. On July 6, 2017, Defendant Connors notified me that my request was denied, in part because it was repetitive of earlier appeals for transfer to a women's facility.

29. On March 13, 2020, I was again denied transfer to a women's facility by Defendant Connors. In the denial, he stated that "surgery is created after real world experience in your preferred gender."

30. On March 24, 2020, I applied for transfer to a women's facility at FMC-Lexington. I sent my request to the warden at FMC-Lexington.

31. Because I am a transgender woman, I am a target for physical and sexual violence in a male facility. That is a second crucial reason why I need to be transferred to a women's facility.

32. Being housed in male prisons has put my health and life in danger. I have been subjected to extensive sexual abuse, physical abuse, and harassment by BOP staff and other prisoners.

33. As I have described, I have made numerous requests to BOP staff to be transferred to a women's facility to avoid further harm.

34. I have reported numerous instances of sexual abuse, including rape, physical abuse, and/or harassment. Prior to my transfer to Fort Dix, I reported instances in 2001, 2013, 2015, 2016, 2017, 2019, and 2020.

35. I have made numerous requests to be placed in protective custody to avoid these harms but I am still harassed by other prisoners and prison staff, even in protective custody.

36. While I have been in BOP custody, other prisoners have frequently exposed themselves to me, groped me, watched and attempted to watch me when I shower, and demeaned me in other ways, including asking to see my breasts.

37. I have suffered numerous sexual assaults in BOP custody because I am a transgender woman in men's prisons.

38. In November 2019, I was raped by another prisoner. I reported the rape to BOP medical personnel.

39. In January 2020, I was held hostage by a cellmate because he did not want to be housed with a transgender woman. He would not release me until the prison entered the cell and used force to get him out before he was able to harm me.

40. From my experience, because I am a woman with female physical characteristics, such as breasts, I am a target for rape and forced prostitution in men's prisons.

41. In January 2020, I refused to allow a male prisoner to prostitute me. He put a hit on me and offered $500.00 to another prisoner for the opportunity to be in a cell with me to hurt me. BOP staff at FMC-Lexington entered a separation order between him and me. We remained in the same facility.

42. BOP staff have also harassed me. One staff member threatened to house me with a convicted sex offender if I did not stop making complaints about needing medical care and requesting a transfer to a women's facility.

43. Throughout my time in BOP custody, I have constantly been misgendered by both prison staff and other prisoners, which causes and worsens my gender dysphoria, depression, anxiety, stress, and thoughts of self-harm.

**My Experience at Fort Dix**

44. I was transferred to Fort Dix on December 14, 2020 because of the violence and threats of further violence I experienced at FMC-Lexington. However, my experience at Fort Dix has been even worse than what I experienced at FMC-Lexington.

45. I was initially housed in Unit 5703 where I stayed for approximately two months in quarantine because I became infected with coronavirus disease 2019 ("COVID-19") after my transfer to Fort Dix.

46. After recovering from COVID-19 in around mid-February 2021, I was moved to Unit 5702. Unit 5702 is a general population unit with two-person bunk beds, twelve prisoners per room, on three open floors, which are open to one another through stairways. The entire unit has a capacity of at least 300 people. Since being moved to Unit 5702, I have been subjected to sexual violence and extortion because I am a transgender woman.

47. Two male prisoners began demanding sex and money from me and threatened me with violence if I did not do what they said. The person who originally used threats to demand sex and money is Osvaldo Rosa, who goes by the name "Danny." I do not know the actual name of the other prisoner who used violence to demand sex and money from me, but his last name is "Mejia." Both Danny and Mejia are leaders in the Ñetas gang.

48. Danny approached me in or about March 3, 2021 or March 4, 2021 and said that I would have to pay him $10,000.00 if I wanted to survive at Fort Dix. He threatened me with a knife if I did not stay with him near his bunk bed and shadowed me everywhere I went in the unit. He also started making me phone my relatives and friends to ask them for money if they wanted to avoid being harmed.

49. Many of the prisoners at Fort Dix have cell phones, even though they are contraband. Prisoners are able to communicate with one another and with people outside of the prison. Danny collected the money I was being forced to send him through a mobile application known as "Cash App," through four different user handles.

50. I have paid Danny approximately $8,000.00 to date to save myself from physical violence and additional acts of sexual violence. I received the money from my family, a friend outside of prison, a fellow prisoner at Fort Dix named Ryan Jaselkis ("Ry"), and the government stimulus payments resulting from COVID-19. Ry is also a transgender woman.

51. Danny forced me to give him oral sex four different times during February and March 2021. The last time he held me at knifepoint. Danny frequently pulled knives on me to remind me that my life is at risk. Danny hid the knives from the corrections officers in a space in the ceiling near the light bulbs.

52. During the first week of March 2021, Mejia raped me, forcing me to engage in anal sex. He told me that was punishment for not giving him money.

53. On one occasion in February 2021, Danny and Mejia forced me to show my breasts to two other members of the Ñetas who go by the nicknames "Flacko" and "J.R."

54. I did not file a grievance immediately because I was afraid of retaliation from Danny, Mejia, other prisoners at Fort Dix, and Fort Dix staff, even in protective custody. My fear

was exacerbated because Fort Dix is an open facility, which increases my exposure to possible violence from other prisoners. Eventually, however, I had no other choice. On March 3, 2021, I filed a grievance with the BOP Regional Office about the extortion and sexual violence I had been experiencing. I have heard of nothing being done as result of that grievance.

55. On or about March 4, 2021, Danny warned me that if I did not produce the rest of the money owed to him, $2000.00, then my life was in danger. This is when I decided that I had to make additional complaints about my treatment.

56. On March 4, 2021, I filed a complaint online through the United States Department of Justice Sexual Abuse Reporting System. That system is accessible through the prisoner computer system. The complaint is supposed to go directly to the Department of Justice Office of the Inspector General. I forwarded that complaint to the Fort Dix warden as well as my unit manager. I requested protective custody on March 4, but Lt. Morales, a unit supervisor, refused to provide that until March 5, 2021.

57. Later in the day on March 4, 2021, both Ry and I filed two PREA Complaints against Danny and Mejia. In the complaints we detailed the extortion, physical and sexual abuse, and reported the contraband cell phone and knives that Danny was using.

58. After Ry and I filed the PREA complaints, we were summoned to Lt. Morales's office. I explained to Lt. Morales what was happening to me, including being raped and threatened at knifepoint. Lt. Morales held me and Ry in his office for approximately eight hours. During that time, medical staff met with me and gave me HIV prevention medication.

59. After approximately eight hours in Lt. Morales's office, I was moved in the early morning of March 5, 2021 to Unit 5751, a three-story unit in which each prisoner is in a cell accessible to all others through the stairwells. I was still fearful for my life because male prisoners

could reach me whenever they wished and there were other members of the Ñetas there. Danny could communicate with them via the contraband cell phones. I stayed in my cell as much as possible and tried my best to avoid contact with other prisoners in the unit.

60. I was placed on the first floor of Unit 5751—which is reserved for persons with disabilities—but was told by a counselor that I could not stay much longer because I do not have a disability. The counselor me that I would have to return to Unit 5702.

61. On the morning of March 5, 2021, I also spoke with Lt. Atkinson from Special Investigation Services. He did not seem to care about the physical and sexual violence I had experienced. Instead, he wanted more information about the role of my counselor, A. Milletta (sp.), in the spread of illegal cell phones and drugs at Fort Dix. I also informed Lt. Atkinson where the knives and phones were being hidden.

62. I was so afraid to return to the unit with the prisoners who had demanded sex and extorted money from me that I again requested to be moved to protective custody. I did so even though I know from past experience how psychologically and emotionally devastating the experience of being held in protective custody would likely be for me. On March 5, 2021, I was moved to protected custody where I remain today.

63. In addition to the isolation of protective custody, the circumstances there have significantly increased my symptoms from gender dysphoria. The only female commissary items that I am allowed are a bra and panties and I am only allowed to shave once a week, leaving me with facial hair that is deeply disturbing for me.

64. Soon after I was placed in protective custody, Danny was also moved there. Fortunately, he was in a separate cell. However, he threatened me from his cell and tried to

intimidate me by telling the other prisoners in protective custody that I was a snitch and giving them contact information for my friends and family.

65. On March 17, 2021, Danny was released to a half-way house pre-release program.

66. Even though Danny has been released, I continue to be fearful of being released back to general population where Mejia, other members of the Ñetas, and other male prisoners will be able to target me for violence because I am transgender woman and labeled as a snitch.

67. For about five years I have struggled to get the surgical treatment I need for gender dysphoria and transfer to a female facility. My hopefulness when I learned that I was being transferred from USP-Marion to FMC-Lexington to receive GCS was soon taken away when I learned that surgery was unavailable there. BOP's choice to transfer me to Fort Dix – rather than a female facility—has left me even more hopeless. I am the most distraught I have ever been from what I have endured these past few months.

68. I have requested medication for the anxiety, stress, and depression I am experiencing from being denied the gender dysphoria treatment I need and my constant fear for my life. I suffer from panic attacks, sleeplessness, and loss of appetite. I am once again facing a difficult struggle each day to keep from harming myself or ending my life entirely.

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Dated: April 1, 2021

/s/ Cristina Nichole Iglesias
Cristina Nichole Iglesias[1]

[1] Plaintiffs' counsel spoke with Ms. Iglesias on April 1, 2021 by telephone. During this conversation Ms. Iglesias authorized Plaintiffs' counsel to file this declaration on her behalf. Plaintiffs' counsel will supplement this declaration with a signed copy from Ms. Iglesias once it is returned to them by U.S. Mail from Ms. Iglesias.