UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRISTINA NICHOLE IGLESIAS | ) | |
| (a.k.a. Cristian Noel Iglesias), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-00415-RJN |
| v. | ) | |
| | ) | |
| IAN CONNORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6), Defendants the Federal Bureau of Prisons ("BOP"), Michael Carvajal, Chris Bina, Ian Connors, Alix McLearen, Thomas Scarantino, Dan Sproul, Dr. Jeffery Allen, and Donald Lewis, each in their official capacities (collectively, "Defendants"), hereby move for the dismissal of Plaintiff Christina Nicole Iglesias' Second Amended Complaint.

## INTRODUCTION

Plaintiff Cristina Iglesias, a transgender inmate, has filed a three-count complaint against BOP and certain federal officials in their official capacity. Plaintiff alleges that the failure to place her in a women's facility violates her Fifth and Eighth Amendment rights and exposes her to an unreasonable risk of danger from male inmates. She further claims that BOP's determination that permanent hair removal and gender-affirming surgery are not appropriate at this juncture violates her Eighth Amendment rights. Plaintiff seeks to enjoin Defendants to require that she be evaluated by medical personnel qualified to treat her medical condition of gender dysphoria; protected from the risk of harm she allegedly faces in a men's facility; and provided with permanent hair removal and gender-affirming surgery.

Plaintiff's operative complaint is deficient for a number of reasons. First, venue is improper in this district. Plaintiff's sole basis for contending that venue is proper is the assertion that the majority of the events giving rise to this action occurred in the district. But Plaintiff cannot establish that *any* of the events giving rise to this action occurred in this district, let alone a substantial part as required by 28 U.S.C. § 1391(b)(2). Plaintiff's only allegation concerning events occurring in this district is that she made one of her multiple requests for gender-affirming surgery while incarcerated at USP Marion and that the request had not been granted. However, when Plaintiff filed her operative pleading, the Second Amended Complaint, she was incarcerated at the Fort Dix Federal Correctional Institution in

New Jersey ("FCI Fort Dix"). Even if venue were proper here, the Court should transfer the case to the U.S. District Court for the District of Columbia for the convenience of the parties.

Second, Plaintiff's claims against the individual defendants in their official capacity should be dismissed as redundant. As the Seventh Circuit has recognized, official-capacity claims are claims against the government. And, in dismissing her claims against the individual defendants in their individual capacity, Plaintiff acknowledged that BOP is capable of providing all the relief that she has requested. Dismissal of the individual defendants is therefore warranted.

Third, this Court lacks jurisdiction over Counts II and III of Plaintiff's Second Amended Complaint, which concern claims for placement in a women's facility and the alleged harm she experienced from male inmates while in a men's facility. Whether viewed under the standing or mootness doctrines, there is no Article III "Case or Controversy" concerning Plaintiff's placement in a women's facility that may be redressed by an order of the Court. Before Plaintiff filed the operative complaint, Defendants made the decision to transfer her to a women's facility. That decision was made in good faith, and there is no reason to conclude that Defendants will transfer her back to a men's facility in the absence of legitimate safety and security concerns. This is particularly true where Plaintiff will be eligible for placement in a Residential Reentry Center (halfway house) in five months. Accordingly, the Court should dismiss Counts II and III for lack of jurisdiction.

Finally, Plaintiff has failed to state plausible Eighth Amendment claims based on her requests for permanent hair removal or gender-affirming surgery. Plaintiff alleges in her complaint that Defendants have ignored her serious *medical* need for permanent hair removal. But Plaintiff acknowledges in her complaint that she failed to provide any medical support to BOP in support of her request. Accordingly, Plaintiff has failed to plead a plausible Eighth Amendment violation based on the denial of permanent hair removal, as she failed to allege deliberate indifference to a serious medical need.

Similarly, Plaintiff has failed to allege a plausible Eighth Amendment claim regarding gender-affirming surgery. Plaintiff's complaint acknowledges that BOP's experts considered her request and made the judgment that gender-affirming surgery was not yet appropriate given the instability of her hormone levels and her then-lack of suitability for transfer to a women's facility. While Plaintiff may disagree with that judgment, under Seventh Circuit precedent, such disagreement does not amount to deliberate indifference sufficient to support a plausible Eighth Amendment claim.

## I.   **BACKGROUND**

### A.   Factual Background

Plaintiff is a transgender woman currently in the custody of the Federal Bureau of Prisons at the Carswell Federal Medical Center ("FMC Carswell"), a women's facility located in Fort Worth, Texas. Plaintiffs' Second Amended Complaint ("2d Am. Compl.") at ¶ 1, ECF No. 106; Declaration of Alison Leukefeld ("Leukefeld Decl.") at ¶ 6.[1] Plaintiff entered BOP custody in 1994, where she was soon diagnosed with gender identity disorder. 2d Am. Compl. ¶ 32. In 2015, BOP's Chief Psychologist changed her diagnosis to gender dysphoria to reflect the updated diagnosis in the DSM-V. *Id.* Plaintiff alleges that BOP medical staff then approved her to begin hormone therapy and that she is permitted to wear bras and women's underwear and to use make up and female grooming items when they are available to her. *Id.* at ¶¶ 34-35.

Plaintiff contends that, since 2016, she has made numerous formal and informal requests for gender-affirming surgery. *Id.* ¶ 40. BOP records indicate that Plaintiff has made formal administrative

---

[1] District courts may consider facts outside the complaint in deciding a motion to dismiss for improper venue or lack of standing without converting the motion into one for summary judgement. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277 (7th Cir. 2020) (lack of standing); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) (improper venue). The court also may consider "documents . . . attached to the complaint, documents . . . central to the complaint, and . . . refer to in it, and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n. 2 (7th Cir. 2017) (quotation omitted).

3

remedy requests while housed in facilities in New Jersey, North Carolina, Maryland, Illinois, and Kentucky. Leukefeld Decl.¶ 5 & Att. 1. Plaintiff's most recent request, made while she was incarcerated in the Federal Medical Center at Lexington, Kentucky ("FMC Lexington"), occurred in March 2020. *Id.* In response, Defendants explained that Plaintiff was not yet a suitable candidate for surgery. ECF No. 110-1 at 6. BOP considers approving an inmate for gender-affirming surgery "after real life experience in [the inmate's] preferred gender." *Id.* For a transgender inmate, that real life experience includes living in a women's facility. *Id.* Defendants then explained that it considered the various factors in deciding whether to place Plaintiff in a women's facility, including: (1) her "health and safety, [her] behavioral history, [her] overall demeanor, and [her] likely interactions with other inmates;" (2) "whether placement would threaten the management and security of the institution and/or pose a risk to other inmates in the institution;" and (3) "whether there has been significant progress towards transition as demonstrated by [the inmate's] medical and mental health history." *Id.* Defendants also reviewed her most recent laboratory results, which showed that Plaintiff's hormone levels had not maximized and stabilized. *Id.* Accordingly, Defendants concluded in March 2020 that, after consideration and review, her then-current designated facility—FMC Lexington—was appropriate. *Id.*

Plaintiff also has requested permanent hair removal from the BOP. 2d Am. Compl. ¶¶ 59, 60. BOP responded to her request on April 6, 2018, and explained that Plaintiff had not reported any major emotional or environmental problems during her last encounter with Psychological Services and that her clinical provider had not indicated the need for hair removal as part of her treatment for gender dysphoria. *Id* .¶ 60.

Plaintiff alleges that she has been subjected to "extensive sexual abuse, physical abuse, and harassment by BOP staff and other prisoners" while in male prisons, and that she has made "numerous requests to BOP staff to be transferred to a women's facility in order to avoid further

4

harm." 2d Am. Compl. at ¶¶ 49-58; 83-84. Plaintiff contends that "[t]ransferring Ms. Iglesias to [a] women's facility would reduce the serious risk of physical and sexual violence she faces every day that she is in a men's prison." *Id.* at ¶ 92. On April 20, 2021, BOP's Transgender Executive Council ("TEC")—which is located in Washington, D.C.—recommended Plaintiff's transfer to a women's facility. Leukefeld Decl. ¶¶ 2, 3. The Designation and Sentence Computation Center approved the TEC's recommendation on April 27, 2021. ECF No. 111. On May 25, 2021, Plaintiff arrived at FMC Carswell, a female BOP facility located in Fort Worth, Texas. *Id.*

B. <u>Procedural History of this Case</u>

Plaintiff, then an inmate at United States Penitentiary, Marion ("USP Marion"), filed a *pro se* complaint in this case on April 12, 2019. ECF No. 1. While that complaint was pending, the Court assigned counsel to Plaintiff and dismissed the *pro se* complaint without prejudice on mootness grounds. ECF No. 40. Plaintiff was housed at FMC Lexington when she filed her First Amended Complaint ("Amended Complaint"), ECF No. 52, on September 8, 2020. *Id.* ¶ 5. The Amended Complaint asserted three counts—an Eighth Amendment claim for failure to provide adequate medical care for Plaintiff's gender dysphoria, *id.* ¶¶ 94-100, a Fifth Amendment equal protection claim based on her placement in a male prison facility, *id.* ¶¶ 101-109, and an Eighth Amendment claim alleging a failure to protect her from serious harm, *id.* ¶¶ 110-114. Pursuant to 28 U.S.C. § 1915A(b), the Court screened the Amended Complaint for merit, allowing claims against only certain individual defendants to proceed. ECF No. 70.

Plaintiff sought reconsideration of the Court's screening order, ECF No. 74, but did not wait for the Court to resolve that motion before moving for leave to file a second amended complaint, ECF Nos. 85, 85-1. The proposed pleading ("Second Amended Complaint"), filed while Plaintiff was housed at FCI Fort Dix in New Jersey, alleged the same claims as the Amended Complaint, with some modifications to the parties against whom the claims were asserted. *Compare* Am. Compl., *with* 2d Am.

Compl. On April 23, 2021, the Court granted Plaintiff's motion for leave to file the Second Amended Complaint, which Plaintiff filed on April 30, 2021. ECF No. 116 at 4. On June 17, 2021, the Court conducted its preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A, and permitted the same three claims to proceed that it had previously permitted with respect to the Amended Complaint, with some substitutions for different defendants. *Id.* at 5-6.

Before filing the Second Amended Complaint, Plaintiff moved for a preliminary injunction based on a subset of the claims asserted in the Amended Complaint. *See* Pl.'s Mot. & Mem. in Supp. of Prelim. Inj. ("Motion") at 10-16, ECF No. 93. That motion is fully briefed, and the Court has scheduled a hearing on the Motion for July 28, 2021. ECF No. 121.

Before Plaintiff filed the Second Amended Complaint, BOP decided to transfer her to a women's facility, ECF No. 103, and she currently resides at FMC Carswell, a women's prison in Fort Worth, Texas. ECF No. 111.

## ARGUMENT

### I.      STANDARD OF REVIEW

"To survive a motion seeking dismissal under Rule 12(b)(1), a plaintiff must 'clearly allege facts demonstrating each element' required to establish [s]he has standing." *Hanysek v. FCA US LLC*, No. 18-cv-509-NJR-GCS, 2019 WL 1239265, at *3 (S.D. Ill. Mar. 18, 2019) (Rosenstengel, J.) (citation omitted). Plaintiff bears the burden of establishing jurisdiction. *Id.; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing, Plaintiff must show that: "(1) [she is] under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010); *see Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). When, as in this lawsuit, "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to

the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007); *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) ("Thus, our jurisdictional inquiry must proceed on the basis of the First Amended Complaint, not the original one."). In addition, "[b]ecause an injunction is a forward-looking remedy, a plaintiff seeking this form of relief has standing to sue for an alleged future injury only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (quotations omitted) (cleaned up).

Rule 12(b)(3) requires dismissal where venue is "wrong" or "improper." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Plaintiff bears the burden of proving that venue is proper. *United Ironworkers, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 3:18-CV-533-NJR-DGW, 2019 WL 77334, at *4 (S.D. Ill. Jan. 2, 2019) (Rosenstengel, J.). If venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *United States ex rel. Hedley v. ABHE & Svoboda, Inc.*, No. 11-CV-0348-NJR-DGW, 2014 WL 12740150, at *3 (S.D. Ill. Sept. 16, 2014) (Rosenstegnel, J.) (quoting 28 U.S.C. § 1406(a)).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). While the Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "legal conclusion[s] couched as . . . factual allegation[s]" are "disentitle[d to] the presumption of truth." *Id.* at 678, 681 (citation omitted). Although under Rule 12(b)(6) the Court generally may not rely on material outside

7

the pleadings, it may consider materials incorporated into the complaint by reference, as well as judicially noticeable materials, without converting the motion into one for summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

## II.   VENUE IS IMPROPER IN THIS DISTRICT.

Plaintiff cannot meet her "burden of establishing that venue is proper" in this Court. *Graves v. Pikulski*, 115 F. Supp. 2d 931, 934 (S.D. Ill. 2000). Because Plaintiff pleads that venue is appropriate based on "events giving rise to this action,"[2] 2d Am. Compl. ¶ 4, she must demonstrate that "a substantial part of the events or omissions giving rise to [her] claim occurred" in this district, 28 U.S.C. §1391(e)(1)(B). She cannot meet this burden.

"District courts within the Seventh Circuit consistently follow the general rule that venue is determined at the time an action commences." *Schneider v. Brennan*, No. 15-CV-263-JDP, 2016 WL 29642, at *2 (W.D. Wis. Jan. 4, 2016) (collecting cases). "An amended complaint supersedes and replaces the original complaint, rendering the original complaint void." *Smith v. Bond Cnty. Jail*, 17-cv-006-JPG, 2017 WL 446967, at *5 (S.D. Ill. Feb. 2, 2017). Thus, when there is an amended complaint, the determination of venue is made at the time of the filing of the operative complaint. *Cf. Magee v. McDonald's Corp.*, No. 16 C 5652, 2017 WL 11178816, at *3 (N.D. Ill. Feb. 15, 2017) (standing determined at time of filing of operative, not original, complaint).

Plaintiff's Second Amended Complaint seeks "only declaratory and injunctive relief" to remedy a purported "ongoing and significant harm" resulting from allegedly "being denied medically necessary treatment for her gender dysphoria . . . [and] refus[ing] her requests to be transferred to a women's

---

[2] In the same paragraph, Plaintiff states that "Defendants are subject to personal jurisdiction in this district." 2d Am. Compl. ¶ 4. Not only does Plaintiff fail to offer any allegations in support of this assertion, *see Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (non-conclusory, non-speculative allegations required to plead personal jurisdiction), but it is not an independent basis for venue, *see* 28 U.S.C. §§ 1391(b)(2), (e)(1).

prison." 2d Am. Compl. ¶¶ 1; 3. In such cases, "[i]t seems abundantly clear that the 'events and omissions' relevant to this case took place predominantly at [the federal prison where plaintiff is incarcerated], and that the proper venue for this case under § 1391(b) was . . . where the prison is located." *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) (addressing venue in a prisoner's claim for failure to provide medical treatment). At the time of filing, Plaintiff was incarcerated at FCI Fort Dix in New Jersey. 2d Am. Compl. ¶ 5. All of Plaintiff's requests for transfer to a women's facility as well as her requests for various medical treatments were considered by the TEC in Washington, DC, which formulated recommendations to address Plaintiff's gender dysphoria. Leukefeld Decl. ¶ 2. BOP personnel at Fort Dix would then be responsible for providing medical care and/or for requesting a transfer for Plaintiff. *Id.* ¶ 6. The order for a transfer was approved by the Designation and Sentence Computation Center in Grand Prairie, Texas. *Id.* None of the operative acts or omissions in the Second Amended Complaint occurred in the Southern District of Illinois, much less the "substantial part of the events or omissions giving rise to [her] claim occurred" necessary for venue to be proper. 28 U.S.C. § 1391(e)(1)(B). This case should therefore be dismissed for improper venue.

Plaintiff's contrary argument that her incarceration at USP Marion was a "historical predicate" of her claim and thus sufficient to confer venue is unavailing. ECF No. 107 at 2 (quoting *Hedley*, 2014 WL 12740150, at *7). For events to be sufficient to establish venue "the events or omissions must have more than 'some tangential connection' to the chosen venue." *Brunswick Corp. v. Thorsell*, No. 13 C 9222, 2014 WL 1612668, at *2 (N.D. Ill. Apr. 21, 2014) (citation omitted)); *see Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015) (historical predicate must "have a 'close nexus' to [plaintiff's] claim" to be substantial (citation omitted)). A historical predicate sufficient to stablish venue must be an event that is part of a necessary element of a claim, even if that element of the claim is not in dispute. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 32-43 (1st Cir. 2001) (contrasting the "historical predicate" of a claim with the primary "point of dispute between the parties" and holding the former can be enough

for venue to be proper);[3] *see also Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 965 (N.D. Ill. 2008) (rejecting historical predicate argument based on location of post-tort injuries because "[t]he tort did not occur within the district"). Because Plaintiff's past requests for gender affirming surgery do not establish any necessary element of the claims in the Second Amended Complaint, they do not constitute the historical predicates for those claims and are insufficient to establish venue. Dismissal is therefore appropriate under Federal Rule of Civil Procedure 12(b)(3).

### III.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE IN THE INTEREST OF JUSTICE AND FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES

In the event the Court does not dismiss this case for improper venue, the Court should transfer it. Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." This applies because, as explained above, Plaintiff has filed in the wrong court. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." The District of Columbia would be more convenient for the parties and witnesses and venue would have been appropriate there in the first instance.

The only acts or omissions that constitute a substantial portion of the claims in the Second Amended Complaint, and thus establish proper venue in a district, are the conditions of Plaintiff's confinement at FCI Fort Dix in New Jersey and the TEC's consideration of her requests for medical

---

[3] Defendants cite to the First Circuit's decision in *Uffner* because all the district court decisions in this Circuit concerning historical predicate as a basis for venue are traceable to adoption of *Uffner*'s venue analysis being adopted by the district courts in *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002), and *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wisc. 2006). *See, e.g.*, *Hedley*, 2014 WL 12740150, at *5 (citing *Estate of Moore*); *Garcia*, 553 F. Supp. 2d at 965 (citing *Master Tech Products*).

care and transfer in Washington, D.C. Given that Plaintiff is no longer incarcerated at FCI Fort Dix and none of the likely witnesses are located there, transferring this case to New Jersey would not be more convenient or serve justice. Transfer to Washington, D.C., by contrast, would further both those goals. The individuals with the most knowledge about BOP's decision-making concerning Plaintiff's requests for medical treatments for her gender dysphoria and for transfer would be the members of the TEC who considered those requests. Given that the TEC meets in Washington, D.C., it would be far more convenient for them to appear in the U.S. District Court for the District of Columbia than in this Court. It would similarly be more convenient for Defendants, given that BOP officials and counsel for Defendants are also located in that district. Finally, any injunctive relief would be directed at BOP, which is headquartered there. Thus, if the Court opts not to dismiss this case for improper venue, transfer to the District for the District of Columbia is appropriate under either 28 U.S.C. § 1404(a) or § 1406(a).

## IV.   PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL BOP EMPLOYEES IN THEIR OFFICIAL CAPACITY SHOULD BE DISMISSED.

In addition to raising Eighth Amendment claims against BOP for injunctive relief, Plaintiff also has asserted identical claims seeking identical relief against a number of BOP employees in their official capacity. As the Seventh Circuit has held, an official capacity claim "is a claim against [the individual's] office, for which his employer . . . would be liable, [and] it is no different than [the plaintiff's] claim against the [employer] itself." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006); *see Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) ("[N]othing was added by suing the [government official] in his official capacity.").

Plaintiff acknowledges in her complaint that BOP "is the federal agency responsible for the incarceration of adult prisoners sentenced by the federal courts," and that it is "responsible for Ms. Iglesias's medical treatment." 2d Am. Compl. ¶ 6. Indeed, the Parties have stipulated that "BOP is capable of providing all of the relief Plaintiff seeks in her Second Amended Complaint[.]" Joint

Stipulation to Dismiss Certain Claims, ECF No. 114. Given that Plaintiff can obtain any appropriate injunctive relief directly against BOP, the inclusion of official capacity claims against federal officials seeking the identical injunctive relief is inappropriate. Under these circumstances, such claims are "properly dismissed by the district court." *Thanongsinh*, 462 F.3d at 772 n.7 (affirming dismissal of official capacity claim against official because it was duplicative of claim against the school district); *Kielbasa v. EPA*, No. 02-C-4223, 2003 WL 880995, at *3 (N.D. Ill. Mar. 2, 2003) (dismissing with prejudice official capacity claims against individual defendants when the federal agency was the proper defendant). Accordingly, the Court should dismiss the official capacity claims against Carvajal, Bina, Connors, McLearen, Scarantino, Sproul, Allen, and Lewis.

## V.   THE COURT LACKS JURISDICTION OVER HER SECOND AND THIRD CLAIMS FOR RELIEF.

### A.   Plaintiff Lacks Standing To Pursue the Relief Sought In Counts Two And Three of the Amended Complaint

Plaintiff alleges in her second claim for relief that the denial of her placement in a women's facility violates her Fifth Amendment equal protection rights. 2d Am. Compl. ¶¶ 102-110. Plaintiff further alleges in her third claim for relief that Defendants "have been and continue to be deliberately indifferent to the known and substantial risk of serious harm Ms. Iglesias faces from both prison staff and other incarcerated persons as a transgender woman in a men's prison." *Id.* ¶ 113. Plaintiff seeks injunctions requiring that she be housed at an institution consistent with her gender identity and protection from "the known and serious risks of harm she continues to face while housed in a men's prison." *Id.*, Prayer for Relief, (c)-(d).

Before Plaintiff filed her Second Amended Complaint on April 30, Defendants already had decided to transfer her to a women's facility and had notified Plaintiff and the Court of this development. *See* ECF Nos. 103, 103-1.[4] Accordingly, because Plaintiff's standing to sue is based on

---

[4] Plaintiff was transferred to FMC Carswell, a female BOP facility, on May 24, 2021. ECF No. 111.

the operative complaint, *Rockwell Int'l Corp.*, 549 U.S. at 473-74; *Wellness Community-National*, 70 F.3d at 49, and because the decision to transfer Plaintiff to a women's facility was made before the filing of her Second Amended Complaint, Plaintiff lacks an injury that can be redressed by an order of the Court. Plaintiff has thus failed to meet her burden of establishing subject matter jurisdiction over her second and third claims for relief.

### B. Alternatively, Counts Two and Three of Plaintiff's Amended Complaint Are Moot.

Even if the Court were to analyze these claims under mootness instead of standing, dismissal is still appropriate. Article III's narrow limits on federal court jurisdiction are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Because Article III courts exist to resolve concrete "cases" and "controversies," U.S. Const. art. III, sec. 2, if at any point during the course of litigation a plaintiff ceases satisfying Article III standing requirements, "the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). Here, Plaintiff seeks only prospective relief, which means that her claim is moot if she does not challenge a decision that is currently in effect. *See, e.g., Lyons*, 461 U.S. at 105.

In this case, the sole relief Plaintiff seeks with regard to Counts Two and Three of her Second Amended Complaint is an injunction requiring her placement in a women's facility. 2d Am. Compl, Prayer for Relief, (c)-(d). But it is undisputed that Defendants already have provided her the precise relief requested—placement in a women's facility. *See* ECF No. 111. As a result, it is "impossible for [the] court to grant any effectual relief" beyond what Defendants have already done, *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013), and Counts Two and Three are therefore moot.

Plaintiff contends these claims are not moot under the "voluntary cessation" exception to mootness because she could be transferred back to a men's facility in the future. ECF No. 107 at 6-7. Under that doctrine, the voluntary cessation of allegedly unlawful conduct moots a case only where

"(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quoting *Cty. of Los Angeles v Davis*, 440 U.S. 625, 631 (1979)).

While it is the burden of a party asserting mootness to demonstrate that the conduct cannot be expected to recur, *see, e.g., United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), that is a significantly easier showing for a governmental defendant to make. *Ragsdale v. Turnlock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."). As the Seventh Circuit has held, voluntary cessation principles do not apply in the same manner when the government is the defendant where the government's actions "appear genuine." *Fed'n of Advert. Indus. Representatives, Inc. v. Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (quoting *Manguson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991)).[5]

Defendants' decision to transfer Plaintiff to a female institution suffices to show that there is no reasonable expectation of Defendants changing their mind and placing her in a male institution in the future. Indeed, Defendants have made clear that it "[i]n recommending Iglesias be housed at a women's facility, it was the TEC's intention that her placement at a female facility continue, so long as it is consistent with BOP policy" concerning inmate housing. Leukefeld Decl. ¶ 8; *see Citizens for Responsibility & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 14 (D.D.C. 2019) (holding that EPA's

---

[5] Other courts of appeals are in accord. *See Sossman v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom.*, 563 U.S. 277 (2011) ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigating posturing."); *see also, e.g., Brown v. Buhman*, 822 F.3d 1151, 1167-69 (10th Cir. 2016) (government action "provides a secure foundation for mootness so long as it seems genuine.") (citation omitted); *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable will *not* recur." (emphasis in original)); *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010).

affirmation in a declaration "that it intends to maintain the portion of the policy that was revised to address the Complaint's prior challenge" was "sufficient to carry Defendant's burden" under the voluntary cessation doctrine); *see Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006) (holding that HUD's "unchallenged . . . affidavit" indicating that it would no longer renew the policy that the plaintiff challenged mooted the case "[b]ecause the Constitution nowhere licenses [courts] to rule on the legality of an agency policy that no longer exists and that . . . will never again exist."). While speculation about future unlawful action "might be sufficient were Defendants private litigants, such conjecture is insufficient here, where the [defendant] is a governmental entity." *Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 63 (D.D.C. 2012).

Finally, to defeat mootness, any residual effects of the ceased conduct must be "curable by the relief demanded." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991). None of the relief that Plaintiff requests from this Court in Counts Two and Three, however, can provide a more effective remedy than what Defendants have already done: placing Plaintiff in a female institution. Thus, Plaintiff cannot demonstrate that the "voluntary cessation" exception to mootness applies here.

## VI. PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE EIGHTH AMENDMENT CLAIM BASED ON THE ALLEGED DENIAL OF MEDICAL CARE.

To succeed on her claims that the refusal to provide gender-affirming surgery and permanent hair removal violates the Eighth Amendment, Plaintiff must show two things. First, she must show that she is suffering from "a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measures of life's necessities.'" *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). That "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused"; it requires a showing that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to

expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Second, plaintiff must show that "prison officials are deliberately indifferent to this state of affairs." *Gray*, 826 F.3d at 1005 (quoting *Farmer*, 511 U.S. at 834). Plaintiff cannot satisfy either requirement.

Deliberate indifference imposes a "high hurdle," requiring a showing "approaching a total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). More generally, prison officials' conduct is judged based on "the constraints facing the *official*," and managing a prison requires officials to balance competing interests. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Establishing that Defendants were deliberately indifferent to Plaintiff's serious medical needs requires more than showing a mere difference of opinion regarding the appropriate medical care she has received or mere speculation about the medical care she might yet receive. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 107 (1976). "Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference." *Brown v. Wilson*, No. 3:13CV599, 2015 WL 3885984, *5 (E.D. Va. Jun. 23, 2015) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Allegations that are akin to run-of-the-mill medical malpractice claims are insufficient to maintain a viable Eighth Amendment claim. *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. at 835. Courts are reluctant to second-guess medical judgments when prisoners, like Plaintiff, have received medical attention and subsequently dispute the adequacy of that medical care. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Instead, to establish an Eighth Amendment claim, Plaintiff must establish that she was subject to a cruel and unusual punishment because Defendants were so deliberately indifferent to her serious medical needs as to unnecessarily and wantonly inflict pain. *Estelle*, 429 U.S. at 104.

The Supreme Court repeatedly has affirmed that the Eighth Amendment does not authorize courts to superintend prison officials' decisions about how to balance competing interests within the constraints of the prison setting. *See, e.g.*, *Helling*, 509 U.S. at 37. Prison officials act with deliberative

indifference in violation of the Eighth Amendment only if they "know[] of and disregard[] an excessive risk to inmate health or safety," a standard that "incorporates due regard for [officials'] unenviable task of keeping dangerous [individuals] in safe custody under humane conditions." *Farmer*, 511 U.S. at 837, 838, 845 (quotation marks omitted). As the Seventh Circuit recently emphasized, "[c]orrectional administrators must have 'substantial discretion to devise reasonable solutions to the problems they face,'" and courts must give "considerable deference . . . to the judgment of prison administrators" about how to balance competing objectives. *Mays v. Dart*, 974 F.3d 810, 820-21 (7th Cir. 2020) (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012)); *see also Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011). "A prison medical professional faces liability only if his course of treatment is 'such a substantial departure from accepted professional judgment, practice, or standards[] as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citations omitted). Courts therefore must use "caution" in issuing injunctions in the prison context and may not "enmesh[]" themselves "in the minutiae of prison operations." *Farmer*, 511 U.S. at 846-47.

1.  BOP's Decision Concerning Plaintiff's Request for Gender-Affirming Surgery Does Not Violate the Eighth Amendment.

Plaintiff acknowledges that she has received care from BOP for the treatment of her gender dysphoria, including hormone therapy, the provision of female garments, and female grooming products and makeup. 2d Am. Compl. ¶¶ 34-35. She further admits that Defendants made the judgment that she was not eligible for gender-affirming surgery at the time she made the request in 2019 because, at that time, she was not suitable for transfer to a women's facility and her hormone levels had not been maximized or stabilized. *Id.* ¶ 48. Accordingly, the legal issue presented here is a narrow one: whether Defendants violated the Eighth Amendment where they have provided Plaintiff medical care for her gender dysphoria, and where she disagrees with Defendants' judgment that gender-affirming surgery is not yet appropriate for her. As the Seventh Circuit has explained, the Eighth Amendment is not violated

17

under these circumstances.

In *Campbell*, 936 F.3d at 548, the Seventh Circuit held that "prisons aren't obligated to provide every requested treatment once medical care begins." *Id.* at 548. Rather, "[d]eciding whether to provide additional medical interventions—especially when the inmate's preferred course of treatment poses considerable challenges to prison administration—is not the same as deciding to provide no treatment at all." *Id.* at 549. The Seventh Circuit emphasized that "[s]urgery is 'the last and the most considered step in the treatment process,' and not all gender-dysphoric patients are surgical candidates." *Id.* at 539 (citing WPATH standards). Accordingly, the federal courts of appeal have held that the denial of gender-affirming surgery does not violate the Eighth Amendment when an inmate receives other forms of treatment, such as hormone therapy, and an individualized determination is made that additional medical care is unwarranted. *See Lamb v. Norwood*, 899 F.3d 1159, 1163 (10th Cir. 2018) (prison officials not deliberately indifferent when they provided inmate counseling and hormone treatment for gender dysphoria and prison doctor stated that gender-affirming surgery was unnecessary).[6]

Here, Plaintiff acknowledges that she has received significant treatment for her gender dysphoria, including the provision of hormone therapy, mental health counseling, female undergarments, and makeup. 2d Am. Compl. ¶¶ 34-35. Defendants made the reasoned medical judgment that gender-affirming surgery was not appropriate for Plaintiff at this juncture for two reasons. First, Plaintiff had not lived in a gender-conforming role, including placement in a women's facility, for twelve months since

---

[6] Other federal courts of appeals are in accord. *See Kosilek v. Spencer*, 774 F.3d 63, 90-91 (1st Cir. 2014) (*en banc*) (holding that a prison's decision not to provide gender affirming surgery did not violate the Eighth Amendment where the prison provided other treatment options and the inmate simply disagreed with the prison's medical decisions); *Wittkowski v. Levine*, 382 F. Supp. 3d 107, 115 (D. Mass. 2019) (applying *Kosilek* and rejecting claim for gender affirming surgery); *Keohane v. Fla. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1274 (11th Cir. 2020) (holding that denial of gender affirming surgery at most constituted negligence and explaining that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment.").

being incarcerated under the custody of BOP. *Id.* ¶ 48. As confirmed in Defendants' response to Plaintiff's administrative request for gender-affirming surgery, such surgery "is considered after real life experience in your preferred gender," which includes placement in a women's facility. 2d Am. Compl. Ex. 3. In March 2020, after conducting an individualized assessment of Plaintiff's housing Defendants concluded that transfer to a women's facility was not yet appropriate. *Id.* Second, and relatedly, Defendants had concluded that Plaintiff's placement in a women's facility was not warranted at that time because her hormone levels had fallen below their goal and had not been maximized. *Id.* In reaching these conclusions, Defendants consulted with BOP's Transgender Clinical Care Team, which is comprised of psychologists and medical doctors, among other BOP officials. 2d Am. Compl. ¶¶ 8, 12, 13; Ex. 2. Plaintiff may disagree with Defendants' medical judgment. But such disagreement does not constitute deliberate indifference sufficient to establish an Eighth Amendment violation. Accordingly, Plaintiff has failed to allege a plausible Eighth Amendment claim for gender-affirming surgery.

> 2. <u>Plaintiff Cannot Establish an Eighth Amendment Violation Based on Defendant's Refusal to Provide Hair Removal.</u>

Plaintiff has failed to allege a plausible Eighth Amendment claim based on the denial of permanent hair removal because the Eighth Amendment does not mandate that prisoners receive cosmetic hair removal. As the Seventh Circuit has explained in reviewing claims for electrolysis, "our cases offer no indication that denying arguably nonmedical cosmetic accommodations violates the Eighth Amendment." *Campbell*, 936 F.3d at 549. Courts have rejected Eighth Amendment claims for hair removal in the absence of evidence that the procedure was medically necessary. *Murillo v. Godfrey*, No. 2:18-cv-02342, 2020 WL 1139811, *14 (C.D. Cal. Mar. 9, 2020) (denying Eighth Amendment claim by transgender inmate for hair removal where inmate alleged that her "facial hair was torture" but failed to provide any evidence that removal was medically necessary); *Renee v. Neal*, 483 F. Supp. 3d 606, 615 (N.D. Ind. 2020) (holding that denial of permanent hair removal "is not a clearly established federal constitutional right").

19

Here, Plaintiff alleges in her Second Amended Complaint that "Defendant Connors denied her appeal [for permanent hair removal] on the grounds that Ms. Iglesias did not report major emotional or environmental problems during her last encounter with Psychological Services and that her clinical provider had not indicated the need for hair removal as part of her treatment for gender dysphoria." 2d Am. Compl., ¶ 60. Under these circumstances, Plaintiff has failed to allege facts sufficient to establish an Eighth Amendment violation based on the denial of permanent hair removal as a medically necessary procedure.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

Dated: July 8, 2021

STEVEN D. WEINHOEFT
United States Attorney

LAURA J. JONES
Assistant United States Attorney

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/ Joshua E. Gardner*
JOSHUA E. GARDNER
Special Counsel
GARY D. FELDON
Trial Attorney
United States Department of Justice
Federal Programs Branch
1100 L St. NW, Room 11502
Washington, DC 20530
Tel.:      (202) 305-7583
Fax:      (202) 616-8470
Email:  joshua.e.gardner@usdoj.gov

*Counsel for Defendants*