# **EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS), | |
| Plaintiff, | Case No. 19-cv-00415-RJN |
| v. | Judge Nancy J. Rosenstengel |
| IAN CONNORS, *et al.*, | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF DR. RANDI ETTNER, Ph.D., IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Dr. Randi Ettner, hereby state:

  1. I am a clinical and forensic psychologist retained by counsel for Plaintiff Cristina Iglesias.

  2. I have decades of experience in the diagnosis and treatment of gender dysphoria. My qualifications are set forth in detail in my Declaration of April 5, 2021 (Dkt. 93-1), as well as my curriculum vitae attached as Appendix A to that declaration.

  3. I am providing this Supplemental Declaration to report the findings of my recent assessment of Ms. Iglesias.

  4. On July 20, 2021, I conducted a full psychological assessment of Ms. Iglesias by videoconference, to determine her current status and the adequacy of the medical treatment she is receiving. My assessment included the administration of four statistically reliable and valid psychometric tests. I was able to spend at least two hours conducting this assessment, the full time I needed to complete it. This was a standard evaluation comparable to many others that I have conducted. It was conducted by videoconference, which is comparable to how I have conducted many other assessments in the last year.

5.     Ms. Iglesias has persistent, early-onset gender dysphoria. She was gender dysphoric as a child and, at age 13, she left home, travelling to California and New York, seeking acceptance as a female. By 15 or 16, she was taking birth control pills to feminize her appearance.

6.     At age 18, Ms. Iglesias was incarcerated. She did not know that there was a "name" for the intractable feeling that she was "really female." In 2000, she received a diagnosis of gender identity disorder, but didn't know what that meant. Only after she attempted auto-castration and was sent to a medical facility did she receive an explanation of the source of her lifelong despair: the condition then referred to as "gender identity disorder."

7.     In 2011, Ms. Iglesias requested cross-gender hormones, the appropriate and medically indicated treatment for her gender dysphoria. In 2015, she ultimately received hormonal therapy.

8.     While hormones are an essential element of treatment; they alone are not sufficient for patients with severe gender dysphoria, like Ms. Iglesias.

9.     As with all medical conditions, treatment for gender dysphoria must be individually based. Patients who have severe gender dysphoria require both medical and surgical interventions. Individuals with early-onset gender dysphoria that persists into adolescence, including Ms. Iglesias, typically suffer the most severe expression of the condition. By analogy, type-one diabetes appears in childhood and differs from type-two diabetes, which typically is a disease arising in adulthood. The treatment of the conditions can differ, with the latter often being less severe and not necessarily requiring insulin.

10.    After years of cross-gender hormones, Ms. Iglesias has been *hormonally reassigned*. In other words, she has the same circulating sex steroid hormones as perimenopausal females. Her testosterone levels are consistently in the reference range appropriate for females.

11.     Hormones have a primary effect on the brain, but also regulate every bodily system. Due to her long-term hormone therapy and resultant estrogen levels comparable to other females, Ms. Iglesias has the secondary sex characteristics of a woman. She has normal female breast development, softened skin, diminution of body hair, absence of male pattern baldness, redistribution of body fat consistent with a female-shaped body, loss of muscle mass, and genital changes. Ms. Iglesias is well groomed, with neatly braided hair, moderate makeup, and manicured nails.

12.     Ms. Iglesias's current placement in a female correctional facility is entirely appropriate and an important component of her treatment for gender dysphoria. Living in a female facility not only allows Ms. Iglesias to be safe from the sexual abuse and exploitation she has experienced in men's correctional facilities, but also affords her the medically necessary ability to live congruently and obtain the female accoutrements that promote social-role transition.

13.     However, living in a female facility does not *cure* gender dysphoria for someone with serious gender dysphoria, like Ms. Iglesias. The cure is surgical reconstruction of the genitalia. For transgender women, genital confirmation surgery has two therapeutic purposes. First, removal of the testicles eliminates the major source of testosterone in the body. Second, the patient attains body congruence resulting from the normal appearing and functioning female urogenital structures. Both outcomes are crucial in eliminating Ms. Iglesias's gender dysphoria.

14.     It is my opinion that Ms. Iglesias also currently has the dual diagnoses of Posttraumatic Stress Disorder (PTSD) and Major Depressive Disorder. The PTSD symptomatology resulted from living amongst male prisoners and the intentional intimidation, harassment, and sexual abuse she experienced. She has clinically elevated indicia of trauma, evidence of suicidal ideation, and scores in the severe range on measures of depression and anxiety.

15. It is clinically significant that Ms. Iglesias is currently on three psychotropic medications: mirtazapine and fluoxetine are anti-depressant medications, and buspirone is an anxiolytic (anti-anxiety) medication. The failure of these medications to resolve the depression and anxiety she is experiencing is because Ms. Iglesias's symptoms stem from her gender dysphoria. When depression and/or anxiety are attendant to gender dysphoria, they do not respond to these otherwise efficacious medications.

16. Ms. Iglesias is currently struggling with devolving mental health. She has consolidated her female identity long ago, but can't resolve the distress of having male genitalia. She describes her genitals as a "cancer" that makes life "torture." Although she is readily accepted by her female peers, she can't escape what she considers "a death sentence"—the unremitting distress of being only "partially female."

17. With normal aging, cortisol levels increase. For gender dysphoric individuals, elevated cortisol alters brain chemistry and intensifies gender dysphoria. Ms. Iglesias's distress related to her genitals will continue to intensify, with no means of relief. Her immediate need for surgery is great and will increase further over time.

18. Having to shave her face is humiliating, and also compounds this distress. Hair removal, particularly removal of facial hair, is an essential medical treatment for transgender women. Facial and body hair are the stigmata of masculinity, and inflame gender dysphoria. Permanent hair removal is not a cosmetic procedure when there is an underlying medical condition, such as gender dysphoria or polycystic ovary syndrome in women. Ms. Iglesias requires permanent hair removal.

19. Gender dysphoria is a serious but treatable medical condition. Without adequate, appropriate treatment, incarcerated transgender women often attempt auto-castration or attempt

suicide, as their resiliency erodes. For Ms. Iglesias, these sequelae can be prevented with the provision of medically necessary hair removal and surgery.

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Dated: 1-28-2021                          Dr. Randi Ettner, PhD.
                                          Dr. Randi Ettner, Ph.D.