## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

CRISTINA NICHOLE IGLESIAS
(a.k.a. CRISTIAN NOEL IGLESIAS),

                    Plaintiff,

        v.

FEDERAL BUREAU OF PRISONS, *et al.*,

                    Defendant.

Case No. 19-cv-00415-NJR

Judge Nancy J. Rosenstengel

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff Cristina Nichole Iglesias is a transgender woman in the custody of the Federal Bureau of Prisons ("BOP"). As has been true across decades of her incarceration, Defendants continue to violate Ms. Iglesias's constitutional rights by both denying her adequate health care for her gender dysphoria and failing to keep her safe. While Defendants attempt to assert a range of procedural and substantive objections, none meets the heavy burden required for dismissing Ms. Iglesias's case and denying her her day in court.

Venue remains proper in the Southern District of Illinois, where Ms. Iglesias repeatedly sought gender-confirmation surgery ("GCS"), permanent hair removal, and transfer to a women's prison during her time at United States Penitentiary, Marion ("USP-Marion"). Defendants do not dispute that this Court retains jurisdiction over Ms. Iglesias's deliberate-indifference claim under the Eighth Amendment. Jurisdiction also exists for Ms. Iglesias's equal-protection and failure-to-protect claims, as well, because standing exists and the case is not moot. Ms. Iglesias has standing because Defendants caused her ongoing injuries that are redressable by this Court. Nor are Ms. Iglesias's claims mooted by Defendants' voluntary decision to transfer her, given the threat of retransfer to a men's prison—and BOP's continued reliance on her time spent in men's prisons to

deny her GCS. Separately, Ms. Iglesias's official-capacity claims should not be dismissed because she is seeking injunctive relief to prevent ongoing violations of constitutional rights and has properly included both BOP and specific official Defendants. Finally, Ms. Iglesias's Eighth Amendment deliberate-indifference claim is well pleaded as to the urgent medical treatment she requires for gender dysphoria, including both GCS and permanent hair removal.

Overall, Ms. Iglesias meets the straightforward procedural and substantive showings required of her to survive a motion to dismiss under Rule 12.

## FACTS

Ms. Iglesias is a transgender woman in the custody of BOP. She is being denied medically necessary treatment for her gender dysphoria by Defendants—including GCS, permanent hair removal, and social-transition treatment—which causes her ongoing and significant harm. Second Amend. Compl. ("Complaint") ¶ 1. Ms. Iglesias has known from a very young age that she is a woman. *Id.* ¶¶ 28-31. In addition, BOP officials have known that Ms. Iglesias is transgender since 1994, but have consistently denied her adequate medical treatment, housed her in prisons for men, and long refused her requests to be transferred to a women's prison. *Id.* ¶ 32. During her time in men's prisons, Ms. Iglesias has suffered extreme distress, physical and sexual violence, and psychological harm due her being a transgender woman. *Id.* ¶¶ 37-39, 83-91.

Over the past twenty-seven years, Defendants have housed Ms. Iglesias in multiple men's prisons. *See* Compl. ¶ 82. At each facility, she has endured sexual assault and harassment from both inmates and staff based on her gender identity. *Id.* ¶¶ 83-86. Despite seeking transfer to a women's prison since at least 2016, Defendants have denied these requests at each turn. As of April 6, 2021—when Ms. Iglesias filed her pending motion for preliminary injunction—Defendants continually denied Ms. Iglesias's requests for a transfer to a women's prison. On May

25, 2021, Defendants transferred Ms. Iglesias to Carswell Federal Medical Center ("FMC Carswell"), a women's facility in Fort Worth, Texas. *See* ECF No. 111.

Defendants argue that Plaintiff is not yet a suitable candidate for GCS because a prisoner is only considered a candidate for such surgery after twelve months of "real life experience in [her] preferred gender." Def. Mot. to Dismiss ("Def. Mot.") at 4, 18. Defendants also argue that, "[f]or a transgender inmate, that real life experience includes living in a women's facility." *Id.* at 4. Yet, as her Complaint alleges, Ms. Iglesias has had real-life experience as a woman for multiple decades, since she was in tenth grade. Compl. ¶ 31. Defendants' Motion is riddled with many similar disputes over material facts that cannot be resolved on a motion to dismiss.

## ARGUMENT

### I.   STANDARD OF REVIEW.

Defendants' request that this Court test the merits of Ms. Iglesias's claims fundamentally mistakes the required threshold showing she must make at the pleading stage.

A Rule 12 motion does not test the merits of a claim, but rather the sufficiency of the Complaint. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations need only be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, she needs only to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[N]otice pleading is still all that is required" in the wake of *Twombly*. *Currie v. Cundiff*, No. 09-866, 2012 WL 2711469, at *2 (S.D. Ill. Jul. 8, 2012) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). A plaintiff "must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through h[er] allegations, show that it is plausible, rather than

merely speculative, that [s]he is entitled to relief." *Tamayo*, 526 F.3d at 1083. Under this standard, the Court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)); *see Currie*, 2012 WL 2711469, at *2 (noting that courts "accept[] as true all well-pleaded factual allegations and draw[] all reasonable inferences in the plaintiff's favor"). Ms. Iglesias's Complaint certainly meets this bar and states plausible claims against Defendants.

The same plausibility standard applies to motions to dismiss for jurisdictional reasons under Rule 12(b)(1), *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015), with courts "accepting as true the facts alleged in the complaint and drawing reasonable inferences in favor of the plaintiff," *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012). Similarly, to defeat a motion to dismiss under Rule 12(b)(3) on venue grounds, "the plaintiff need only make out a prima facie case" and "the Court assumes that the facts pleaded in the complaint are true and makes all favorable inferences in favor of the plaintiff." *Caretta v. May Trucking Co*., 2010 WL 456754 at *1 (S.D. Ill. Feb. 3, 2010). Ms. Iglesias's Complaint readily satisfies these threshold standards as well.

In addition, Defendants improperly ask this Court to consider facts outside the Complaint in ruling on their motion to dismiss, including a declaration from BOP's Psychology Services Branch Administrator. Def. Mot. at 3 (citing the declaration of Alison Leukefeld). Despite initially urging the Court to consider additional facts only as to venue and standing, *id.* at 3 n.1, Defendants then expand that request and invite the Court to consider additional facts in its assessment of Ms. Iglesias's substantive allegations, *id.* at 7-8 (discussing "material outside the pleadings" in the context of a 12(b)(6) motion to dismiss). The Leukefeld declaration should not be considered for

that purpose as it is flatly not a document "attached to the complaint . . . central to the complaint . . . [or] refer[red] to in it." Def. Mot. at 3 (quoting *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017)). Nor is a declaration prepared expressly for this litigation a document "whose accuracy cannot reasonably be questioned" that is appropriate for judicial notice. *Amin Ijbara*, 860 F.3d at 493 n.2 (citing Fed. R. Evid. 201(b)). It should not be considered in ruling on this motion.[1]

But if this Court wishes to consider material outside the pleadings in ruling on Defendants' motion to dismiss, "it must treat the motion as one for summary judgment and provide each party notice and an opportunity to submit affidavits or other additional forms of proof." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002); *Fleischfresser v. Directors of Sch. Dist. 200*, 15 F.3d 680, 684 (7th Cir. 1994). "This requirement of a reasonable opportunity to respond is mandatory, not discretionary." *Loeb*, 306 F.3d at 479.[2] When matters outside the pleadings are presented on to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

---

[1] Defendants' citation to *Wood*, Def. Mot. at 7-8, is similarly misplaced. Here, unlike in that case, the outside facts are not undisputed and were never referenced by the non-movant. *See United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). In addition, the case Defendants cite regarding the Court's consideration of outside facts as to venue does not support their position. Here, unlike in *Faulkenberg*, there is no express agreement with a venue clause and the outside facts are not undisputed. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011).

[2] Even if this Court were to convert Defendants' Motion into a Rule 56 motion for summary judgment, Rule 12(d) provides that in any such conversion to a Rule 56 motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Obviously, in the absence of any discovery thus far, Ms. Iglesias has not been afforded such an opportunity.

## II.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF ILLINOIS.

Venue is proper in the Southern District of Illinois under § 1391(b)(2), which authorizes civil suits in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see id.* at (e)(1). To establish venue, Ms. Iglesias need only show that a "substantial part" of the events giving rise to her claim occurred in the forum district, "not that a majority of the events took place there." *United States ex rel. Hedley v. ABHE & Svoboda, Inc.*, No. 11-CV-0348-NJR-DGW, 2014 U.S. Dist. LEXIS 199394, at *15 (S.D. Ill. Sep. 16, 2014). Events are "substantial" when they are "part of the historical predicate" of a plaintiff's claim. *Id.* (internal quotes omitted).

Here, the events that occurred while Ms. Iglesias was housed in the Southern District of Illinois at USP-Marion are part of the historical predicate and form a substantial part of the events giving rise to her Fifth and Eighth Amendment claims. Ms. Iglesias made multiple requests for GCS and permanent hair removal at USP-Marion. Compl. ¶¶ 40-44, 59-62. Dr. Randall Pass, USP-Marion's clinical director, confirmed that she met the World Professional Association for Transgender Health ("WPATH") criteria for GCS and should receive it. *Id.* ¶¶ 40-41. Ms. Iglesias also faced sexual and physical abuse and harassment by USP-Marion staff and prisoners, reported such behavior, and made several requests for transfer to a female facility. *Id.* ¶¶ 82-87, 91-94. These events—all of which occurred in the Southern District and undergird Ms. Iglesias's instant claims concerning Defendants' inadequate treatment of her gender dysphoria and protection of her safety—clearly render venue proper. *See Patmore v. Carlson*, 392 F. Supp. 737, 738-39 (E.D. Ill. 1975) (rejecting a motion to dismiss for improper venue because "Plaintiff's cause of action arose . . . when he was a prisoner lodged in Marion Federal Penitentiary, Marion, Illinois" and approving venue in the then-extant Eastern District of Illinois).

Defendants acknowledge that Ms. Iglesias was incarcerated at USP-Marion. Def. Mot. at 5. Nonetheless, they cite *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993), to argue that venue in the Southern District of Illinois is improper and to imply that venue may have lain in the District of New Jersey, where Ms. Iglesias was later incarcerated. But the holding in *Cameron* in fact affirms that venue lies in the Southern District. "It seems abundantly clear that the 'events and omissions' relevant to this case took place predominantly at Terre Haute, and that the proper venue for this case under § 1391(b) was the Southern District of Indiana where the prison is located," rather than in Washington, D.C. *Id.* at 257. At the time the *Cameron* court confirmed that venue was proper in Indiana rather than in Washington, the prisoner had been transferred elsewhere to receive medical treatment in Leavenworth, Kansas. So too with Ms. Iglesias. Venue is proper in the Southern District, where substantial events giving rise to her claims occurred in the prison at USP-Marion, regardless of any alleged happenings in Washington or her subsequent transfer to the BOP medical facility at FMC-Carswell.

Under Seventh Circuit case law, neither subsequent transfers of a prisoner nor later amended complaints render venue in the Southern District improper. First, it would be both impracticable and unjust to require that a prisoner's claims be uprooted and moved to a new venue each time BOP decides to transfer her. *See* Def. Mot. at 5 (cataloguing some of the many states to which Plaintiff has been transferred while in Defendants' custody). Even for habeas cases—where the current location of the prisoner at issue is paramount—the Seventh Circuit recognizes that "a prisoner's transfer from one federal facility to another . . . does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021). Second, the Seventh Circuit has determined venue based on the original complaint, even when a later amended complaint is operative. *See, e.g.*, O*mega Healthcare Investors, Inc. v. Res-Care, Inc*., 475 F.3d 853, 855 (7th

Cir. 2007) (looking to the original complaint for venue, despite the Third Amended Complaint being operative) ("Because seven of the eight facilities that were the subject of the original complaint were located in Indiana, venue in the Southern District of Indiana was proper. By the time it reached this court, the only remaining issue of contention concerned a single facility in Lexington.")

Finally, this Court retains personal jurisdiction over all Defendants. While Defendants raise the topic of personal jurisdiction in a footnote, Def. Mot. at 8 n.2, they do not expressly seek dismissal on grounds that personal jurisdiction is lacking in the Southern District. Nor could they. Defendants clearly fall within Illinois's long-arm statute, 735 ILCS 5/2-209, and evince sufficient contacts to satisfy due-process standards. *See generally Winters-El v. Hawk*, 1996 WL 254107, at *1 (7th Cir. May 6, 1996); *Contreras v. Hawk*, 1996 WL 72352, at *1 n.3 (7th Cir. Feb. 14, 1996).

## III.    THIS COURT HAS JURISDICTION OVER MS. IGLESIAS'S CLAIMS.

Defendants do not dispute that this Court has jurisdiction over Ms. Iglesias's deliberate-indifference claim (Count I). Yet Defendants argue that this Court lacks jurisdiction over other ongoing violations of Ms. Iglesias's constitutional rights. Defendants are incorrect that Ms. Iglesias lacks standing to bring the equal-protection and failure-to-protect claims (Counts II and III) in her Complaint, and incorrect that these counts are moot.

### A.  MS. IGLESIAS HAS STANDING.

An Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To satisfy the constitutional standing requirement, a party must establish (i) an injury in fact; (ii) a causal connection between the injury and the conduct complained of; and (iii) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Rawoof v. Texor Petroleum*

*Co.*, 521 F.3d 750, 756 (7th Cir. 2008). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). When a defendant challenges a plaintiff's standing on a motion to dismiss, the court must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

While Defendants attempt to use the timing of internal BOP decisions to contest Ms. Iglesias's standing as to Counts II and III, their efforts fall short. Ms. Iglesias has set forth two independently sufficient grounds to establish standing. First, at the time both the original and the operative Complaints were filed, Ms. Iglesias was housed in a men's prison in Defendants' custody. Compl. ¶¶ 5-6. The violation of her constitutional rights by being so housed constitutes a cognizable *injury caused* by Defendants' conduct that is *redressable* by this Court through the prospective relief she seeks, namely a permanent injunction requiring her to be housed in a woman's prison for the remainder of her time in Defendants' custody.

Second, Defendants may at any time move Ms. Iglesias back to a men's prison. The constant threat of being moved back to a men's prison in violation of her constitutional rights (and the ongoing reality of still living under BOP's unconstitutional housing policies that make default facility assignments based on genital status) constitute a cognizable *injury caused* by Defendants' conduct and *redressable* by this Court through the prospective relief she seeks, namely a permanent injunction requiring her to be housed in a woman's prison for the rest of her time in Defendants' custody.

### B.  MS. IGLESIAS'S CLAIMS ARE NOT MOOT.

Nor are Plaintiff's claims moot. Here, too, Defendants face a heavy burden to show that their unilateral action can moot Ms. Iglesias's equal-protection and failure-to-protect claims. It is well established that a defendant's "voluntary cessation of the complained of action is not sufficient to moot litigation." *Rabinowitz v. Bd. of Junior Coll. Dist. No. 508*, 507 F.2d 1255, 1256 (7th Cir. 1974); *Ragsdale v. Turnock*, 841 F.2d 1358, 1364 (7th Cir. 1988). The party asserting mootness bears the "heavy burden" to show that "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Further, voluntary cessation only renders "a controversy moot where . . . there are no remaining effects of the alleged violation." *Ragsdale*, 841 F.2d at 1365. Moreover, as Defendants' "act[] of self-correction" does not "appear genuine," they forfeit any greater credence their assurances of cessation might enjoy based on their status as public officials. *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991).

Defendants' recent transfer of Ms. Iglesias to FMC-Carswell falls well short of meeting the heavy burden to moot her claims. First, Defendants' complained-of conduct is likely to recur for several reasons. Defendants have not made it "absolutely clear" that they cannot "reasonably be expected" to transfer Ms. Iglesias back to a male prison. *Friends of the Earth*, 528 U.S. at 189; *see Vitek v. Jones*, 445 U.S. 480, 487 (1980) (request for transfer from a state hospital to a prison psychiatric ward did not moot the plaintiff's claims when they remained under threat of retransfer to the hospital). Given the frequency with which Ms. Iglesias has been transferred between BOP prisons and the fact that their "'biological-sex' based housing policy" remains in force, Compl. ¶ 104, there remains a strong likelihood that Defendants can and will unilaterally transfer her back

to a men's prison.[3] Indeed, this ongoing possibility of retransfer distinguishes Ms. Iglesias's case from others found moot insofar as Defendants continue to defend the complained-of practice, namely housing transgender women in men's prisons. *See Preiser v. Newkirk*, 422 U.S. 395 (1975) (prison transfer case mooted).

Further, while Ms. Iglesias has been moved, Defendants have not changed the underlying policies she complained of. *See* Compl. ¶¶ 103-04. Her transfer cannot moot the claims related to her placement in male prisons because she remains subject to Defendants' discriminatory housing policies that house transgender prisoners based on their sex assigned at birth, transfer transgender prisoners to facilities consistent with their gender only "in rare cases," and leave transgender women prisoners subject to retransfer to male prisons. Compl. ¶¶ 68, 70; *see id.* ¶¶ 63-71; *Lehn v. Holmes*, 364 F.3d 862, 872 (7th Cir. 2004) (reversing a finding of mootness where a prisoner "seeks relief from a condition that stems from a system-wide policy, [and] is then transferred to a different facility within the same system where the objectionable policy also applies"). Where, as here, only prospective injunctive or declaratory relief is sought, defendants cannot moot a plaintiff's claim by enacting only a partial concession. *See ADT Sec. Servs., Inc. v. Lisle-Woodbridge Fire Prot. Dist.*, 724 F.3d 854, 863 (7th Cir. 2013).

Even Defendants' present briefing does not assuage fears of retransfer to a men's prison. To the contrary, Defendants' arguments for mootness expressly caveat that Ms. Iglesias will stay in a women's prison only "so long as it is consistent with BOP policy," Def. Mot. at 14, with no commitment against retransfer. Yet formal policy changes, rather than "informal assurance[s],"

---

[3] While the discussion above more than meets the required showing that Ms. Iglesias's claims are not moot, to the extent this Court permits Defendants to bring in facts outside the Complaint as to her standing, Ms. Iglesias should be able to draw on past statements made by the same declarant to this Court in the instant litigation to further rebut their contentions. Specifically, the possibility of retransfer to a men's prison is significant and not speculative. While four transgender prisoners were in BOP facilities consistent with their gender as of April 2021, "approximately the same number of transgender female inmates have been previously placed in gender affirming settings, but have been released or returned to male facilities." ECF No. 99-2 (Leukefeld Decl. of Apr. 20, 2021) at ¶ 14.

are required to moot Ms. Iglesias's claims. *Freedom from Religion Found., Inc. v. Concord Cmty. Schools*, 885 F.3d 1038, 1051 (7th Cir. 2020). Half-hearted informal assurances, like Defendants', count for even less.

Second, Ms. Iglesias's housing claims are not moot because "remaining effects" of Defendants' unconstitutional conduct still endure. *Ragsdale*, 841 F.2d at 1365. Defendants continue to deny Ms. Iglesias GCS in part because she has "not lived . . . in a women's facility, for twelve months since being incarcerated under the custody of BOP." Def. Mot. at 18-19. Because this ongoing denial directly results from Defendants' unconstitutional choice to house Ms. Iglesias in a men's prison until May 2021, it is a remaining effect of their illegal conduct—and warrants permanent injunctive relief from this Court.

Third, Defendants' recent decision to move Ms. Iglesias to a woman's prison merits no deference in a mootness inquiry because it fails to "appear genuine." *Magnuson*, 933 F.2d at 565. Defendants provide inconsistent justifications to ground their sudden reversal and transfer, after decades of housing Ms. Iglesias in men's prions, and do not acknowledge the illegality of their prior conduct. Defendants insist that Ms. Iglesias was properly housed in men's prisons for decades and only became fit for transfer in May 2021. *See* Def. Mot. at 4. But keeping Ms. Iglesias in a men's facility was wrong even under the ad hoc criteria they proffer to defend their prior actions. Contrary to Defendants' claim that "Plaintiff's hormone levels had not maximized and stabilized" as of March 2020, *id.*, Ms. Iglesias has been on hormones for years in Defendants' custody, long enough to have already reached any target levels or stability, Compl. ¶ 57 (noting that Ms. Iglesias's hormone levels were consistent with female levels for four years as of 2020). Based on the timing of Defendants' sudden reversal, BOP appears to have acted only in response to ongoing litigation, namely Ms. Iglesias's request for a preliminary injunction. Given these circumstances,

Defendants' transfer represents a rushed effort to moot the current suit rather than a genuine change of their unconstitutional policies.

## IV.   MS. IGLESIAS'S OFFICIAL-CAPACITY CLAIMS SHOULD NOT BE DISMISSED.

Defendants contend that, because Ms. Iglesias has brought claims against BOP, official-capacity claims against the individual defendants should be dismissed. Def. Mot. at 11-12. Defendants cite *Thanonginh* in arguing that an "official capacity claim 'is a claim against [the individual's] office, for which his employer . . . would be liable, [and] it is no different than [the plaintiff's] claim against the [employer] itself.'" *Id.* at 11 (citing *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006)). But *Thanongsinh* is a Title VII case, and the Seventh Circuit specifically grounded its reasoning in that case in the application of *respondeat superior* under that statute. *Thanongsinh*, 462 F.3d at 771 n.7.

Federal courts regularly permit cases to proceed that bring claims for injunctive relief against both the Federal Bureau of Prisons and specific defendants in their official capacities. *See, e.g.*, *Lutz v. United States*, No. 17-CV-1008-JBM, 2017 WL 2588073, at *2 (C.D. Ill. June 14, 2017) ("[T]he proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring injunctive relief is carried out."); *see also Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Ms. Iglesias's Complaint follows suit on this well-trod path.

## V.   MS. IGLESIAS STATES A PLAUSIBLE CLAIM OF UNCONSTITUTIONAL DELIBERATE INDIFFERENCE.

Defendants do not contest that Ms. Iglesias's Complaint states plausible claims under the Fifth Amendment, and under the Eighth Amendment for failure to protect. However, Defendants argue that Ms. Iglesias has not adequately stated a claim of deliberate indifference under the Eighth

Amendment concerning Defendants' denial of GCS and permanent hair removal. Def. Mot. at 15. Despite Defendants' arguments to the contrary, though, Ms. Iglesias has amply stated a Eighth Amendment claim challenging Defendants' deliberate indifference to her medical needs.

"A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 563 U.S. 493, 511 (2011). Defendants inflict cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Eighth Amendment standard requires that the alleged deprivation be "objectively, sufficiently serious," and requires that officials act subjectively with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Ms. Iglesias's gender dysphoria is an "objectively, sufficiently serious" medical condition. *Id.* Since 1987, the Seventh Circuit has recognized that gender dysphoria is a "serious medical need" in deliberate-indifference inquiries. *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011).

The subjective prong of the Eighth Amendment deliberate-indifference standard "entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. This indifference is impermissible "whether . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 105-06. Defendants attempt to defeat Ms. Iglesias's deliberate-indifference claim by framing her concerns as mere differences of opinion in the proper course of medical treatment. But Defendants'

alleged treatment of Ms. Iglesias's gender dysphoria deviates so sharply from widely accepted standards of care as to easily show a plausible claim of deliberate indifference to her serious and ongoing medical needs.

### A. MS. IGLESIAS STATES A PLAUSIBLE CLAIM FOR GENDER-CONFIRMING SURGERY.

Defendants' denial of GCS constitutes deliberate indifference to Plaintiff's gender dysphoria. While their Motion to Dismiss attempts to frame Ms. Iglesias's allegations as "a mere difference of opinion regarding the appropriate medical care she has received or . . . might yet receive," Def. Mot. at 16, attention to Ms. Iglesias's Complaint tells a different story.

The Complaint sets out plausible allegations that Defendants' denial of GCS constitutes deliberate indifference in violation of the Eighth Amendment. *See* Compl. ¶¶ 95-101. Objectively, Ms. Iglesias's gender dysphoria is a "serious medical condition." *Id.* ¶ 98; *see Meriwether*, 821 F.2d at 413. Subjectively, "Defendants are all aware the Ms. Iglesias has not received the medically necessary GCS, permanent hair removal, and social transition treatment" she requires, "caus[ing] her serious physical and mental injury." *Id.* The Complaint also describes in detail Ms. Iglesias's need for GCS and the many years she has spent trying to get Defendants to provide GCS to treat her gender dysphoria. *Id.* ¶¶ 32-48.

These allegations easily suffice to make out a plausible claim of deliberate indifference. Defendants err in attempting to use the fact that Ms. Iglesias has received hormones and some small number of gender-affirming items as grounds to dismiss her claim entirely. *See* Def. Mot. at 18. The mere provision of *some* medical care cannot defeat a deliberate-indifference claim at any stage of litigation. *See* Fields v. Smith, 653 F.3d 550, 556 (7th Cir. 2011). Inadequate or ineffective medical care can also support indifference: if Defendants insisted that "inmates with cancer must be treated only with therapy and pain killers," a court would easily deem such treatment

"unconstitutional." *Id*. Here, Defendants refuse GCS to treat Plaintiff's gender dysphoria and thus unconstitutionally refuse "to provide effective treatment for a serious medical condition." *Id*.

A full examination of the details of Defendants' deliberate indifference is more appropriate for proceedings on the merits rather than on a motion to dismiss. Nonetheless, Defendants rely on spurious reasoning to deny Ms. Iglesias GCS, in contravention of widely recognized medical standards. Def. Mot. at 17-19. Neither the one-year-in-a-woman's-facility policy nor the alleged concerns about Ms. Iglesias's hormone levels, *id*. at 18-19 constitute legitimate medical reasons to deny her GCS—and certainly bald assertions of "reasoned medical judgment" in a motion to dismiss, *id.* at 18, cannot suffice to throw out a well-pleaded Complaint. The WPATH Standards of Care do not call for a year of "real-life experience," Def. Mot. at 19, in a sex-segregated facility as prerequisites to GCS. *See* Compl. ¶¶ 22, 26 (citing to the WPATH Standards of Care and the NCCHC statement on transgender healthcare in correctional settings). The current standard is living in the congruent gender role for twelve months, which Ms. Iglesias has done for decades. She has lived as a woman since she was a teenager, identified herself as a woman when she entered BOP custody in 1994, uses female pronouns, and wears female clothing and makeup. Compl. ¶¶ 28-32, 34-35; *see Konitzer v. Frank*, 711 F. Supp. 2d 874, 909 (E.D. Wis. 2010) (noting that "makeup, female undergarments, facial hair remover or growth items, and being referred to as a female" are part of living in a congruent gender role in a men's prison). Nor is there any WPATH requirement that that individuals "maximize[]" their hormone levels to any specific goal before receiving GCS. Def. Mot. at 19.

Further, even if Defendants' GCS criteria had any medical basis at all, BOP had sole control over Ms. Iglesias's ability to meet these requirements. Any instability in Ms. Iglesias's hormone levels was due to Defendants' failure to provide her adequate doses of hormone-therapy

medication to maintain her target hormone levels. And the only reason Ms. Iglesias has not met BOP's requirement for twelve months of "real-life experience" in a female facility is Defendants' repeated denials of her requests for transfer to a female facility. Accordingly, Defendants' supposed rationales for denying Ms. Iglesias the GCS treatment she so urgently needs were entirely of their own creation. That is, it's deliberate indifference all the way down.

Overall, Ms. Iglesias's Complaint more than adequately alleges that Defendants satisfy the subjective element of her deliberate-indifference claim insofar as they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Indeed, Defendants "face[] liability" precisely because their "course of treatment [in refusing her GCS for years] is 'such a substantial departure from accepted professional judgment, practice, or standards[] as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citations omitted).

## B. MS. IGLESIAS STATES A PLAUSIBLE CLAIM FOR PERMANENT HAIR REMOVAL.

Defendants' denial of permanent hair removal also constitutes deliberate indifference to Ms. Iglesias's gender dysphoria. Defendants claim that Ms. Iglesias "failed to allege a plausible Eighth Amendment claim . . . because the Eighth Amendment does not mandate that prisoners receive cosmetic hair removal." Def. Mot. at 19. But the assertion that Ms. Iglesias's need for permanent hair removal is cosmetic and thus unable to support an Eighth Amendment claim misstates both the plain text of Ms. Iglesias's Complaint and the relevant case law.

Ms. Iglesias repeatedly made clear in her Complaint that she has an ongoing and urgent *medical* need for permanent hair removal. *See* Compl. ¶¶ 59-62 (alleging that Defendants have "failed to provide Ms. Iglesias *medically necessary* treatment for permanent hair removal" and noting grievances about removal since at least 2018 (emphasis added)). Indeed, Ms. Iglesias

expressly alleged that her "body and facial hair has and continues to cause her extreme anxiety and distress" that she cannot relieve by nonpermanent means of hair removal, and that the lack of permanent hair removal has "caused her extreme and longstanding emotional and psychological distress, depression, anxiety, stress, and thoughts of self-mutilation." *Id.* ¶¶ 59, 61. While Defendants point to Defendant Connors's denial of Ms. Iglesias's claim for permanent hair removal as evidence that she has no medical need for such removal, Def. Mot. at 20, that denial only underscores Defendants' stark inadequacies in treating gender dysphoria. Defendants' woefully insufficient response cannot alter the fact that Ms. Iglesias's Eighth Amendment claim clearly alleged denial of medical treatment.

Further, contrary to Defendants' assertions, courts have recognized that permanent hair removal is medically indicated to treat gender dysphoria. That is, permanent hair removal and other social transition efforts "are not merely cosmetic treatments but, instead, medically necessary treatments to address a serious medical disease." *Hicklin v. Precynthe*, No. 4:16-cv-01357-NCC, 2018 WL 806764, at *12 (E.D. Mo. Feb. 9, 2018) (citing "medical evidence" and "clear" case law to reject a prison's assessment that hair removal was not medically necessary); *see Alexander v. Weiner*, 841 F. Supp. 2d 486, 493 (D. Mass. 2012).

At the very least, Defendants' assertions about the role of permanent hair removal as medical treatment for gender dysphoria represent a disagreement on the merits and are wholly inappropriate for a motion to dismiss for failure to state a claim. *See* Def. Mot. at 19 (erroneously focusing on "evidence" of medical necessity at the motion-to-dismiss stage, rather than the correct plausible-allegation standard). Of course, Defendants' continued insistence that permanent hair removal is cosmetic, not medical, in fact reflects their deliberate indifference to Ms. Iglesias's need for permanent hair removal to treat her gender dysphoria and shows that this is not a situation in

which "prison officials followed accepted medical standards" for treating gender dysphoria.

*Campbell v. Kallas*, 936 F.3d 536, 538 (7th Cir. 2019).


## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.


Dated: August 12, 2021

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Frank A. Battaglia*
**Frank Battaglia**
**Kevin Warner**
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
kwarner@winston.com
fbattaglia@winston.com

**John A. Knight**
**Joshua D. Blecher-Cohen**
ROGER BALDWIN FOUNDATION OF
ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740, 335
jaknight@aclu.org
jblechercohen@aclu-il.org

**Taylor Brown**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7887
tbrown@aclu.org

**Angela M. Povolish**
FEIRICH MAGER GREEN RYAN
2001 West Main Street

</div>

19

P.O. Box 1570
Carbondale, IL 62903
(618) 529-3000
apovolish@fmgr.com

*Attorneys for Plaintiff Cristina Nichole Iglesias*

**<u>CERTIFICATE OF SERVICE</u>**

I, Frank A. Battaglia, certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-captioned case.

Dated: August 12, 2021                                        /s/ *Frank A. Battaglia*
                                                                            Frank A. Battaglia