UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS <br> (a.k.a. Cristian Noel Iglesias), <br><br> Plaintiff, <br><br> v. <br><br> IAN CONNORS, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 19-cv-00415-RJN <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants recognize that reply briefs are disfavored and should be filed only in exceptional circumstances. Such circumstances exist here given the importance of the issues raised in Defendants' motion and because Plaintiff's opposition misstates the law.

### I. VENUE IS IMPROPER AND TRANSFER IS APPROPRIATE.

Plaintiff asserts that venue is appropriate here because events while she was housed at USP-Marion comprise "part of the historical predicate" of her claims, which she alleges is sufficient for venue under 28 U.S.C. § 1391(e)(1)(B). Opp. at 6. However, again, a "historical predicate" is an event that establishes a necessary element of a plaintiff's claims, *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 965 (N.D. Ill. 2008), and only the claims in the operative complaint matter for venue, *see Smith v. Bond Cnty. Jail*, 17-cv-006-JPG, 2017 WL 446967, at *5 (S.D. Ill. Feb. 2, 2017). Plaintiff does not identify a single event at USP Marion necessary to establish the forward-looking claims in the amended complaint she filed while housed at FMC Lexington. As such, she has not established that any events there constituted a historical predicate or any other "substantial part of the events or omissions giving rise to the claim." 28 U.S.C. § 1391(e)(1)(B).

Plaintiff also wrongly claims that the Seventh Circuit has held that superseded complaints can establish venue. *See* Opp. at 7-8 (citing *In re Hall*, 988 F.3d 376 (7th Cir. 2021) and *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853 (7th Cir. 2007)). *In re Hall* held that a prisoner's transfer after

1

he filed a habeas petition did not make venue improper but, unlike this case, *Hall* did not involve an amended petition. 988 F.3d at 377-79. In a footnote on the case's procedural history, *Omega* merely states that venue had been proper in the lower court because property located in that venue was at issue, even though the only dispute on appeal concerned property in another venue. *Id.* at 855 n.1. Nothing in *Omega* suggests that the dispute over the property in the forum court, *i.e.,* an *in rem* action, had been resolved before the operative complaint's filing. As such, *Omega* provides no guidance here.

Finally, even if the Court found venue proper, it should transfer this case to the District of Columbia for the convenience of the parties and in the interest of justice. *See* 28 U.S.C. § 1404(a). Plaintiff does not address, much less rebut, this argument. *See generally* Opp. at 6-8. She has thus conceded that transfer is appropriate. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

## II.     DISMISSAL OF CLAIMS TWO AND THREE IS WARRANTED.

Plaintiff wrongly contends that the Court must accept as true the allegations in the complaint when determining subject matter jurisdiction. Opp. at 4, 9. Because Defendants bring a factual, not facial, challenge to standing, the Court may consider "whatever evidence has been submitted" on the issue. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Defendants have presented undisputed evidence that they had already decided to transfer Plaintiff to a women's prison when she filed her operative complaint. Plaintiff has not shown how an injunction could redress her alleged injuries. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 50-51 (1991). That Plaintiff was not physically transferred until after she filed the operative complaint is irrelevant.

Plaintiff asserts that her claim is still live because she may "at any time" be moved back to a men's prison. Opp. at 9. To have standing to pursue prospective relief, the "threatened injury must be certainly impending"; "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, Plaintiff's speculation that she might be transferred back to a men's prison fails to establish a "certainly impending" injury.

2

Plaintiff cannot salvage her claims by relying on the "voluntary cessation" exception to mootness. Parties invoking that exception against the federal government bear a heavy burden. *See Ragsdale v. Turnlock*, 841 F.2d 1358, 1365 (7th Cir. 1988). To rebut this presumption, Plaintiff can point only to a statement in the Transgender Offender Manual ("Manual") that transfers to a female facility are appropriate only in "rare" cases. Opp. at 10-11. Defendants already concluded that transfer to a women's prison was appropriate and intends "that [Plaintiff's] placement at a female facility continue, so long as it is consistent with BOP policy." Leukefeld Decl. ¶ 8. Regardless of whether transfer is appropriate only in the "rare case," Plaintiff represents such a case.[1]

Plaintiff further speculates that she was transferred to a women's facility to avoid litigation. Opp. at 12. Even if Plaintiff were correct, "the timing of a government defendant's decision to repeal a challenged policy shouldn't be overemphasized." *Keohane v. Fla. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1269 (11th Cir. 2020). Instead, the Court should focus on "the objective question [of] whether there is any substantial evidence indicating a reasonable likelihood" that Defendants will place Plaintiff back in a men's prison. *Id.* Here, absent legitimate safety or security concerns, Defendants do not intend to even consider returning Plaintiff to a men's prison.

Finally, Plaintiff seeks an improperly broad injunction requiring that she be housed in a women's prison regardless of circumstances. Opp. at 10. Under the Prison Reform Litigation Act, injunctions must be issued only as necessary, and extend no further than necessary to protect federal rights. 18 U.S.C. § 3626(a)(1)(A). Further, Plaintiff is improperly asking this Court to substitute its judgment for the Bureau of Prisons, the government entity that Congress entrusted with "designat[ing] the place of the prisoner's imprisonment," in light of the "history and characteristics of the prisoner," the "resources of the facility contemplated," and other considerations. 18 U.S.C. § 3621(b).

---

[1] Indeed, the possibility of transfer to a men's facility is remote, given that Plaintiff is eligible for placement in a half-way house in approximately four months, a fact Plaintiff does not even address in her opposition. Leukefeld Ded. ¶ 9.

### III. PLAINTIFF'S EIGHTH AMENDMENT CLAIMS FOR MEDICAL CARE.

#### 1. Plaintiff's Claim for Gender-Affirming Surgery.

Although Plaintiff posits that "a full examination of the details of Defendants' deliberative indifference is more appropriate for proceedings on the merits rather than on a motion to dismiss," Opp. at 16, her claim for gender-affirming surgery should be dismissed because her allegations fail to state a deliberate indifference claim.[2] Defendants consider gender-affirming surgery only after twelve months of real life experience in a prison consistent with the inmate's gender identity. ECF No. 85-1, Ex. 3. This is consistent with Plaintiff's position that "[t]ransferring Ms. Iglesias to a women's prison would allow Ms. Iglesias to live in accordance with her gender identity . . . , which is medically necessary treatment for gender dysphoria as set forth in the WPATH Standards of Care." *Id.* at ¶ 50. Nonetheless, Plaintiff contends that Defendants' decision misapplies the WPATH Standards of Care. Opp. at 16. But, even if Plaintiff were correct (and she is not), that would not reflect a "total unconcern for the prisoner's welfare," *Rosario v. Brown*, 670 F.3d 816, 821 (7th Cir. 2012), and would at most be akin to a malpractice claim, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Moreover, Defendants' evaluation of the treatment decision was appropriate as a matter of law. *See Campbell v. Kallas*, 936 F.3d 536, 538 (7th Cir. 2019) (recognizing that "[n]ational standards of care recommend that patients undertake one year of 'real life' experience as a person of their self-identified gender before resorting to irreversible surgical options" and that this "preparatory period presents challenges for officials charged with the administration of sex-segregated prisons."); *Kosilek v. Spencer*, 774 F.3d 63, 88 (1st Cir. 2014) (*en banc*) (gender-affirming surgery not appropriate when inmate could not live "real life" experience while in prison because "[p]rudent medical professionals . . . reasonably differ in their opinions regarding the requirements of a real-life experience").

---

[2] Contrary to Plaintiff's assertion, Defendants do not rely on the Leukefeld Declaration for their Rule 12(b)(6) arguments. *See* Opp. at 4-5. Rather, the declaration is clearly cited only in support of arguments under Rules 12(b)(1) and 12(b)(3). ECF No. 129 at 15-20. There is thus no reason for the Court to convert the motion into one for summary judgment.

      2. <u>Plaintiff Claim for Permanent Hair Removal.</u>

Contrary to Plaintiff's assertion, Defendants have not claimed that permanent hair removal is never medically necessary. Opp. at 18. Rather, as explained in the motion to dismiss, Plaintiff failed to allege an Eighth Amendment claim for the denial of hair removal because Defendants cannot be deliberatively indifferent in ignoring a serious *medical* condition when Plaintiff failed to provide any medical justification for her request. ECF No. 129 at 19-20; 2d Am. Compl., ¶ 60; *Campbell v. Kallas*, 936 F.3d 536, 549 (7th Cir. 2019) (no Eighth Amendment violation from denying electrolysis request that was "arguably nonmedical cosmetic accommodation[]").

The Court need not accept as true Plaintiff's legal conclusion that hair removal is "medically necessary." *MacNeill v. The Benefits Plan of the Presbyterian Church (U.S.A.)*, 189 F. Supp. 3d 1080, 1084 (W.D. Wash. 2016). Furthermore, Plaintiff fails to explain—or support through any case law—how Defendants could be deliberately indifferent to a serious medical need for permanent hair removal when Plaintiff failed to identify any such need. *See Murillo v. Godfrey*, 2:18-cv-02342-JGB-JC, 2020 WL 1139811, *14 (C.D. Cal. Mar. 9, 2020) (dismissing permanent hair removal claim where plaintiff "allege[d] that she complained that her 'facial hair was torture'" but did "not allege facts indicating that the requested procedures [were] 'medically necessary'"). Indeed, in the only two cases relied upon by Plaintiff, the inmates' treating physicians did recommend permanent hair removal to the prison and did conclude that it was medically necessary. *Hicklin v. Precynthe*, No. 4:16-cv-01357-NCC, 2018 WL 806764, at *4 (E.D. Mo. Feb. 8, 2018); *Alexander v. Weiner*, 841 F. Supp. 2d 486, 489 (D. Mass. 2012). By contrast, Plaintiff's complaint concedes that that her medical providers did not indicate that permanent hair removal was medically necessary. Dismissal is thus warranted.

## CONCLUSION

    Defendants' motion to dismiss should be granted.

Dated: August 19, 2021                        Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

LAURA J. JONES
Assistant United States Attorney

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel

*/s/ Gary D. Feldon*
GARY D. FELDON
Trial Attorney
United States Department of Justice
Federal Programs Branch
1100 L St. NW, Room 11104
Washington, DC 20530
Tel.:   (202) 598-0905
Email:  gary.d.feldon@usdoj.gov

*Counsel for Defendants*