IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS), <br><br> Plaintiff, <br><br> v. <br><br> IAN CONNORS, *et al.*, <br><br> Defendants. | Case No. 19-cv-00415-RJN <br><br> Judge Nancy J. Rosenstengel |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO COMPEL EXPEDITED DISCOVERY**

Plaintiff Cristina Iglesias respectfully files this brief in support of her Motion to Compel Expedited Discovery. ECF No. 146. Defendants' gross mischaracterizations of factual events and her Motion are exceptional circumstances warranting a reply per Local Rule 7.1(c). ECF No. 147.

Ms. Iglesias served Rule 34 requests covering the disputed information in December 2020, but Defendants have refused to produce the information. Ex. A. A September 2021 deposition and more recent developments in Ms. Iglesias's healthcare have subsequently revealed the existence and importance of specific documents within the scope of her Rule 34 requests. Ms. Iglesias asked Defendants to produce these documents and, in light of their refusal, now turns to this Court to compel production before the upcoming hearing on October 19, 2021.

**I.   Ms. Iglesias's Motion to Compel Is Proper and Timely Under Rule 34.**

Defendants claim that "Plaintiff's counsel sought this discovery without serving a discovery request under [Rule] 34" and represent that "because Plaintiff has made only an informal email request for documents, she is not even legally entitled to move to compel." Def. Opp. at 3-4.

Not so. On December 29, 2020, Ms. Iglesias's counsel served Defendants with Plaintiff's First Set of Requests for Production pursuant to Rule 34. Ex. A. Ms. Iglesias expressly requested:

1. All medical records relating to or discussing Plaintiff, whether or not those records are contained in Plaintiff's medical records file.

1

    2. All mental health records relating to or discussing Plaintiff, whether or not those records are contained in Plaintiff's medical records file.
    3. All grievances, appeals of grievances, letters, complaints, or other communications from, or on behalf of, Plaintiff, as well as responses to those grievances, letters, complaints, or other communications.
    4. All communications involving medical professionals or medical personnel, including but not limited to emails, letters, tickets, and notes, relating to or discussing Plaintiff.

*Id*. at 5.[1] The records Ms. Iglesias now seeks are a narrow subset of those requested in December 2020. As such, the cited cases, Def. Opp. at 4-5, are inapposite and easily distinguished.[2]

Neither Rule 37 nor the Local Rules dictate time limits for motions to compel. *See Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 477 (N.D. Ind. 2009) (noting district courts' "broad discretion" over discovery motions practice). Ms. Iglesias's Motion, filed well before the close of any future discovery schedule, satisfies the standards courts use to determine timeliness. *See, e.g.*, *Stewart v. Stewart*, 2011 WL 13318512 (E.D. Ky. May 23, 2011) (close-of-discovery test); *Adams v. Symetra Life Ins. Co.*, 2020 WL 6469949 (D. Ariz. Nov. 3, 2020) (balancing test). Defendants have had *over nine months* to produce documents in response to Ms. Iglesias's requests, during which she has diligently sought to secure production without resorting to this Court.[3]

**II. This Court Should Compel Production of Ms. Iglesias's Recent Healthcare Records, Including Communications About Surgery, to Preclude Any Unfair Surprises.**

Ms. Iglesias seeks access to up-to-date versions of her own medical and mental-health records for the upcoming hearing. ECF No. 146 (seeking "all medical and mental-health records for Ms. Iglesias that have not already been produced for the period of 2019 to present, including unit-staff-only filings" and "all communications about Ms. Iglesias sent to or from the TEC,

---

[1] The production requests further state that they "shall be deemed continuing, and supplemental responses, documents, and things must be timely provided as additional information becomes available, pursuant to Rule 26(e)." Ex. A at 5.
[2] Even had Ms. Iglesias not served Rule 34 requests, her Motion would still be proper. *See Traskin v. Olin Corp.*, 298 F.R.D. 244, 260 (W.D. Pa. 2014); *see also Lujan v. Exide Techs.*, 2011 WL 1594952, at *2 (D. Kan. Apr. 27, 2011).
[3] The Southern District's Local Rules clearly authorized Ms. Iglesias's December 2020 requests. Defendants point to the Rules' provision that a court "may" order a conference to argue that Ms. Iglesias's invocation of Local Rule 26.1 is "misplaced." Def. Opp. at 4 n.1. But this Court has not ordered such a conference, which means that the Rule's express authorization of pre-conferral discovery in "prisoner civil rights cases" applies. S.D. Ill. Local R. 26.1(a).

2

TCCT, and/or Dr. Elizabeth Stahl since May 2021").[4] During the pendency of her motion for preliminary injunction, Defendants have made new decisions as to her living situation and medical care. *E.g.*, ECF No. 111 (transfer); ECF No. 123 (nonpermanent hair removal). Most urgently, Ms. Iglesias learned on September 24, 2021, that her requests for gender-affirming surgery and permanent hair removal were constructively denied by Dr. Elizabeth Stahl and the TCCT, with relevant documents that exist outside her medical records. Iglesias Declaration at ¶¶ 10-11.

Discovery is necessary to prevent any unfair surprise. To the extent that Defendants have considered Ms. Iglesias's requests for surgery while her motion for preliminary relief is pending, they should not be able to do so secretly on the cusp of the hearing. Plaintiff has secured some medical records through a FOIA search conducted on May 19, 2021, but those will be five months out of date by the rescheduled hearing and were produced while Ms. Iglesias was still in a men's prison at Ft. Dix.[5] They do not reflect any aspect of Ms. Iglesias's healthcare at FMC-Carswell— much less recent developments as to gender-affirming surgery and permanent hair removal.

In opposing Ms. Iglesias's motion for a preliminary injunction, Defendants have previously relied on medical records they refused to produce to her. *See* ECF No. 131 at 2-3 (detailing Defendants' use of this "asymmetrical informational advantage"); *see also* ECF No. 107 at 1 n.1. Defendants should not be allowed to do the same thing at the upcoming hearing on that motion.[6]

This discovery is narrowly tailored. Ms. Iglesias's request for relevant communications is limited strictly to those sent in a six-month period from May 2021 to present. And these recent

---

[4] The Transgender Executive Council and Transgender Clinical Care Team are known as the "TEC" and "TCCT."
[5] BOP supplemented its response with a second search conducted on June 30, 2021, which turned up decades-old records not previously disclosed. Defendants' claim that they "provided Plaintiff with her medical and mental health records through July 2021," Def. Opp. at 7, is inaccurate. Ms. Iglesias does not have *any* medical nor mental-health records for July, August, September, or October of 2021—even as Defendants considered and rejected her request for surgery during this same period. *See* Iglesias Decl. at ¶ 10. Contrary to Defendants' skepticism, this state of affairs underscores why Ms. Iglesias "need[s] those [four] months[] of records for the upcoming hearing." Def. Opp. at 7.
[6] Separately, certain records responsive to Ms. Iglesias's FOIA request, including a 2019 memo from Dr. Randall Pass on suitability for surgery, were not produced but are being accessed by FMC-Carswell staff. Iglesias Decl. at ¶ 13.

3

communications—to Defendants' transgender-focused committees and chief medical officer—bear directly on the refusal to provide adequate care that Ms. Iglesias is challenging. In terms of documents, Ms. Iglesias requests only those medical and mental-health records that have been recently generated or should have been produced per her January 2021 FOIA request; presumably, BOP made every effort to comply with that request and only a small number of responsive documents were omitted or have been generated since. To further ease any burden, Ms. Iglesias limits her request to any remaining medical and mental-health records from just the past two years.

**III. This Court Should Compel Production of Relevant Materials Concerning Ms. Iglesias from Defendants' Transgender Healthcare Decisionmakers.**

Ms. Iglesias also seeks access to certain documents identified in Dr. Leukefeld's testimony at her September 2021 deposition. ECF No. 146 (seeking "agendas, minutes, and records from all [TEC] and [TCCT] meetings where Ms. Iglesias was discussed that have not already been produced" and "all documents about Ms. Iglesias considered by members of the TEC and TCCT").

On September 9, 2021, Defendants' counsel produced agendas from three TEC meetings in October 2019, March 2020, and April 2021. Ex. B; Ex. C; Ex. D. These agendas total 100 pages, of which 73 were either fully redacted or blank and contain no information about Ms. Iglesias. The documents are not minutes; each contains a brief description of Ms. Iglesias and a topic to be discussed, but does not record the substance of that discussion, the TEC's decision, nor the rationale for any decision. Each agenda also contains brief notes from previous TEC meetings that record certain previous decisions but lack rationales or a full record of those discussions.

At Dr. Leukefeld's September 10 deposition, Ms. Iglesias's counsel learned that these three agendas were cherry-picked from among the several TEC meetings discussing Ms. Iglesias. *See* Ex. E. ("Leukefeld Dep.") at 99-100 (noting agendas made for *each* TEC meeting). At least ten additional TEC meetings discussed Ms. Iglesias, for which Defendants produced no records. *Id.* at

4

132-64. While Defendants suggest that those agendas and other materials would be "cumulative," that is not the case. Def. Opp. at 6. Each agenda has a description including the specific reason the TEC discussed Ms. Iglesias that day; this critical information is omitted in the cursory summaries added to later agendas. *See* Leukefeld Dep. at 102 (noting agendas contain "referral question[s]").

Defendants should not be allowed to keep these documents from Ms. Iglesias. The TEC agendas and other materials fall within the scope of records she has sought since December 2020. It would be unfair to give Ms. Iglesias access only to three cherry-picked agendas while Defendants have access to all TEC materials concerning her healthcare. Discovery is warranted to ensure that Ms. Iglesias has adequate information about Defendants' decisions as to her gender-affirming treatment. Dr. Leukefeld's testimony revealed that TEC decisions are also made outside formal meetings; accordingly, Ms. Iglesias seeks any such materials discussing her healthcare as well. *See id.* at 104. In addition, TCCT records are necessary because that Team operates under TEC staff guidance, *see id.* at 82-83, and because recent developments indicate that the head of the TCCT denied Ms. Iglesias gender-affirming surgery within the past few weeks, Iglesias Decl. at ¶¶ 4, 10.[7]

These requests are narrow and not burdensome. Indeed, Defendants located, redacted, and produced three TEC agendas within *one day* of Ms. Iglesias's ask for such materials in September 2021. Dr. Leukefeld also testified that a single BOP staffer maintains TEC agendas and minutes, and that other materials are "perfectly accessible." Leukefeld Dep. at 99-100, 112-14. Moreover, the total of relevant meetings is small (and they are already identified); per summaries in produced agendas, there were about ten such meetings discussing Ms. Iglesias, plus any since April 2021.

---

[7] Defendants quote a September 10, 2021 email, Def. Opp. at 2, in which Ms. Iglesias's counsel does "not anticipate the need for any additional [. . .] discovery before that hearing." Further review of Dr. Leukefeld's deposition, conducted that same day, made clear to Ms. Iglesias the existence and relevance of responsive documents that Defendants had not produced. In addition, Defendants' late-September decisions on Ms. Iglesias's requests for gender-affirming surgery and permanent hair removal reinforce the need for the limited discovery she now seeks.

5

Dated: October 8, 2021

        Respectfully submitted,

        */s/ Frank Battaglia*
**John A. Knight**
**Joshua D. Blecher-Cohen**
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740, 335
jaknight@aclu.org
jblechercohen@aclu-il.org

**Taylor Brown**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7887
tbrown@aclu.org

**Frank Battaglia**
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
fbattaglia@winston.com

**Angela M. Povolish**
FEIRICH MAGER GREEN RYAN
2001 West Main Street
P.O. Box 1570
Carbondale, IL 62903
(618) 529-3000
apovolish@fmgr.com

*Attorneys for Plaintiff Cristina Nichole Iglesias*

## CERTIFICATE OF SERVICE

      I, Frank A. Battaglia, certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-captioned case.

Dated: October 8, 2021                                                  /s/ *Frank A. Battaglia*
                                                                                    Frank A. Battaglia