# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS),<br><br>　　Plaintiff,<br><br>　　　v.<br><br>IAN CONNORS, *et al.*,<br><br>　　Defendants. | Case No. 19-cv-00415-RJN |

**DEFENDANTS' EXPEDITED MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S PRELIMINARY INJUNCTION ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................2

ARGUMENT ....................................................................................................................................4

    I.      The Deliberative Process Privilege Protects the TEC's Internal Deliberations .........................4

    II.     The Court-Reporter Requirement Violates the Prison Litigation Reform Act ..........................7

    III.    The Court-Reporter Requirement Violates the Separation of Powers .........................................8

CONCLUSION ...............................................................................................................................11

**INTRODUCTION**

Defendants respectfully move for partial reconsideration of one narrow aspect of the Court's Preliminary Injunction, ECF No. 177, namely the requirement that Defendants transcribe internal agency deliberations and provide a transcript of those deliberations to the Court. The Preliminary Injunction includes a number of other requirements, including that the Bureau of Prison's Transgender Executive Council (TEC) meet to evaluate Plaintiff's request for gender-confirmation surgery by January 24, 2022. The Court has further ordered that, if the TEC does not recommend surgery, Defendants must file a notice providing information including an explanation of all the reasons for the TEC's decision. Defendants do not seek relief from any of these other requirements.

The Court's requirement that Defendants transcribe and potentially provide to the Court internal agency deliberations, however, represents a significant, unwarranted, and unprecedented intrusion on the Executive Branch's confidential internal discussions. The Supreme Court has consistently held that the deliberative process privilege protects a governmental agency's internal communications as part of the decisionmaking process from disclosure in order to encourage candor and thereby improve agency decisionmaking. Requiring that Defendants transcribe and potentially produce the TEC's deliberations is at odds with this precedent and triggers the core concerns underlying the privilege by exacerbating the chilling effect that accompanies the prospect of disclosure. There is no apparent reason for the TEC to transcribe its deliberations because the Court has separately ordered Defendants to file a notice explaining all the reasons for the TEC's decision—a requirement from which Defendants do not seek relief. Requiring that Defendants also create and provide a transcript of the deliberations raises the prospect of chilling open and frank deliberations among the TEC's members. That is precisely what the deliberative process privilege ought to protect.

For similar reasons, the court-reporter requirement also runs afoul of the Prison Litigation Reform Act (PLRA), which requires that a preliminary injunction in this context must be "narrowly

drawn" to "correct the harm the court finds requires preliminary relief." 18 U.S.C. § 3626(a)(2). That harm is BOP's alleged deliberate indifference to Plaintiff's medical needs, not any lack of information. And even if the Court had concluded that harm resulted from a lack of information, the injunction's separate requirement that Defendants explain the reasons for the TEC's decision would remedy such harm in a less intrusive manner.

Finally, the transcription requirement runs counter to separation-of-powers principles, which require that one branch of the Government should not generally intrude on the constitutionally assigned functions of another co-equal branch. Requiring BOP to transcribe internal agency deliberations will interfere with its decisionmaking process and thus undermine its execution of federal law. Instead, Defendants respectfully suggest that the Court follow the normal course, allowing the TEC to deliberate freely without a court reporter present, and then review the agency's decision if necessary. Notably, Plaintiff did not request the recording or transcription requirements. And the Court did not address any of these issues when it imposed the court-reporter requirement *sua sponte* without the benefit of adversarial briefing on this issue.

As an alternative to creating and providing a transcript of the TEC's deliberations, Defendants respectfully propose that they provide a sworn declaration, rather than a statement, from a member of the TEC explaining the reasons for the TEC's decision if the TEC does not recommend Plaintiff for surgery. For the reasons explained below, Defendants respectfully request that the Court modify the preliminary injunction to remove the court-reporter requirement.

## BACKGROUND

On December 27, 2021, the Court granted in part Plaintiff's motion for a preliminary injunction. *See* ECF Nos. 176, 177. Specifically, the Court ordered Defendants to have the TEC meet to evaluate Plaintiff's request for gender-confirmation surgery by Monday, January 24, 2022. ECF No. 177 at 1. The Court further ordered Defendants to "[s]chedule a certified court reporter to be

present at the TEC meeting to provide the Court a transcript of the TEC's meeting." *Id.* If the TEC recommends Plaintiff for surgery at the meeting, then Defendants must (i) file a notice to the Court within two days of the recommendation, (ii) refer Plaintiff to the BOP's medical director immediately, and (iii) ensure that BOP's medical director assess Plaintiff for surgery as soon as possible, but no later than thirty days after receiving the TEC's recommendation. *Id.* at 2. If the TEC does not recommend Plaintiff for surgery, then Defendants must (i) file a notice with the Court explaining all of the reasons for the TEC's decision within seven days and include the policies and procedures Plaintiff does not meet, when the policies were established, and all documents providing when the policies were established and (ii) provide the Court the full transcript of the TEC's meeting where it discussed Plaintiff for gender-confirmation surgery. *Id.* at 3. Pursuant to the Court's order, the TEC will meet to evaluate Plaintiff's request for gender-confirmation surgery on January 24, 2022. *See* Decl. of A. McLearen ¶ 9.

## LEGAL STANDARD

"District judges always retain discretion to visit their interlocutory rulings." *Monroe v. Meeks*, 2020 WL 1048770, at *1 (S.D. Ill. Mar. 4, 2020) (alterations omitted). Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration are appropriate in a number of circumstances, including where the court has made a "manifest error[] of law or fact," has "misunderstood a party," has "made a decision outside the adversarial issues presented to the Court by the parties," or has "made an error of apprehension." *Monroe*, 2020 WL 1048770, at *1–2.

**ARGUMENT**

**I.     The Deliberative Process Privilege Protects the TEC's Internal Deliberations**

"To protect agencies from being 'forced to operate in a fishbowl,' the deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973), and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975), respectively). The privilege is "rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Id.* (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)); *see also United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as part of an agency determination are protected from disclosure" under the privilege.) And it "encourage[s] candor, which improves agency decisionmaking," by "blunt[ing] the chilling effect that accompanies the prospect of disclosure." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785; *see also Nat'l Immigrant Just. Ctr. v. DOJ*, 953 F.3d 503, 505 (7th Cir. 2020) (emphasizing that "receiving confidential advice is essential to sound decision-making" and refusing to order disclosure that could "chill the deliberations that department and agency heads like the Attorney General undertake in confidence to execute the weighty responsibilities of their offices").

To fall within the deliberative process privilege, a communication must be both (1) "'predecisional—generated before the adoption of an agency policy" and (2) "'deliberative'— reflecting the give and take of the consultative process." *K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997) (quoting *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Indemnity Ins. Co. of N. America*, No. 87 C 8439. 1989 WL 135203. At *2 (N.D. Ill. Nov. 1, 1989)). If the deliberative process privilege

applies, it can be overcome only if "there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Farley*, 11 F.3d at 1389. The party seeking disclosure bears the burden of demonstrating a particularized need. *K.L.*, 964 F. Supp. at 1209; *Holmes v. Hernandez*, 221 F. 3d 1011, 1016 (N.D. Ill. 2016).

Here, the deliberative process privilege clearly applies to the TEC's internal deliberations regarding whether to recommend Plaintiff for surgery. The communications are "predecisional" because they will be made before the TEC decides whether to recommend Plaintiff for surgery. *See K.L.*, 964 F. Supp. at 1208; *Holmes*, 221 F. 3d at 1016. And they are "deliberative" because they will reflect "the give and take of the consultative process." *K.L.*, 964 F. Supp. at 1208; *see also Holmes*, 221 F.3d at 1016. Indeed, the entire purpose of the TEC's meeting is to provide an opportunity for TEC members to deliberate candidly and openly about whether to recommend Plaintiff for surgery and are therefore precisely the kind of deliberations that the privilege is designed to protect. *See Farley*, 11 F.3d at 1389; *see also Holmes*, 221 F. Supp. 3d at 1016 (privilege covers "deliberations comprising part of the process by which governmental decisions and policies are formulated").

Nor can Plaintiff show that she has a particularized need for a transcript of the TEC's deliberations. If the TEC does not recommend Plaintiff for surgery, the Court has ordered Defendants to "[f]ile a notice with the Court explaining all the reasons for [the] TEC's decision within seven days and include the policies and procedures Iglesias does not meet, when the policies were established, [and] all documents providing when the policies were established." ECF No. 177 at 3. Defendants do not seek reconsideration of this requirement and will comply with it if the TEC does not recommend Plaintiff for surgery. Moreover, as noted, in lieu of creating a verbatim transcript, Defendants are willing to provide a sworn declaration from a member of the TEC explaining the reasons for the TEC's decision rather than a statement. Accordingly, if the TEC does not recommend Plaintiff for surgery, Plaintiff and the Court will still be provided with the reasons for the TEC's

5

decision. *See, e.g.*, *K.L.*, 964 F. Supp. at 1209 (in determining whether plaintiff has shown particularized need for communications, court considers "the availability of other evidence that would serve the same purpose as the documents sought"); *see also Holmes*, 221 F. Supp. 3d at 1018 (same).

Requiring that Defendants *also* create and provide a transcript of the deliberations would chill open and frank deliberations among the TEC's members, which is precisely what the deliberative process privilege is designed to prevent. *Kamath Water Users Protective Ass'n*, 532 U.S. at 8–9; *Farley*, 11 F.3d at 1389. Courts have recognized that even the *prospect* of future disclosure of predecisional documents chills "open and frank discussion" within the government. *Klamath Water*, 532 U.S. at 8–9. The certainty of disclosure to a court reporter and the possible release of a verbatim transcript of all discussions will no doubt have an even greater chilling effect. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860–61 (2017) (discussing the need to respect government "discussion and deliberations" underlying challenged policies, and counseling against "interfere[nce] in an intrusive way with sensitive functions of the Executive Branch"). As one member of the TEC explains, "[o]pen discussion and collaboration amongst TEC members from different disciplines is important in formulating the best recommendations possible." McLearen Decl. ¶ 8. TEC recommendations "often require the use of correctional judgment[,] and each member provides input through the lens of their unique background and expertise." *Id.* The requirement that a transcript of the TEC's meeting be prepared and potentially provided to the court "would have a chilling effect on any discussion at the TEC meeting" because "[i]f TEC members expected that their thoughts, opinions, and discussions would be disclosed to third parties[,] they may be disinclined to participate in full and open discussions." *Id.* ¶ 10.

Requiring that Defendants provide a transcript of the TEC's internal deliberations is simply unnecessary here given the narrow nature of the parties' dispute. As the Court recognized in its preliminary injunction opinion, "[t]o determine if the Eighth Amendment has been violated in the prison medical context, courts perform a two-step analysis, first examining whether a plaintiff suffered

6

from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." PI Op. at 36 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Here, "[t]he parties agree that gender dysphoria is a serious medical condition." *Id.* The parties further agree that Defendants are aware of Plaintiff's medical condition. *See id.* at 37. Thus, the only dispute between the parties is whether Defendants' conduct rises to the level of deliberate indifference. But the TEC's internal deliberations will not shed light on that question, which turns on whether BOP's proposed course of treatment constitutes a "substantial departure from accepted professional judgment, practice, or standards." *Campbell v. Kallas*, 936 F.3d 536, 548 (7th Cir. 2019).

Defendants are aware of no authority that would support requiring Defendants to transcribe and possibly produce a transcript of the TEC's deliberations. And the Court ordered such relief *sua sponte*, without a request from Plaintiff for such relief or adversarial briefing from the parties. *See Monroe*, 2020 WL 1048770, at *1–2 (recognizing that reconsideration is appropriate where court "made a decision outside the adversarial issues presented to the Court by the parties"). Accordingly, Defendants respectfully request that the Court should modify the preliminary injunction solely to remove the requirement that a court reporter to be present at the TEC meeting and provide the Court a transcript of the meeting if the TEC declines to recommend Plaintiff for surgery.

**II.     The Court-Reporter Requirement Violates the Prison Litigation Reform Act**

The requirement that Defendants schedule a court reporter to transcribe the TEC's internal deliberations and then disclose those internal deliberations also violates the Prison Litigation Reform Act, which "circumscribes the scope of the court's authority to enter an injunction in the corrections context." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Specifically, the PLRA provides that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to

7

correct that harm." 18 U.S.C. § 3626(a)(2). The Court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Id.* These provisions "enforce[] a point repeatedly made by the Supreme Court in cases challenging prison conditions: 'Prison officials have broad administrative and discretionary authority over the institutions they manage.'" *Westefer*, 682 F.3d at 683 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)); *see also Lindell v. Frank*, 377 F.3d 655, 660 (7th Cir. 2004) (reversing part of an injunction as overbroad in violation of the PLRA); *Monroe*, 2020 WL 1048770, at *1–3 (Rosenstengel, J.) (granting in part and denying in part motion for reconsideration of preliminary injunction order based on PLRA).

Here, the injunction's court-reporter requirement is not "narrowly drawn" to "correct the harm the court finds requires preliminary relief." 18 U.S.C. § 3626(a)(2). That harm is BOP's alleged deliberate indifference to Plaintiff's medical needs, not any lack of information. And, even if the Court had concluded that harm resulted from a lack of information, the injunction's separate requirement that Defendants file a notice explaining all the reasons for the TEC's decision would remedy such harm through significantly less "intrusive means" than the injunction's court-reporter requirement. The injunction thus extends "further than necessary," in violation of the PLRA. *Id.* By imposing a requirement that will chill open and frank discussion for the reasons explained above, the injunction likewise fails to give sufficient weight to the "adverse impact on public safety or the operation of a criminal justice system" that the PLRA requires. *Id.* Accordingly, the PLRA's strictures on injunctive relief further support modifying the preliminary injunction to remove the court-reporter requirement.

### III. The Court-Reporter Requirement Violates the Separation of Powers

The court-reporter requirement is also contrary to separation-of-powers principles. It is "a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996). Thus, "the separation-of-powers doctrine requires that a branch not impair another in the performance of its

8

constitutional duties." *Id.* The doctrine, moreover, applies with particular force in the context of the federal prison system. As the Seventh Circuit has explained, "[r]unning a prison is an inordinately difficult undertaking that requires expertise . . . peculiarly within the province of the legislative and executive branches of government. . . . Separation of powers concerns counsel a policy of judicial restraint." *Rowe v. DeBruyn*, 17 F.3d 1047, 1050 (7th Cir. 1994) (quoting *Turner v. Safley*, 482 U.S. 78, 85-86 (1987)).

With regard to the Executive Branch, separation-of-powers concerns are focused "on the extent to which [the judicial order] prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Simer v. Rios*, 661 F.2d 655, 681 (7th Cir. 1981) (quoting *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977)). As discussed above, the presence of an outsider at the TEC's meeting and the knowledge that every word said there could become public trigger the core concerns underlying the deliberative process privilege. Requiring BOP to transcribe its meeting for possible future disclosure will interfere with BOP's deliberations concerning the care of an individual within BOP's custody, and thereby undermine BOP's execution of federal law. *See* 18 U.S.C. § 4042; *see also* U.S. Const. art. II, § 3, cl. 4 (providing that the Executive Branch has the duty to faithfully execute the laws).

Defendants, of course, recognize that courts may properly review certain decisions of federal agencies where Article III jurisdiction has been established. But here, the Court's Order does not simply envision judicial review of the TEC's decision after it is made. Instead, by forcing Defendants to alter their internal processes to record and transcribe the agency's otherwise confidential internal deliberations leading to that decision—which are normally neither recorded nor transcribed—the Court has altered, and inserted itself into, the Executive Branch's decisionmaking process itself. That intrusion conflicts with the Court's obligation to "keep[] the Judiciary's power within its proper constitutional sphere." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). "At bottom, it is the constitutional

9

prerogative of the Executive Branch, here, acting through the [BOP], to make administrative decisions regarding" the medical treatment and conditions of confinement of incarcerated persons within its custody. *Virtus Pharm., LLC v. Garland*, No. 21-2308, 2021 WL 4306165, at *12 (D.D.C. Sep. 22, 2021) (citing *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 44 (D.D.C. 2015) (explaining that in furtherance of the "separation of powers" courts should "not unduly intrude into the operations of executive branch administrative agencies")).

"It is not the role of Article III courts to supervisor or monitor" an executive agency. *Hardre v. Markey*, No. 20-cv-03594, 2021 WL 1541714, at *7 (D. Colo. Apr. 19, 2021). In other words, "courts may not control, direct, supervise or interfere with the management, operation or activities of the departments or other agencies of the Executive branch of the Government[.]" *Protestants & Other Americans United for Separation of Church & State v. O'Brien*, 272 F. Supp. 712, 715 (D.D.C 1967) ("Federal judges are not supervisors or overseers of Government agencies or institutions."). For example, in the context of a challenge to a decision by the Federal Power Commission, the Supreme Court explained that "a reviewing court may not, after determining that additional evidence is requisite for adequate review, proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry and ordering the results to be reported to the court without opportunity for further consideration on the basis of the new evidence by the agency." *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976). "Such a procedure clearly runs the risk of 'propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.'" *Id.*

Similarly, in *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), the district court had appointed a monitor to oversee various agency activities within the Department of the Interior. *Id.* at 1133. On appeal, the D.C. Circuit held that a "district court does not have inherent power to appoint a monitor - at least not a monitor with the extensive duties the court assigned [in that case] - over a party's substantial objection, here the Government's objection that the appointment violated the separation

10

of powers." *Id.* at 1141.

As these authorities show, courts are reluctant to interfere with the management of federal administrative agencies in view of the serious separation of powers issues that are raised. Consistent with these authorities, Defendants respectfully request that the Court reconsider its order requiring BOP to transcribe and potentially produce to the Court its internal deliberations and instead follow the normal course, allowing BOP to proceed unfettered, and then reviewing the agency's decision to the extent necessary. *See Checkosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994) ("Agency opinions, like judicial opinions, speak for themselves. And agency deliberations, like judicial deliberations, are for similar reasons privileged from discovery."); *United States v. Morgan*, 313 U.S. 409, 422 (1941) ("Just as a judge cannot be subjected to such scrutiny, . . . so the integrity of the administrative process must be equally respected.").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for reconsideration and modify the preliminary injunction solely to remove the requirement that Defendants schedule a court reporter to be present at the TEC meeting and, if the TEC does not recommend Plaintiff for surgery, provide the Court the full transcript of the TEC's meeting.

Dated: January 14, 2022                                 Respectfully submitted,

STEVEN D. WEINHOEFT                          BRIAN M. BOYNTON
United States Attorney                              Acting Assistant Attorney General
                                                              Civil Division

LAURA J. JONES                                         ALEXANDER K. HAAS
Assistant United States Attorney                Director, Federal Programs Branch

                                                              /s/ John Robinson
                                                              GARY D. FELDON
                                                              JOSHUA M. KOLSKY
                                                              JOHN ROBINSON
                                                              Trial Attorneys
                                                              United States Department of Justice

11

                                              Civil Division, Federal Programs Branch
                                              1100 L Street, NW
                                              Washington, DC 20005
                                              Tel:  (202) 616-8489
                                              E-mail:  john.j.robinson@usdoj.gov