IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRISTINA NICHOLE IGLESIAS
(a.k.a. CRISTIAN NOEL IGLESIAS),

    Plaintiff,

v.

IAN CONNORS, *et al.*,

    Defendants.

Case No. 19-cv-00415-NJR

Judge Nancy J. Rosenstengel

## DECLARATION OF GIANNA SANTORO IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF JANUARY 31, 2022

I, Gianna Santoro, have personal knowledge of the information set forth herein and if called upon to testify, I would testify to the truth of the following:

1. I am an associate attorney at Winston & Strawn LLP, and have been personally involved in the outreach described below.

2. In early January 2022, Plaintiff's counsel assembled a list of twenty-two leading surgeons who specialize in and provide gender-affirming surgery in the United States. Since then, Plaintiff's counsel has reached out to all twenty-two surgical practices to gauge their waitlist for consultations and surgery dates; their willingness and ability to work with an outside system like the Federal Bureau of Prisons or its contractor; and their particular requirements, processes, and timeline for patients seeking gender-affirming surgery.[1]

3. In developing this list, Plaintiff's counsel examined online reviews and testimonials, records of past surgical results, malpractice claims, news coverage, surgeon

---

[1] Because Plaintiff's counsel conducted informal outreach and because significant weight is attached to surgical reputation, this publicly filed declaration does not identify particular surgical practices or surgeons by name. Plaintiff's counsel is of course willing to furnish the Court and Defendants with more specific information.

biographies and credentials, and surgical websites to identify surgeons likely to possess adequate training and skill in performing gender-affirming surgery.

4. Upon information and belief, at least two of the surgeons have previously provided gender-affirming surgery to individuals in correctional custody.

5. As of February 8, 2022, Plaintiff's counsel has now reached out to all twenty-two surgical practices. Plaintiff's counsel has heard back from approximately half of the practices contacted.

6. Three (3) practices indicated they could not or would not be able to perform gender-affirming surgery for Ms. Iglesias. The reasons given include not handling single-case referrals; not operating on patients over age 35; and not taking new patients due to lack of capacity.

7. Eight (8) practices have not responded to outreach from Plaintiff's counsel, initially responded to outreach but then stopped responding, or, in one case, proved unreachable at their facility phone number. This includes one surgeon in Florida who did not respond to a voicemail from Plaintiff's counsel.

8. The remaining eleven (11) practices have indicated a willingness for further contact regarding Ms. Iglesias's case, described in more detail below.

9. Among the surgical practices that indicated a willingness for further contact, the possible timelines provided for initial surgical consultation dates—the first step of coordinating for a gender-affirming surgery—varied considerably. The earliest potential date a practice indicated was more than a month away, namely March 9, 2022, during a call made on January 28, 2022. Most wait times were significantly longer. One practice indicated that it was now scheduling initial consultations for January 2024; two more indicated that they were booked up in the coming months and now scheduling initial intakes for the end of summer 2022.

10. These practices also indicated lengthy wait times before surgery, including one that suggested the wait before surgery could occur would be more than a year. They also consistently stressed the importance of permanent hair removal occurring at the surgery site before gender-affirming surgery can occur.

11. One practice indicated a potential willingness to expedite Ms. Iglesias's case, but indicated that they could not begin that process or consider her case without having a referral in hand. Other practices were doubtful that they could expedite Ms. Iglesias's case and at least one said definitively that they would not do so.

12. Other potential obstacles that have been raised in conversations with surgical practices that indicated a willingness for further contact include: requiring patients to be covered by a specific insurance provider; requiring at least one therapy session with an in-house therapist; requiring patients to demonstrate that they live in a safe and appropriate setting, without a guarantee that a BOP-affiliated residential reentry center would qualify; requiring that the initial consultation occur in person rather than virtually; and significant variation in how long a patient is required to stay in the surgeon's geographic area immediately after surgery, including up to four weeks.

13. At least one surgical practice indicated that telehealth options were available for initial consultations.

14. Thus far, only one surgeon of those open to further contact has confirmed both a willingness to work with the Bureau of Prisons or its contractor to perform gender-affirming surgery for Ms. Iglesias and the ability to provide Ms. Iglesias with a surgery date this year (with enough time to recover before December 2022), assuming she is able to complete permanent hair removal and no unforeseen obstacles arise. This surgeon does not practice in Florida.

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Dated: __February 8, 2022__                              _/s/ Gianna Santoro_
                                                        Gianna Santoro