IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS), | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 19-cv-00415-NJR ) |
| IAN CONNORS, ET AL., | ) ) |
| Defendants. | ) |

## DECLARATION OF ALISON LEUKEFELD

I, Alison Leukefeld, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as the Psychology Services Branch Administrator. I have held my current position since April of 2020. I have been employed by the BOP since May, 2004. Additionally, I serve as a member of the BOP's Transgender Executive Council (TEC). I began to participate in the TEC when it was established in 2016.

2. I previously testified in this case at the hearing held on November 22, 2021, on Plaintiff's Motion for Preliminary Injunction. (See Doc. 175)

3. I am aware that the Court ordered BOP to show cause why sanctions should not be imposed in this case. (Doc. 187). In its order, the Court cites several excerpts from my November 22, 2021, testimony, and states that I did not explain that the TEC could refer Igelsias to a surgeon for consultation for GCS directly. (Doc. 187 at 5). The Court contrasts my testimony, to Defendants' Notice in Compliance with December 27, 2021 Preliminary Injunction (Doc. 183) which states in relevant part that review [for GCS] by the BOP Medical Director

1

would not be necessary once Iglesias is housed in a Residential Reentry Center (RRC), as medical care for an inmate at an RRC is provided by contract medical providers in that community.

4. Specifically, the Court cited the following exchange:

**THE COURT:** The psychiatrist, but the -- so would you make a referral, then, for a medical examination -- if the TEC was considering, say, that an inmate at a – seeking gender-confirming surgery at a female facility, hormone levels are stabilized, would you then refer her for a medical evaluation?

**DR. LEUKEFELD:** Yes. For example, in the case where the TEC recently made a recommendation for surgery, we of course are working with the local health care professionals, and when we made that recommendation, we referred it to BOP's medical director, who will ensure that the individual is appropriate for surgery, that there are no contraindications, and look for a surgeon.

(Doc. 175, p. 151).

5. In the above exchange, I was referring to a specific inmate who at the time was housed in a secure BOP facility. Therefore, that answer accurately reflected the TEC's practice of referring an inmate housed in a secure facility (as opposed to an RRC) to the BOP's medical director to ensure that individual is appropriate for surgery.

6. Additionally, the Court's order to show cause cited the following:

**MR. KNIGHT:** So -- But Dr. Stahl does not determine whether someone gets surgery; is that right?

**DR. LEUKEFELD:** Correct. The TEC makes that recommendation, and then she and her staff would work to find a surgeon and make sure that there's -- that there are no contraindications that would preclude surgery.

(Doc. 175, p. 163).

7. In the above exchange, I was again referring to TEC's practice of referring an inmate housed in a secure facility (as opposed to an RRC) to the BOP's medical director to

ensure that individual is appropriate for surgery.  This question and answer came during a long line of questions about the TEC generally.  And in fact, the question was about Dr. Stahl, which elicits an answer regarding the process for inmates housed in secure facilities. I acknowledge that I did not answer the question as to the process that would be followed for an inmate in an RRC. At that point, TEC had not recommended an RRC inmate for surgery, and so that process was not most salient in my mind. At the time I gave that answer, TEC had only recommended one inmate for surgery. That inmate was housed in a secure facility and referred to the BOP's Medical Director.  Since the large majority of BOP inmates are housed in secure facilities rather than RRCs, I believe the process for referring inmates in RRCs would be the exception to the general rule (referral to the Medical Director).

      8.      Finally, the Court's order cites the following exchange:

> **THE COURT:** Okay. And just so I'm clear, and you said that -- I think we've -- both things have been said here today. Is the committee going to recommend surgery in April or refer her at that time for an evaluation?
>
> **DR. LEUKEFELD:** The committee will make a determination about whether to recommend in April, and if it does, she would immediately be referred to the medical director to find –
>
> **THE COURT: Okay.** So first you have to recommend it and then she would be referred, and for the one that you just mentioned in October who was referred -- were they referred or recommended?
>
> **DR. LEUKEFELD:** The TEC recommended surgery and referred her to the medical director. Medical director would not -- will do surgery unless there's some kind of contraindication.
>
> **THE COURT:** And that's the BOP medical director?
>
> **DR. LEUKEFELD:** Correct.
>
> **THE COURT:** Okay. But you don't know how long that's going to take.
>
> **DR. LEUKEFELD:** I don't know how long it will ultimately take, but I -- but it is underway.
>
> (Doc. 175 at pp. 189-190).

3

9.      In this exchange, only the Court's first question related to Iglesias. I acknowledge that in response to this question, I misspoke and incorrectly referenced Iglesias being referred to the BOP's Medical Director. At the time I gave that testimony, Iglesias was approximately four months away from RRC placement. Again, at that time, only one inmate had been recommended for surgery, and as that inmate was in a secure facility, the process for referring that inmate to the BOP Medical Director was most salient in my mind. While the answer I gave may be the correct answer in regard to the large majority of BOP inmates, I recognize that I neglected to answer the question specifically in regard to Iglesias. This was an inadvertent oversight, and not in any way meant to mislead. At the time I gave that testimony, the first referral to the Medical Director had just recently been made, and it was not clear to me that the difference in the process for referring RRC inmates would make a great difference logistically. Aside from the Court's first question in the exchange above, the remaining questions and answers in this exchange again refer back to a specific inmate. For the same reasons stated in paragraphs 5 and 7, above, the responses to those questions are accurate.

10.     In all of my testimony, I did my absolute best to provide accurate information covering a very broad and nuanced subject matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 14th day of February 2022.

_____
Alison Leukefeld