UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS),<br><br>Plaintiff,<br><br>v.<br><br>IAN CONNORS, ET AL.,<br><br>Defendants. | 19-CV-00415-NJR |

### DECLARATION OF JOSHUA E. GARDNER

I, Joshua E. Gardner, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am currently employed by the Department of Justice (DOJ), Office of Legislative Affairs, as a Special Counsel, a position I have been detailed to since October 27, 2021. My permanent position is with the Federal Programs Branch, Civil Division, DOJ, as a Special Counsel, a Senior Level career civil-service position. I have worked at DOJ since February 2004, and have worked in the Federal Programs Branch since 2008. Previously I worked at the law firm of Shearman & Sterling, and before that I served as a law clerk for a Justice on the Florida Supreme Court. During my time at DOJ, I have been responsible for personally litigating and managing numerous cases, often involving complex issues of federal constitutional and administrative law. My direct supervisors are three Federal Programs Branch Directors, each of whom is also a career civil servant. As part of my job responsibilities, since 2016 I have worked on behalf of DOJ on the Advisory Committee for Civil Rules. In this role, I work with numerous federal district court and appellate court judges, law

professors, and practitioners, to consider potential amendments to the Federal Rules of Civil Procedure. In addition to my work at DOJ, I have been an adjunct professor at The George Washington University Law School since 2005, where I have taught at various times Legal Research & Writing, Government Lawyering and Pretrial Advocacy. A substantial portion of my teaching involves instruction on legal ethics and professional responsibility. I graduated from The George Washington University Law School in 2000 with high honors. I have received numerous awards for my work at DOJ, including awards recognizing my integrity as a litigator.

2. I make this declaration based on personal knowledge and in response to the Court's February 10 Show Cause Order. Dkt. No. 187.

3. I filed my notice of appearance in the above-captioned litigation on November 13, 2020. Dkt. No. 75.

4. Since that time I have been substantially involved in every brief filed by the United States in this matter until my detail to the Office of Legislative Affairs began on October 27, 2021. Since that point, my day-to-day involvement in this matter has declined substantially. Nevertheless, since my detail I have continued to be apprised of significant case developments, as appropriate.

5. In virtually every document filed in this matter by the United States, multiple levels of review within DOJ took place. This review occurs both within the Federal Programs Branch, as well as often within certain of DOJ's leadership or other offices and the Federal Bureau of Prisons.

6. I have never filed a document or been instructed to take a position in Court for purposes of delay or the multiplication of proceedings. To my knowledge, no other DOJ attorney assigned to this matter has filed a document, or been instructed to file a document, for the purpose of delaying or multiplying proceedings.

7. In every filing made with the Court I have endeavored to represent the facts and law accurately and fairly, while zealously advocating on behalf of the United States. I have never sought to mislead the Court or sought to withhold non-privileged, material information from the Court. Based on my extensive interactions with them over the course of this case and others, I believe the same to be true of my Department of Justice colleagues working on this matter.

8. I have no reason to believe that any representative of the Federal Bureau of Prisons has made any representations to the Court, or withheld information from the Court, for purposes of misleading the Court or the Plaintiff. No one from the Federal Bureau of Prisons has asked me to make misleading statements or representations to the Court, or to withhold non-privileged, material information from the Court. I have no reason to believe that the Federal Bureau of Prisons has asked other DOJ attorneys assigned to this matter to make misleading statements or representations to the Court, or to withhold non-privileged material information from the Court. Nor am I aware of any efforts on behalf of the Federal Bureau of Prisons to delay providing medical care to the Plaintiff, including the provision of gender-affirming surgery.

9. I am not aware of anyone at the Department of Justice or the Federal Bureau of Prisons who intentionally sought to violate the Court's preliminary injunction order or endorsed any effort to do so. In the course of providing legal advice to the Federal Bureau of Prisons, I did not (and would not) provide any advice that I believed would constitute a violation of the Court's preliminary injunction order. My understanding of the Court's preliminary injunction order was that it required the "TEC [to] meet to evaluate Iglesias' request for GCS by Monday, January 24, 2022." Dkt. No. 177 at 1. I did not understand the Court's preliminary injunction to require the TEC to reach any

3

particular conclusion in its evaluation or to limit the range of possible conclusions the TEC could reach.

10. I have re-reviewed each of the eight filings identified in the Court's February 10 Order, including Docket Numbers 100, 129, 130, 147, 157, 161, 178, and 183. In each of those filings I believe I and my colleagues accurately represented both the facts and the law. Neither myself, nor to the best of my knowledge did anyone at DOJ, make any of the eight filings identified by the Court in the February 10 Order for the purpose of delay or the multiplication of proceedings. Rather, each of the filings identified in the Court's February 10 Order was made in good faith and based on the best understanding of the facts and the law. None of the filings identified in the Court's February 10 Order was intended to mislead the Court or misrepresent the facts or the law.

11. For example, the Court's February 10 Show Cause Order notes that I argued in Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction that the TEC "conducted an individualized assessment of Plaintiff and concluded that she was not an appropriate candidate for gender affirming surgery at this juncture because her hormone levels had not yet stabilized, and she had not lived a real-life experience as a female for twelve months in a female prison." Dkt. No. 187 at 7 n. 2 (quoting Dkt. No. 100 at 14). The Court further observes that Dr. Leukefeld's declaration in support of Defendants' Opposition stated that "the TEC has not denied Iglesias gender affirming surgery." *Id.* (quoting Dkt. No. 100-2 at 6). I do not believe these statements are inconsistent, and both statements were accurate at the time they were made. As Dr. Leukefeld explained in her declaration, "[g]ender affirming surgery was not appropriate at the time Iglesias was last reviewed by the TEC, nor is it currently appropriate." Dkt. No. 100-2 at ¶ 11. Dr. Leukefeld stated that Iglesias had not yet lived in a gender congruent role for twelve months, and explained the penological reasons

4

such an experience was important before considering surgery. *Id.* at ¶¶ 11-12. She also noted that at the time the TEC reviewed Ms. Iglesias for surgery on March 9, 2020, Ms. Iglesias' "hormone levels had fallen below their goal and were not been maximized." *Id.* ¶ 10. For these reasons, Dr. Leukefeld explained that "the TEC has not denied Iglesias gender affirming surgery. <u>Rather, it has not approved placement in a female facility, which is a necessary and appropriate step toward surgery.</u>" *Id.* at ¶ 13 (emphasis added). I did not believe at the time, and do not believe now, that there is anything contradictory or factually inaccurate in Dr. Leukefeld's declaration, or in Defendants' brief which cites to that declaration. The statements in Dr. Leukefeld's declaration and the brief are consistent with one another because the TEC had not denied Plaintiff's request for surgery; rather, the TEC concluded that surgery was not yet appropriate, with the expectation that the TEC would continue to evaluate Plaintiff for surgery as her circumstance may change. The statements made in the brief and supporting declaration were made in good faith, are consistent with the facts as they then existed, and were not made for purposes of delay.

12. The Court also identifies Defendants' Motion to Exclude Untimely and Undisclosed Expert Testimony and Request for Expedited Consideration, Dkt. No. 130, as a motion that should be addressed at the upcoming hearing. Defendants moved to exclude new opinions that Dr. Ettner sought to offer after Plaintiff's motion for a preliminary injunction had been fully briefed and less than two weeks before the then-scheduled preliminary injunction hearing. Dkt. No. 130. Defendants explained in that motion (with citation to support in the record) that Plaintiff had months to develop Dr. Ettner's opinions in this case, and that Plaintiff waited until *after* the Court had scheduled the preliminary injunction hearing—which was six weeks after the preliminary injunction briefing had concluded—before seeking to have Dr. Ettner conduct a psychological examination of the Plaintiff.

5

*Id.* at 3. Defendants also explained that in the absence of knowing precisely what Dr. Ettner's new opinions and bases for those opinions were, they could not reasonably prepare for the upcoming evidentiary hearing. *Id.* Defendants then cited to a number of cases standing for the proposition that the exclusion of untimely expert testimony may be appropriate. *Id.* I believed at the time, and continue to believe, that this is an accurate statement of the law, that Defendants had a good faith, legitimate basis for seeking the exclusion of Dr. Ettner's untimely opinions, and that this motion was not made for purposes of delay.

13. The Court's Show Cause Order also suggests that I mischaracterized the record in Defendants' Opposition to Plaintiff's Motion to Compel Expedited Discovery. Dkt. No. 187 at 6 n. 4. In support of that Opposition, Defendants explained that Plaintiff had repeatedly told the Defendants and the Court that she did not want expedited discovery beyond the deposition of Dr. Leukefeld, and that Plaintiff changed her position less than three weeks before the preliminary injunction hearing. Dkt. No. 147. Defendants factual representations in that Opposition were accurate, made in good faith, and were not made for the purposes of delay. Defendants' Opposition identified the multiple times Plaintiff's counsel had represented to the Defendants and the Court that Plaintiff did not seek to pursue expedited discovery beyond the deposition of Dr. Leukefeld. This included an August 30, 2021, email in which Plaintiff's counsel advised the government that "[a]fter thinking more about the question of moving forward with expedited discovery, we are inclined to limit the expedited discovery we request to a deposition of Dr. Leukefeld." *Id.* at 1 Ex. 2. Plaintiff's counsel then told the Court at the August 30, 2021 status conference that Plaintiff did not seek any discovery beyond Dr. Leukefeld's deposition. *Id.* at 1. Then, on September 10, 2021, after Dr. Leukefeld's deposition, Plaintiff's counsel again told the Court that she "do[es] not anticipate the need for any

6

additional depositions or discovery before the hearing." *Id.* at 2 Ex. 5. Despite these multiple representations to Defendants and the Court, the Plaintiff changed course on September 20 and sought additional, expedited document discovery. *Id.* at 2. Each of these assertions of fact is supported by the record, was made in good faith, and was not made for purposes of delay. The Court states in the Show Cause Order that Defendants have mischaracterized the record because at the hearing on August 30, 2021, it was Defendants who explained that they did not need to depose Dr. Ettner and were unlikely to call witnesses, but later changed positions when Defendants stated on September 10 that they intended to depose Dr. Ettner and to call Dr. Leukefeld as a witness. Dkt. No. 187 at 7 n.4. While that, too, is true, it is also true that Plaintiff made repeated representations to the Court that she did not intend to seek discovery beyond Dr. Leukefeld's deposition, and Defendants' opposition to the motion for expedited discovery accurately states as much. And Defendants' need to depose Dr. Ettner only became apparent after Plaintiff finally provided the results of Dr. Ettner's July 20, 2021 psychological assessment of Plaintiff – which Plaintiffs produced on August 31—after the August 30 hearing. Although the Court is correct that Plaintiff was not *ordered* to inform the Court by September 10 as to whether she sought additional discovery beyond Dr. Leukefeld's deposition, Dkt. No. 187 at 7 n.4, Plaintiff did repeatedly represent to the Court and Defendants that she did not, both on September 10 and earlier.

14. The Court's Show Cause Order also identifies Defendants' Motion for Relief From Full Compliance With the Court's October 15 Order, Dkt. No. 157, as a document Defendants should be prepared to discuss at the upcoming hearing. Dkt. No. 187 at 7. Defendants filed a motion for relief from the aspect of the Court's October 15 Order concerning expedited discovery to the extent it required complete compliance with the production of documents by the date of then-scheduled

7

October 19, 2021 preliminary injunction hearing. Dkt. No. 157 at 1-2. Defendants explained that they "had made every effort to comply with the Court's order as quickly as possible, and they are working to collect the documents encompassed by the Court's Order and prepare them for production." *Id.* at 1. Defendants noted that they had already produced the first three of the four categories reflected in the Court's discovery order, and had produced 886 pages of documents in the last 48 hours. *Id.* at 2. Defendants explained, however, that it would be impossible to complete production of the fourth category of documents by that Tuesday's evidentiary hearing because it required "electronic custodial searches of a number of BOP employees, and the initial collection efforts resulted in hundreds of thousands of pages of emails." *Id.* Defendants explained that although a preliminary review indicated that a substantial proportion—and likely a large majority—of these documents are either privileged or non-responsive, addition time would be necessary to de-duplicate the collection, review the documents for responsiveness and privilege, and redact any security sensitive information or information related only to other inmates. *Id.* For those reasons, Defendants explained, the review could not be completed in time for the preliminary injunction hearing scheduled for the following day. *Id.* These representations were and remain accurate to the best of my knowledge, information, and belief, and the motion for relief was made in good faith and not for purposes of delay.

15. The Court's Show Cause Order also expresses concern with the statement in Defendants' October 22, 2021 Status Report, Dkt. No. 161, concerning the amount of time they estimated it would take to review documents. Dkt. No. 187 at 7 n.5. The Defendants provided this estimate in response to the Court's October 19, 2021 minute order that asked, among other things, for "defendants['] proposed deadline to []comply with the Court['] order on expedited discovery[.]" In that status report,

8

Defendants noted that, after de-duplication and discussions with the Plaintiff to narrow the scope of the search, the number of documents to be searched totaled approximately 5,200 documents. Dkt. No. 161 at 2. Defendants further noted that the documents would be available to be searched early in the week of October 25, 2021, that Defendants anticipated providing to Plaintiff responsive, non-privileged documents on a rolling basis, and that Defendants anticipated making their best efforts to complete their productions by November 22, 2021 – within less than one month. *Id.* Defendants further noted that assuming an averaging process rate of twenty-five documents per hour and eight-hour review days, "it will take twenty-six full days to review the approximately 5,200 collected documents, absent further narrowing." *Id.* at 2, n.1. For this reason, Defendants noted that they were "uncertain whether they can complete their production of documents subject to the Court's order by November 22, 2021." *Id.* at 2. The Court states in its Show Cause Order that "DOJ attorneys represented that it could not comply with the Court's discovery order on expedited discovery" based on the number of man-hours estimated to complete the review, and further noted that the estimate assumed a single attorney doing the work when "five attorneys entered in on this case." Dkt. No. 187 at 7, n.3. But Defendants did not represent to the Court that they "could not comply with the Court's discovery order." Rather, as explained in Defendants' status report, Defendants expressed uncertainty as to whether they could produce all responsive, non-privileged documents by November 22, 2021 given the large volume of documents and the short time for review. More importantly, Defendants did not intend to suggest that only a single attorney would be reviewing documents. Rather the intention was to provide the court with the aggregate number of personnel hours necessary to

9

complete the expedited review.[1] There certainly was no intention to mislead the Court; rather, Defendants sought to provide the Court with a conservative estimate so that the Court could decide whether it made sense to delay briefly the evidentiary hearing to permit the orderly production of documents. This filing was made in good faith and was not intended to mischaracterize the record or improperly delay proceedings.

16. The Court also expressed concerns in the Show Cause Order with Defendants' Motion for Reconsideration, Dkt. No. 178, as well as the Notice by All Defendants in Compliance with Preliminary Injunction, Dkt. No. 183. *See* Dkt. No. 187 at 7. These two documents were filed while I was on detail to the Office of Legislative Affairs. Nevertheless, I have no reason to believe that either the DOJ attorneys assigned to this matter or the Federal Bureau of Prisons sought to file these documents to mislead the Court or otherwise improperly delay proceedings or Plaintiff's medical care.

17. As a member of the Bar and an employee of the Department of Justice, I take with utmost seriousness my duties and obligations to comply with all Court orders, the Federal Rules of Civil Procedure, and the Rules of Professional Responsibility to the full extent required by law. In my twenty-two years of practice I have never been sanctioned by a Court for alleged misconduct. As in every matter I handle on behalf of the United States, I have endeavored to adhere to the highest ethical standards in litigating this case. At no time during my involvement in this case did I seek to misrepresent the facts or the law or improperly delay proceedings in this matter. Prior to the Court's

---

[1] As reflected on the signature block of this filing, there were three—not five—Federal Programs Branch trial attorneys assigned to work on this matter at that time, along with a reviewer and representatives from the U.S. Attorney's Office, who are not substantively involved in the litigation of this case but rather serve as local counsel. Each of those three Federal Programs Branch attorneys, including myself, had other matters in addition to this litigation to attend to during this time. In addition, Laura Smith is an attorney from DOJ's Torts Branch who represented the Defendants sued in their individual capacity. At the time Defendants filed this motion, the parties had jointly stipulated to the dismissal of the individual capacity claims, Dkt. No. 114, and Ms. Smith has had no further involvement in this case since that time.

Show Cause Order, I was unaware that the Court had any concerns about my or other DOJ employees' professionalism or candor in this case. I regret if any of my actions, or the actions of my colleagues, have caused the Court to question the truthfulness or intentions of counsel for the United States or the Federal Bureau of Prisons, and that the Court's concerns have resulted in an unfortunate expenditure of the Court's time and resources.

    I declare under penalty of perjury that the foregoing is true and correct.

Alexandria, Virginia           _/s/ *Joshua E. Gardner*_____  
February 14, 2022            Joshua E. Gardner  
                                            Special Counsel  
                                            United States Department of Justice