IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS),<br><br>  Plaintiff,<br><br>vs.<br><br>IAN CONNORS, ET AL.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 19-cv-00415-NJR<br>)<br>)<br>)<br>) |

**SUPPLEMENTAL DECLARATION OF DR. ALIX M. MCLEAREN**

I, Dr. Alix M. McLearen, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as Acting Assistant Director of the BOP's Reentry Services Division. I have held my current position since December of 2021, and have been the Senior Deputy Assistant Director since May of 2020. I have been employed by the BOP for approximately 18 years. I previously provided a declaration dated February 14, 2022 (Doc. 191-2), in response to the Court's order to show cause (Doc. 187), and a declaration dated January 31, 2022, in support of Defendants' Notice in Compliance With December 27, 2021 Preliminary Injunction (Docs. 183, 183-1).

2. My February 14 declaration generally discussed my role on the BOP's Transgender Executive Council (TEC) and the TEC's recommendations regarding the Plaintiff, inmate Iglesias, Reg. No. 17248-018. (Doc. 191-2, generally.) I noted that the company with which BOP contracts to provide medical referral and scheduling services for inmates housed in Residential Reentry Centers (RRCs) has been informed of Iglesias's pending transfer; that BOP has been informed by the contractor that it has located a surgeon to potentially perform Iglesias's gender-confirming

1

surgery (GCS) (assuming the surgeon agrees to accept Iglesias as a patient); and that the surgeon has been contacted and given preliminary patient information about Iglesias.[1]  I write now to update the Court on further progress BOP has made in referring Iglesias to a surgeon since I submitted my February 14 declaration.

3.  BOP provides medical care for inmates housed in RRCs through a referral service contractor.  Through these services, all treatment in the community is provided by contracted third parties.  Some services, including Gender Confirming Surgery (GCS) are considered cost plus services because they are rare or specialized and outside what is normally readily available.  In such cases, the contractor may still choose to attempt to identify and subcontract with an outside service provider.  In this case, the referral service contractor agreed to work with BOP and reached out to a GCS surgeon regarding Iglesias's case.

4.  BOP understands that the surgeon is a member of WPATH.  As with any patient, the surgeon retains the discretion to decide whether they will accept Iglesias as a patient.  Relatedly, the timeline for surgery is decided by the surgeon and any other providers that are part of the team required to perform the surgery.

5.  Since my February 14 declaration was submitted, BOP has taken additional steps in furtherance of referring Iglesias to the surgeon for GCS consultation.  Specifically, BOP has sent the surgeon (via its contractor) the past two years of Iglesias's medical records to review, and continues to work with its contractor to ascertain what additional information, if any, the surgeon requires in order to decide whether to accept Iglesias as a patient.

---

[1] The surgeon is not identified here out of respect for their privacy, as they have not yet agreed to accept Iglesias as a patient, nor given any indication they approve of being identified here.  Publicly identifying them in connection with contested litigation could have unintended adverse consequences on their consideration of whether or not to accept Iglesias as a patient.

6. BOP has advised its contractor that the referral (assuming the surgeon accepts Iglesias as a patient) is expected to include comprehensive services to include hair removal at the surgical site.

7. In addition, BOP has taken steps to expedite Iglesias' initial consultation with the surgeon. Normally, it would be impractical to schedule an appointment with a contract provider for an inmate in an RRC setting before the inmate has arrived at the RRC. However, in this case, in order to facilitate the earliest possible consultation, BOP asked its contractor for the surgeon's earliest availability. Although the surgeon has yet to accept Iglesias as a patient, I was informed that as of February 16, 2022, the surgeon had appointments available on April 4 and 7, 2022. BOP has requested the contractor to ask the surgeon to hold one of those dates open pending the surgeon's decision on accepting Iglesias.

8. BOP also considered transferring Iglesias to an RRC before March 10, 2022, if doing so could expedite her initial consultation with a surgeon. Because the surgeon identified by BOP's contractor is currently not available before early April, BOP is not planning at this time to move Iglesias to the RRC before March. However, should the surgeon's availability change or if moving Iglesias sooner could expedite the consultation, then BOP would reconsider accelerating Iglesias's transfer accordingly.

9. Additionally, BOP has made preparations in the event that the surgeon may require two letters recommending surgery from mental-health providers who have evaluated Iglesias and are familiar with WPATH criteria. BOP cannot yet begin preparing any such letters as it is not known whether the surgeon will require such letters, and if so what the surgeon's criteria are for such letters. Nevertheless, BOP has identified two clinicians who are familiar with Iglesias and have committed to preparing letters of recommendation if requested, assuming that at the time in question they are required that Iglesias has not engaged in behavior that would prevent her from continued placement in a female facility, and assuming further that no other reasons have developed

3

that would make gender-confirmation surgery inappropriate for Iglesias.  Further, my understanding is the two clinicians have committed to writing the letters as quickly as possible (within one business day), assuming the information requested is limited to their own personal knowledge.

10. BOP is committed to providing Iglesias appropriate care.  I am personally committed to this as well.  We do not control the schedule or decisions of any surgeons, but we are working diligently with our contractor to have the initial surgical consultation scheduled at the soonest possible date.

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief.  Executed on this 18th day of February 2022.

_____

Dr. Alix M. McLearen