IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS), | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 19-cv-00415-NJR |
| IAN CONNORS, ET AL., | ) ) ) |
| Defendants. | ) |

### DECLARATION OF DR. ALIX M. MCLEAREN

I, Dr. Alix M. McLearen, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as Acting Assistant Director of the BOP's Reentry Services Division. I have held my current position since December of 2021, and have been the Senior Deputy Assistant Director since May of 2020. I have been employed by the BOP since 2003.

2. I previously testified at the hearing held in this case on February 22, 2022. After that hearing, the Court ordered Defendants to "file weekly updates on contacts with the surgeon, the surgeon's response, and any other items relating to Ms. Iglesias's care on Friday, February 25, 2022, by 5:00 p.m., and every Friday thereafter by 5 p.m. until further notice." (Doc. 200).

3. I write now to update the Court with those such items that have occurred since my testimony on February 22, 2022.

4. On February 23, 2022, BOP was notified by its contractor that the surgeon the contractor had previously reached out to was still in the process of reviewing Iglesias's medical records. My staff were informed that the surgeon had some difficulty with the electronic files but

1

had eventually been able to open them. This information was shared as an explanation for why a decision has not been provided.

5. Later, on February 24, 2022, the contractor forwarded a message from the surgeon indicating that the surgeon reviewed the records. The surgeon also asked what exactly the surgeon was being asked to decide. The surgeon indicated that Ms. Iglesias would need to go through a psychological evaluation and get letters of support, and that she would need to be evaluated prior to the surgeon offering to perform any procedures. The surgeon noted that the criteria for any gender affirming surgery include good control of medical and psychiatric issues as well as letters of referral from qualified mental health providers (two letters for any type of "bottom surgery"). The surgeon further indicated that if Ms. Iglesias only wants "bottom surgery", that could feasibly all be accomplished in the given time frame (i.e. by December 2022). Finally, the surgeon stated the surgeon does not know anything about Ms. Iglesias's social situation, but that it sounds like she would not have much help, and noted that these are all factors that go into the decision to offer surgery.

6. I received the above referenced message on February 25, 2022, after my staff forwarded it to me. I responded on February 25, 2022, asking my staff to inform the contractor (to inform the surgeon) that the inmate will have the support of the RRC, which includes case management, housing, and referral for mental health services if indicated. I further noted BOP can provide letters and has two clinicians ready to write them, but that we need some detail as to what specific information the surgeon requires. Thus, my staff are informing the contractor the letters will be provided after the initial consultation. I noted that BOP is asking the surgeon to schedule a consultation, after which the surgeon could request additional information if needed, and determine whether they are willing to accept the patient. I noted that BOP's contractor has held an appointment with the surgeon, and inquired if the surgeon is willing to meet with Ms. Iglesias on that date. The contractor is also attempting to secure an earlier date if one has become available.

Finally, I inquired if the surgeon does surgical site hair removal as part of their process, or whether there are providers in the area they would recommend so we can reach out ourselves.

7. Additionally, BOP took steps to broaden its search beyond the above-referenced surgeon. Specifically, after consultation with the BOP's Office of General Counsel (OGC), BOP determined that it was appropriate to ask the contractor to reach out to another surgeon while awaiting a decision from the first surgeon. Accordingly, on February 24, 2022, I advised my staff to notify the contractor that BOP is requesting they begin identifying and contacting a second surgeon (and potentially a third surgeon) while a decision from the first surgeon is pending. The contractor was notified on February 24, 2022.

8. Also on February 24, 2022, I advised my staff to inform the contractor that while BOP believes it makes sense for the removal of hair at the surgical site to be part of the consultation with the surgeon, in the interest of time, BOP is requesting the contractor identify other options for hair removal at the surgical site. The contractor was informed on February 24, 2022.

9. Because the Court asked about hair removal at FMC Carswell, I also requested verification there are no BOP staff or currently contracted providers at FMC Carswell who can provide hair removal at the surgical site. This was confirmed on February 24, 2022.

10. BOP remains committed to providing Iglesias appropriate care, and continues working diligently with our contractor to have the initial surgical consultation scheduled at the soonest possible date.

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief. Executed on this 25th day of February 2022.

ALIX MCLEAREN
Digitally signed by ALIX MCLEAREN
Date: 2022.02.25 13:52:44 -05'00'

Dr. Alix M. McLearen

3