IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS), | |
| Plaintiff, | Case No. 19-cv-00415-NJR |
| v. | Judge Nancy J. Rosenstengel |
| FEDERAL BUREAU OF PRISONS, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR A MODIFIED PRELIMINARY INJUNCTION**

Plaintiff files this brief in support of her Motion to for a Modified Preliminary Injunction. ECF No. 213. Defendants' gross mischaracterizations of legal standards, factual events, and her Motion are exceptional circumstances warranting a reply per Local Rule 7.1(c). ECF No. 222.

**I.      PREVAILING LAW SUPPORTS A MODIFIED PRELIMINARY INJUNCTION.**

Preliminary injunctions may be modified at the Court's discretion. *See Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015). "[A]ny injunction issued by a court of equity is itself subject to later modification." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007). "The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Id.* (internal citations omitted).[1]

Thus, Defendants' suggestion that Ms. Iglesias seeks "a new injunction" is misplaced. Def. Resp. at 3 n.1. She already "satisf[ied] the usual four-factor test for preliminary injunctive relief," *id.*; *see* ECF No. 176 at 59 ("Iglesias has met her burden in moving for a preliminary injunction."), and this Court's PI Order already ordered Defendants to "schedule[e] . . . GCS" if they approved Ms. Iglesias for surgery, *id.* at 60. Nor do Defendants' citations support their case. Indeed, *Battoo*

---

[1] "[A] district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 430 (8th Cir. 1983).

1

expressly recognized that "a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest" and that courts must be cautious in denying motions to modify when there are "apparent costs to waiting" to take further action. *Battoo*, 790 F.3d at 51. Here, modifications benefit the parties and public by offering clear guidance to ensure Ms. Iglesias receives her much-needed surgery, and there are steep costs to her wellbeing and constitutional rights if such care is further delayed. Defendants also cite *Winterland* to claim that a "movant '[must] demonstrate[] that changed circumstances make the continuation of the injunction inequitable.'" Def. Resp. at 3 n.1 (citing *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 260 (7th Cir. 1984)). But this is inapposite: the movant in that case was the *enjoined* party, unlike Ms. Iglesias. No party here argues that the injunction's continuation is inequitable.

The relief Ms. Iglesias now requests is not new, intrusive, nor far-reaching. Her preliminary injunction sought "the medically necessary healthcare she needs," including gender-affirming surgery. ECF No. 93 at 20. This Court found that Ms. Iglesias "met her burden in moving for a preliminary injunction" and ordered Defendants to immediately begin the process of providing surgery if the TEC so recommended, which it did. ECF No. 176 at 59-60. The modifications sought are wholly within that Order's purview and effectuate its goals. Indeed, Ms. Iglesias's request that Defendants make a detailed plan to provide the surgery reiterates what this Court *already ordered* but Defendants ignored. *See id.* at 60. Requiring a timely concrete plan and that the now-approved surgery occur are needed updates to the PI Order, especially given Defendants' failure to comply.

## II. DEFENDANTS MISREPRESENT THE RECORD AND ARE UNRELIABLE NARRATORS OF THEIR OWN PROCESS.

For all their claims of progress, Defendants do not dispute that—*80 days* after this Court's injunction and *over 50 days* after approving surgery—there is no surgeon contracted, no surgery date scheduled, no treatment plan created, and no hair removal even begun. Nor could they.

2

Defendants continue to offer "everchanging reasons for delaying [Ms.] Iglesias's gender confirmation surgery." ECF No. 187 at 1. First, Defendants still defend their twelve-month rule to justify the months-long delay between Ms. Iglesias's surgery approval in January and any future consult.[2] Def. Resp. at 7-9 ("[T]he facts in the record show . . . substantial compliance with that policy."). Yet Defendants simultaneously disavow that rule to claim continued progress—and have now offered consultations as early as March 23. *Id*. at 8 n.2. But Defendants cannot have it both ways: either they are committed to the twelve-month policy they repeatedly defended as a reason to delay Ms. Iglesias's care (which is belied by the earlier appointments) or they must admit the policy does not control here (and thus cannot rely on it to excuse the lack of a contracted surgeon).[3]

Second, Defendants have now let over 50 days pass since approving Ms. Iglesias's surgery without starting the presurgical hair removal they know full well to be a necessary and lengthy process. *See* Hearing Tr. at 99-100. For weeks, Defendants insisted they could not begin hair removal until after Ms. Iglesias met with a surgeon. *Id*. at 100-102; ECF No. 204. Yet suddenly— before any such consult—Defendants have booked an appointment with a hair-removal specialist. But again, they cannot have it both ways: either hair removal needed to be preceded by a surgical consultation (which is belied by the scheduled appointment on March 24) or there was never any such need to have a consultation first (and hair removal could have begun significantly earlier).[4]

Third, Defendants originally claimed that they needed to wait to even solicit the two mental-health referral letters until after Ms. Iglesias met with a surgeon in April 2022. ECF No.

---

[2] For myriad issues with Defendants' use of this rule, along with other rationales for delay, *see* ECF No. 186 at 6-13.
[3] Defendants claim that "the TEC concluded that it was important to allow time to monitor Plaintiff's adjustment following her transfer to the RRC, given the difficulties she had previously experienced in adjusting to life in a female correctional facility." Def. Resp. at 8. But vague references to "difficulties" cannot justify delaying necessary care.
[4] In addition, Defendants continue to justify the total lack of hair removal thus far by insisting that "[t]here was no one on BOP staff qualified to perform the permanent hair-removal procedure while Plaintiff remained at FMC Carswell." Def. Resp. at 10. But that is an obstacle wholly of their own creation. There was no hair-removal provider available *because they did not hire or contract with one* for months after approving Ms. Iglesias for gender-affirming surgery in January 2022 (and approving another transgender woman at FMC Carswell for the same surgery in October 2021).

3

204-1 at ¶ 6. Plaintiff pointed out that this proposal had no basis in standards for providing gender-affirming surgery. ECF No. 209 at 7. Now they are at work assembling the letters even before Ms. Iglesias has met any surgeon, though the process is taking far longer than the one-business-day timeframe Dr. McLearen told the Court. Hearing Tr. at 32. Time and again, Defendants offer reasons to justify delaying Ms. Iglesias's care for weeks and months—only to reverse course (after some period of extra delay) and reveal the reason was pretextual or unfounded all along.[5]

As Defendants admit, they have no timeline for Ms. Iglesias. Hearing Tr. at 61. And they continue to delay *any* action on many tasks until they find a surgeon. Def. Resp. at 13 & n.6. But—as with other tasks they originally insisted were surgeon-dependent but then backtracked on—these categorical refusals to act are unjustified. If "BOP's understanding is that it cannot move forward with detailed preparation for those tasks"—viz. developing plans for periods before and after surgery—"until a surgeon is in place," *id.* at 13 n.6, it must be compelled to by this Court. While certain details may depend on confirming a specific surgeon and surgery date, Defendants must immediately begin developing plans that can be put into action as soon as that occurs.

Defendants also refuse to take accountability for the timeliness of Ms. Iglesias's surgery process. Despite conceding their ultimate responsibility for the "medical care of all individuals in [their] custody," Hearing Tr. at 38 ("A. . . . [Y]es, for medical care."), Defendants now suggest that they are not ultimately responsible for expeditiously securing a surgeon as particular tasks

---

[5] Even beyond their "everchanging reasons," Defendants have a documented history of disclosing surprise additional steps in their process of securing gender-affirming surgery, even when doing so directly contradicts previous claims of progress to this and other courts. First, Defendants did not timely disclose that Ms. Iglesias's transfer to a halfway house would change the process of approving and procuring her surgery. *See* ECF No. 187. Second, Defendants did not timely disclose that there were additional procurement processes necessary to locate and secure a surgeon. Hearing Tr. at 176-78 ("THE COURT: . . . I heard nothing about procurement and contracting issues at the November hearing."). Third, in January 2022, the Department of Justice told a federal court in another case involving a federal prisoner approved for gender-affirming surgery that "BOP had already tentatively identified a surgeon to perform 'bottom surgery' on [p]laintiff"—only to walk that claim back over a month later as "premature" due to a newly disclosed "statutory procurement process." Hearing Tr., Ex. 4 at 1 (Feb. 19 Notice) (quotation marks omitted); *id.*; *id.*, Ex. 3 (Feb. 19 Letter); *see* Hearing Tr., Ex. 2 (Jan. 14 Letter) (identifying a surgeon by name).

4

may "depend[] upon a non-party surgeon's availability," Def. Resp. at 13. Defendants cannot pass the buck—especially where Plaintiff offered a surgeon "willing[] to work with the Bureau of Prisons or its contractor to perform gender-affirming surgery for Ms. Iglesias and [able] to provide Ms. Iglesias with a surgery date this year" on February 8, 2022. ECF No. 186-3 at ¶ 14.[6]

## CONCLUSION

It is striking that Defendants agree Ms. Iglesias needs gender-affirming surgery, ECF No. 183; have continually told the Court such surgery can happen before Ms. Iglesias leaves their custody in December 2022, ECF No. 204 at 1; ECF No. 204-1 at ¶ 5; and never objected to this Court's order that Defendants develop a "timeline . . . to ensure both [BOP] and Iglesias are ready for surgery," ECF No. 177 at 2; *see* ECF No. 178 at 3 ("Defendants do not seek relief from any of these other requirements.")—but still spend 15 pages vociferously protesting any modification to the preliminary injunction that would hold them accountable to these commitments, *see* Def. Resp.

Ms. Iglesias has gone above and beyond to help Defendants move more quickly, correcting their misapprehensions about permanent hair removal and referral letters; locating a surgeon willing to perform her surgery and giving their name to Defendants; and spelling out in detail time-sensitive tasks that must occur as part of the surgery process. But she has been met only with foot-dragging and obstruction. Defendants ignored requirements in this Court's December PI Order designed to make sure Ms. Iglesias's medical care proceeded efficiently. Now—eighty days later, during which Defendants approved Ms. Iglesias's surgery but failed to contract with a surgeon, schedule surgery, assemble necessary letters, or begin hair removal—Ms. Iglesias moves the Court to modify the injunction to ensure she gets the gender-affirming surgery all parties agree she needs.

---

[6] Defendants cannot be allowed to "run away" and shift responsibility to a third-party "medical provider" to provide the care Ms. Iglesias needs. Hearing Tr. at 39-40 ("THE COURT: . . . I think that BOP's overall responsible for care, but they contract with individuals. So, it is BOP's responsibility to -- you can't just give it to the medical provider and then not worry about what they do? A. And run away, no.").

Dated: March 16, 2022    Respectfully submitted,

/s/ Frank Battaglia
**Joshua D. Blecher-Cohen**
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740, 335
jblechercohen@aclu-il.org

**Taylor Brown**
**James Esseks**
**Li Nowlin-Sohl**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7887
jesseks@aclu.org
tbrown@aclu.org
lnowlin-sohl@aclu.org

**Frank Battaglia**
**Shannon Lemajeur**
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
fbattaglia@winston.com
slemajeur@winston.com

**Angela M. Povolish**
FEIRICH MAGER GREEN RYAN
2001 West Main Street, P.O. Box 1570
Carbondale, IL 62903
(618) 529-3000
apovolish@fmgr.com

*Attorneys for Plaintiff Cristina Nichole Iglesias*

## CERTIFICATE OF SERVICE

I certify that on March 16, 2022, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.


Dated: March 16, 2022                    /s/ Frank Battaglia
                                         Frank Battaglia