UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a. CRISTIAN NOEL IGLESIAS),<br><br>　Plaintiff,<br><br>　　v.<br><br>IAN CONNORS, *et al.*,<br><br>　Defendants. | Case No. 19-cv-00415-NJR |

## DEFENDANTS' RESPONSE TO THE COURT'S ORDER OF MAY 10, 2022

Defendants respectfully submit this Response to the Court's Order of May 10, 2022 directing Defendants to address certain procurement issues and the Court's authority to enter an order requiring the Federal Bureau of Prisons ("BOP") to retain the Chicago-based surgeon who has indicated he is available to perform a vaginoplasty for Ms. Iglesias prior to the date of her release from custody. Doc. 260 at 1-2.

Previously, this Court entered a preliminary injunction requiring Defendants, *inter alia*, to "fil[e] a notice with the Court as to whether using the Chicago-based surgeon identified by Plaintiff's counsel would present any procurement or contracting . . . issues." Doc. 239 ¶ 5. In response (and consistent with the Court's modified preliminary injunction, *see* Doc. 252 ¶ 6), Defendants filed a notice explaining that the parties are currently exploring a potential settlement in which the parties would seek entry of an order requiring BOP to, among other things, retain the Chicago-based surgeon to perform vaginoplasty on Ms. Iglesias. *See* Doc. 256 at 2. Such an order "could limit the full and open competition requirements normally required" by the Federal Acquisition Regulation ("FAR"), 48 C.F.R. Part 6, and thus allow BOP to "directly contract for the services of the Chicago-based surgeon." Second Robinson Decl., Doc. 256-2, ¶ 5.

Following that notice, the Court entered the May 10 Order. *See* Doc. 260. Specifically, the Court stated that it "reviewed 48 C.F.R. § 6.302," which provides for exceptions to the open-competition requirement, "but it is unclear as to which, if any, of the circumstances apply." *Id.* at 1-2. Accordingly, the Court ordered Defendants "to provide legal authority allowing the Court to enter an order requiring the BOP to retain the Chicago-based surgeon to perform vaginoplasty on Iglesias," and to "provide the Court this information on or before June 1, 2022." *Id.* at 2.

Defendants hereby submit this Response to the Court's Order of May 10, 2022, as well as the attached Third Declaration of William Robinson. *See* Third Robinson Decl. (attached hereto). As explained further below, the type of order contemplated by the parties' settlement of Ms. Iglesias's constitutional claims against BOP—*i.e.*, requiring BOP to retain the Chicago-based surgeon to perform vaginoplasty on Ms. Iglesias—is permissible here given the unique facts and circumstances of this case, based on the Department of Justice's plenary authority to settle litigation on appropriate terms, the Court's broad authority to enter an order reflecting that settlement, and the exception in 48 C.F.R. § 6.302-1 allowing for procurements outside of full and open competition when there is only one available source.[1]

The Department of Justice has plenary authority to settle litigation involving the United States and its agencies. *See* 28 U.S.C. §§ 516, 519 (granting the Attorney General the authority to conduct and supervise all litigation against the United States and its agencies); *see also The Att'y Gen.'s Role As Chief Litigator for the United States*, 6 U.S. Op. Off. Legal Counsel 47, 59 (1982) ("Included within this

---

[1] Although this filing is not due until June 1, 2022, Defendants are submitting this filing early, with the hope that the Court's questions will be fully addressed by this filing, and the Court will then be in a position to promptly enter the parties' proposed settlement order upon filing. Defendants respectfully submit that prompt entry of the parties' anticipated settlement order would serve all parties' interests for several reasons, including because, consistent with the anticipated settlement order, Ms. Iglesias has appointments scheduled for soon after the current settlement filing deadline of May 27, 2022, including an appointment scheduled for May 31, 2022.

2

broad grant of plenary power over government litigation is the power to compromise and settle litigation over which the Attorney General exercises supervisory authority."); *Power of the Att'y Gen. in Matters of Compromise*, 38 U.S. Op. Atty. Gen. 124, 126 (1934) ("This power is plenary and carries with it the authority to make it effective, including authority to . . . compromise any case on such terms as he sees fit[.]"); *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458-59 (1868); *United States v. Hercules, Inc.*, 961 F.2d 796, 798–99 (8th Cir. 1992). The Department thus has authority to settle the present case brought by Ms. Iglesias asserting constitutional claims and seeking gender confirmation surgery.

Moreover, once the Department enters into that settlement, this Court has authority, on the parties' request, to codify certain aspects of the settlement in an enforceable court order. *See Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion*, 23 U.S. Op. Off. Legal Counsel 126, 149 (1999) (discussing "the longstanding rule that 'parties to a suit have the right to agree to any thing they please in reference to the subject-matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings'" (quoting *Pacific R.R. v. Ketchum*, 101 U.S. 289, 297 (1879), modifications omitted)); *see also, e.g.*, *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522-23 (1986) (noting that "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all," and that "the choice of an enforcement scheme—whether to rely on contractual remedies or to have an agreement entered as a consent decree—is itself made voluntarily by the parties"). Federal courts' authority to enter orders, on the parties' request, codifying a voluntary settlement (or aspects of that settlement) is consistent with "an[] important federal policy: the encouragement of voluntary settlement of claims." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 572 (7th Cir. 1995); *see also, e.g.*, *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980) (discussing "the clear policy in favor of encouraging settlements . . . particularly in the area where voluntary compliance by the parties over an extended period will

contribute significantly toward ultimate achievement of statutory goals"); *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) ("Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation. Thus, voluntary settlement of civil controversies is in high judicial favor."). In the specific circumstances of this case, therefore, the "legal authority allowing the Court to enter an order requiring the BOP to retain the Chicago-based surgeon to perform vaginoplasty on Iglesias," Doc. 260 at 2, stems from the Department of Justice's broad statutory authority to settle cases on appropriate terms, and this Court's authority to codify specific aspects of that settlement in an enforceable court order upon the parties' request.[2]

The parties have now reached a settlement in which BOP has agreed to procure the services of the identified Chicago-based surgeon. In light of that settlement, and based on the unique facts and circumstances of this case, procuring the services of the Chicago-based surgeon is consistent with the exception set forth in 44 U.S.C. § 3304(a)(1) and 48 C.F.R. § 6.302-1, allowing the agency to procure needed services when they are available from only one source. Specifically, the contemplated settlement order here would specify that BOP retain the identified Chicago-based surgeon. By definition, then, the "services required by the agency [would be] available from only one responsible

---

[2] The Prison Litigation Reform Act (PLRA) independently imposes certain constraints on the relief a court may order, even pursuant to a settlement. *See* 18 U.S.C. § 3626(a), (c). But the PLRA's requirements—*i.e.*, that the prospective relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right," *id.* § 3626(a)(1)(A)—are satisfied by the terms of the anticipated settlement based on the specific circumstances of this case. In particular, consistent with the Department of Justice's determination, the relief contemplated by the settlement here would be the least intrusive means of providing Ms. Iglesias with a vaginoplasty, because the settlement avoids, rather than imposes, potentially burdensome and time-consuming procurement procedures and allows BOP to retain immediately a surgeon whom all parties agree is an appropriate choice to treat Ms. Iglesias. Thus, the PLRA does not foreclose relying on the Department of Justice's settlement authority with respect to the contemplated settlement order here.

source"—*i.e.*, the Chicago-based surgeon—pursuant to 48 C.F.R. § 6.302-1. *See* Third Robinson Decl. ¶¶ 6-8.

Additionally, there is a limited timeframe in which the surgery could occur while Ms. Iglesias remains in custody, *i.e.*, prior to her release in December 2022. Proceeding with full and open competition would likely take several months, *see* Second Robinson Decl. ¶ 6, thereby making it more difficult to complete the surgery prior to her release. The Chicago-based surgeon has availability in his schedule to perform the surgery on the requisite timeline, and both parties agree that he is qualified to perform the surgery. Moreover, it would be difficult and burdensome to attempt to solicit bids from, and arrange possible treatment with, multiple potential surgeons simultaneously—and doing so could frustrate BOP's efforts to timely proceed with "all significant steps that BOP and NaphCare must undertake to provide Plaintiff with vaginoplasty with enough time for her to recover before her release on December 25, 2022." Modified Prelim Inj., Doc. 252, ¶ 1; *see also* Apr. 18 Prelim. Inj., Doc. 239, ¶ 1 (original version of timeline requirement); Doc. 256-1 (filed timeline). In short, there are other practical reasons why full and open competition is inconsistent with the needs of this particular case, and why the settlement's approach of contracting with the Chicago-based surgeon is necessary "to provide Plaintiff with vaginoplasty with enough time for her to recover before her release on December 25, 2022," consistent with Defendants' submitted timeline. *Cf.* Third Robinson Decl. ¶ 9; *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1087 (Fed. Cir. 2001) ("The USPS rationally recognized, based on its previous experience, that a competitive bidding process would take much longer to perform than negotiating a sole-source award and would require the USPS to expend a great amount of resources to design appropriate potential networks with each viable competitor.").[3]

---

[3] BOP believes that this "one responsible source" authority in § 6.302-1 provides the most appropriate legal basis for procuring the services from the Chicago-based surgeon contemplated by

Finally, even if the settlement did not fall within the exception set forth in 44 U.S.C. § 3304(a)(1) and 48 C.F.R. § 6.302-1, it would still be permissible. The Department of Justice's longstanding position is that "the Attorney General—in the exercise of his settlement responsibilities—is not bound by each and every statutory limitation and procedural requirement that Congress may have specifically imposed upon some other agency head in the administration of that agency's programs." *Settlement Auth. of the United States in Oil Shale Cases*, 4B U.S. Op. Off. Legal Counsel 756, 758 (1980); *see also, e.g.*, *Compromise of Claims Under Sections 3469 & 3229 of the Revised Statutes*, 38 U.S. Op. Atty. Gen. 98, 99 (1934) (explaining that Attorney General has authority to compromise claims even if the agency charged with administering the law could not); 23 U.S. Op. Off. Legal Counsel at 135-39. "In general, then, limits on the Attorney General's presumptively broad settlement power must take the form of clear statutory directives in order to be effective." 23 U.S. Op. Off. Legal Counsel at 137; *see also Hercules*, 961 F.2d at 798 ("[T]he statutory authority of the Attorney General to control litigation is not diminished without a clear and unambiguous directive from Congress.").

Here, there is no "clear and unambiguous directive from Congress" precluding a settlement of Ms. Iglesias's constitutional claims unless on terms consistent with BOP's underlying procurement authorities. *Cf. Hercules*, 961 F.2d at 799-800. To be sure, "the Attorney General ordinarily may not settle litigation on terms that would transgress valid, otherwise applicable, statutory restrictions on agency conduct." 23 U.S. Op. Off. Legal Counsel at 163 (citing *Executive Bus. Media, Inc. v. Dep't of*

---

the potential settlement agreement. Typically it is not necessary to rely on this authority when obtaining medical care for individuals housed in Residential Reentry Centers (RRCs) because that medical care is obtained via a contract with NaphCare, in which NaphCare identifies the appropriate medical provider. *See* First Robinson Decl. ¶ 17. But in the unique circumstances here, in which a specific provider is being named in a settlement agreement and was not originally identified by NaphCare, BOP believes the procurement rationale set forth in this filing is most appropriate. *See* Third Robinson Decl. ¶¶ 9-10.

*Defense*, 3 F.3d 759, 762 (4th Cir. 1993)). Here, however, the choice of the Chicago surgeon would likely be a remedy "available to [the] court upon a finding of [a constitutional violation]" that might be "necessary to make plaintiff[] whole." *Proposed Settlement of Diamond v. Dep't of Health & Human Servs.*, 22 Op. O.L.C. 257, 268 (1998). Thus, the Department of Justice may lawfully enter into a settlement requiring BOP to retain the Chicago-based surgeon for purposes of resolving Ms. Iglesias's constitutional claims, regardless of any procurement constraints that might apply if BOP were acting on its own.

In sum, this case arises in an unusual factual and legal posture, but in these particular circumstances, the Court has legal authority to enter an order requiring BOP to retain the Chicago-based surgeon to perform vaginoplasty on Ms. Iglesias based on the Department of Justice's settlement authority, this Court's authority to codify certain aspect of the parties' settlement in an enforceable court order, and the exception set forth in 48 C.F.R. § 6.302-1, allowing BOP to retain services when there is only one available source that meets the agency's needs.

Dated:  May 27, 2022

STEVEN D. WEINHOEFT
United States Attorney

LAURA J. JONES
Assistant United States Attorney

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ John Robinson
JOSHUA M. KOLSKY
JOHN ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  202-616-8489
E-mail: john.j.robinson@usdoj.gov