IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS), | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 19-cv-00415-NJR ) |
| IAN CONNORS, ET AL., | ) ) ) |
| Defendants. | ) |

**THIRD DECLARATION OF WILLIAM ROBINSON**

I, William Robinson, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as Associate General Counsel in the BOP's Commercial Law Branch. I have held my current position since June, 2017. I have been employed by the BOP since January 2001. As an Associate General Counsel, I am generally responsible for procurement issues and budget concerns.

2. I am aware the Court issued a sealed order (Doc. 260) requiring BOP to "provide legal authority allowing the Court to enter an order requiring the BOP to retain the Chicago-based surgeon to perform vaginoplasty on Iglesias."

3. I write now in response to this portion of the sealed order (Doc. 260).

4. I am aware that settlement negotiations between BOP's counsel and Plaintiff's counsel are ongoing and that a potential settlement could include terms seeking entry of an order requiring BOP to, among other actions, retain the Chicago-based surgeon to perform vaginoplasty on Plaintiff before her projected release from BOP custody.

1

5. As noted in an earlier declaration, generally the first phase of the BOP's acquisition process consists of need recognition and acquisition planning. First Robinson Decl., Doc. 210-1, ¶ 6. When a need is identified, the BOP may acquire goods or services to fulfill that need in compliance with applicable statute, regulation, and policy. *See id.* ¶ 10. Notably, BOP generally must use competitive procedures to maximize full and open competition in its acquisition process. 41 U.S.C. § 3301(a).

6. I am aware that the facts and circumstances in this case include negotiation of a potential settlement agreement that could include the agency acquiring services of a surgeon identified by the plaintiff. If such a settlement were to be executed, then the settlement would create an agency need for an acquisition distinct from the BOP's routine medical services needs. Further, the agency's need arising out of the settlement would be defined by the terms of the settlement. If the terms of the settlement require the agency to procure the services of a named medical provider, and the agency could not comply with the settlement by procuring the services through a different provider identified using full and open competition procedures, then the provider named in the settlement would be the only available source for the agency to meet its defined need.

7. Applicable statutes and regulations governing the federal acquisition process allow for the use of noncompetitive procedures in circumstances including but not limited to when "the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency…." 41 U.S.C. § 3304(a)(1), *see also* 48 C.F.R. § 6.302-1.

8. I expect that a valid settlement agreement that identifies an individual surgeon from whom BOP must acquire medical services to comply with the terms of the settlement would provide adequate justification to allow BOP to procure the services of the named surgeon using noncompetitive procedures.

9. The settlement agreement's terms are the clearest basis for invoking the exception in 48 C.F.R. § 6.302-1. But in addition to the settlement, there may be other facts and circumstances specific to this case that could further support invoking the exception, such as the limited timeframe in which the surgery could occur prior to Plaintiff's projected BOP release date; the importance of Plaintiff's relationship with this particular surgeon; and/or the difficulty and burden of attempting to solicit bids from, and arrange possible treatment with, multiple potential surgeons simultaneously.

10. In an earlier declaration, I stated that medical care for inmates housed in Residential Reentry Centers (RRCs) could be obtained via a contract with NaphCare, which does not require soliciting bids from multiple providers. *See* First Robinson Decl. ¶ 17. That description of the procurement process remains accurate for typical circumstances, in which NaphCare identifies the appropriate medical provider. *See id.* However, in the unique circumstances here, where BOP is contemplating a potential settlement involving a provider originally identified by Plaintiff's counsel (rather than identified by NaphCare), BOP believes the "single responsible source" authority in 48 C.F.R. § 6.302-1 is the most appropriate legal basis for procuring the identified surgeon's services, assuming the contemplated settlement agreement is executed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief. Executed on this 27th day of May 2022.

_____
William Robinson

3