**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

CRISTINA NICHOLE IGLESIAS
(a.k.a. CRISTIAN NOEL IGLESIAS),

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

    Defendants.

Case No. 19-cv-00415-NJR

**[Joint Proposed] Stipulated Order**

**ROSENSTENGEL, Chief Judge:**

Upon review of the joint motion for a stipulated order and to modify this Court's prior preliminary injunction entered on April 26, 2022 (Doc. 252), the Court hereby **GRANTS** that motion and **ORDERS** Defendants as follows:

1. **Laser hair removal.** Defendants shall continue scheduling regular appointments for Plaintiff for laser hair removal at the surgical site with the provider in Miami who began laser hair removal on April 26, 2022, subject to the continued agreement, availability, and judgment of that dermatologist. These appointments shall continue as long as and at a frequency necessary to obtain sufficient hair removal, in the judgment of the treating surgeon, for a vaginoplasty procedure. If the provider in Miami who began laser hair removal on April 26, 2022, becomes unable or unwilling to continue to provide laser hair removal at the frequency necessary to obtain sufficient hair removal in the judgment of the treating surgeon, Defendants shall schedule appointments with another provider who is qualified to perform laser hair removal or electrolysis in preparation for vaginoplasty. Defendants shall also continue scheduling appointments for Plaintiff for laser facial hair removal with the provider in Miami who began laser hair removal on April 26, 2022, subject to their continued agreement and availability, and such appointments shall continue so long as and at a frequency necessary in the judgment of the dermatologist. Defendants shall try to schedule the laser hair removal appointments monthly, consistent with the timeline laid out at ECF No. 256-1. In the event the dermatologist believes further appointments are no longer necessary for facial hair removal, Defendants shall meet and confer with Plaintiff's counsel on the issue before taking further action. In no event shall Defendants be required to schedule laser hair removal appointments after Plaintiff's release from BOP custody.

2. **Electrolysis**.  If the treating surgeon identified in paragraph 4 or 5 below advises BOP that electrolysis is medically necessary to supplement the laser hair removal, Defendants shall schedule electrolysis appointments as recommended by the treating surgeon, subject to the availability of a provider to provide electrolysis.  These appointments shall continue as long as and at a frequency necessary to obtain sufficient hair removal, in the judgment of the treating surgeon, for a vaginoplasty procedure. In no event shall Defendants be required to schedule electrolysis appointments after Plaintiff's release from BOP custody.

3. **Facial feminization and breast augmentation.**[1]  Defendants shall schedule appointments as soon as practicable[2] for facial feminization surgeries and breast augmentation with Surgeon 1.[3]  Defendants shall advise the surgeon performing the vaginoplasty, once one is retained, *see infra* para. 4-5, of any existing appointments for facial feminization and breast augmentation.

4. **Vaginoplasty—Surgeon 2.**  If Surgeon 2 is willing and able to perform a vaginoplasty on Plaintiff, Defendants shall schedule an in-person consultation for vaginoplasty and a surgery appointment for vaginoplasty as soon as practicable that will allow sufficient time for Plaintiff to undergo the necessary hair-removal treatments and recover from the facial feminization and breast augmentation surgeries before the vaginoplasty surgery.  The target timeline is for vaginoplasty to occur in October 2022 and no later than November 15, 2022, as laid out in ECF No. 256-1. If the appointment does not take place until after Plaintiff's release date, the provisions of paragraph 8 below regarding payment shall apply.

5. **Vaginoplasty—Other surgeons.**  In the event that Surgeon 2 is unwilling or unable to perform vaginoplasty, Defendants shall attempt to schedule a consultation for a vaginoplasty appointment with either: (a) the surgeon(s), if any, serving as a backup for Surgeon 2, or (b) one of the following surgeons:  (i) Surgeon 3, (ii) Surgeon 4, (iii) Surgeon 5, (iv) Surgeon 6, (v) Surgeon 7, (vi) Surgeon 8, or (vii) a surgeon recommended by Surgeon 2.  Defendants represent that Surgeons 3, 4, 5, and 6 have indicated that they perform vaginoplasties, are willing to work with the Bureau of Prisons, and currently have openings on their schedules that would likely allow for Plaintiff's vaginoplasty to be performed prior to her scheduled release date from BOP custody. After selection of the surgeon, Defendants shall schedule an appointment as soon as practicable for vaginoplasty that will provide sufficient time for Plaintiff to undergo necessary hair removal treatments and recover from her facial feminization and breast augmentation surgeries.

---

[1] "Facial feminization and breast augmentation" refer to the procedures referenced on page 5 of the medical record provided by Surgeon 1, *see* ECF No. 249-1.

[2] The term "as soon as practicable" in this injunction means as soon as reasonably possible and in accordance with the timeline in ECF No. 256-1, to the greatest extent possible, taking into account the provider's schedule and recommendations and time for BOP to make arrangements for payment and other logistics.

[3] Surgeon names are identified in the Court's Sealed Supplement to Stipulated Order, to be filed separately under seal.

6. **Medical contraindications.**  If one of the designated surgeons providing care to Plaintiff advises that there are contraindications such that, consistent with the WPATH Standards of Care, there are no reasonable circumstances for undertaking the respective surgery described herein, a second opinion shall be sought from a surgeon listed above in paragraph 5. If the second surgeon also advises that there are contraindications such that there are no reasonable circumstances for undertaking the respective surgery, BOP shall be relieved of any obligation to provide or pay for such procedure.  If a surgeon providing care to Plaintiff advises that there are medical contraindications such that Plaintiff is at higher risk of complications but that these risks may be outweighed by other considerations, BOP will proceed only if Plaintiff requests to proceed, the medical provider agrees to do so, and Plaintiff provides appropriate informed consent and waives any related liability against Defendants. Plaintiff and Defendants agree that they are not currently aware of any contraindications that would make it the case that there are no reasonable circumstances for undertaking any of the surgeries identified in paragraphs 3, 4, and 5.

7. **Payment for surgeries and associated costs.**  BOP shall pay for the cost of (i) the surgeries identified in paragraphs 3, 4, 5; (ii) associated pre- and post-surgical care and recovery;[4] and (iii) any related medical care needed as a result of surgery (including treatment for post-surgical complications or medically necessary revisions of those surgeries), assuming such surgeries or care occur while Plaintiff is in BOP custody, *i.e.* before Plaintiff's release date, currently scheduled for December 25, 2022.[5] Defendants shall also pay to an escrow account with a national banking institution or a trust account an amount agreed to by the Parties to cover any medical care and expenses that may arise as a result of complications or necessary revisions to the surgeries identified in paragraphs 3, 4, 5, and any resulting income taxes, as further set forth in more detail in Paragraph 1.c of the Parties' settlement agreement.

   If Plaintiff requires transfer to another geographic location for these surgeries (or preparation for or recovery from these surgeries) while still in BOP custody, BOP shall provide for transportation, lodging, food, and appropriate pre- and post-surgical care as needed, for Plaintiff during the period of relocation, which shall include whatever period of time the treating surgeon recommends for recovery, so long as it is completed prior to Plaintiff's release from BOP custody. As part of recovery from vaginoplasty surgery, BOP will provide Plaintiff with a safe and sanitary location for post-surgical dilation for as long as she remains in BOP custody.

8. **Payment in the event that surgery, revisions, and/or recoveries cannot be completed prior to Plaintiff's release date.**  If any of (i) the surgeries identified in paragraphs 3, 4, or 5; (ii) associated pre- and post-surgical care and recovery; or (iii)

---

[4] Foreseeable costs include, but are not limited to, pre- and post-surgery medical supplies (*e.g.* dilators and bowel preparation materials); a stay in a local skilled nursing facility after post-surgery hospital discharge, of a duration to be determined by the treating surgeon; and any other appropriate post-surgical care reasonably required to assist with recovery and day-to-day activities while Plaintiff is incapacitated after surgery, of a duration to be determined by the treating surgeon.

[5] A non-exhaustive list of possible post-surgical complications or needs for revision, as considered in paragraphs 7 and 8 above, is included in the Parties' settlement agreement.

any related medical care needed as a result of surgery (including treatment for post-surgical complications or medically necessary revisions of those surgeries), cannot be completed by Plaintiff's release from BOP custody, which is currently projected to be December 25, 2022, Defendants shall pay to an escrow account with a national banking institution or a trust account an amount the Parties agree will cover the costs, as further set forth in more detail in Paragraphs 1.b and 1.c of the Parties' settlement agreement, of: any outstanding surgeries, any associated pre- and post-surgical care and recovery, and any related medical care needed as a result of surgery; any necessary transportation, lodging, food, medical supplies, and home healthcare and/or reasonably required personal assistance costs associated with the surgeries, pre- and post-surgery care and recovery, and related medical care; and any resulting income taxes. These costs shall include costs generated by compliance with any constraints or requirements for transportation, lodging, food, medical supplies, and home healthcare and/or personal assistance that the treating surgeon recommends.

Should the Parties be unable to reach an agreement on the amount, they shall promptly submit a joint filing to the Court discussing their respective positions on the issue and the Court shall determine the appropriate amount. Payment of the agreed-to or Court-ordered amount pursuant to the settlement agreement shall constitute Defendants' fulfillment of its obligations with respect to these procedures. As set forth above in paragraph 6, Defendants shall be under no obligation to pay for a procedure for which the agreed-upon surgeon designated to provide the procedure determines that there are contraindications such that there are no reasonable circumstances for undertaking the procedure.

9. **Reporting requirement.** The Parties shall file a joint status report updating the Court on significant developments related to the surgeries described above on Friday, June 10, 2022, and every four weeks thereafter, until the Parties believe that such joint status reports are no longer necessary, but in no case extending past Plaintiff's release from BOP custody. When the Parties have determined that such joint status reports are no longer necessary, they may jointly move to modify this Order to be relieved of this reporting obligation (to the extent this case is not otherwise dismissed at that point).

10. **Special Master.** Former U.S. District Judge G. Patrick Murphy will be appointed as Special Master for the purpose of administering the escrow or trust account referenced in paragraphs 7 & 8 above. *See* Fed. R. Civ. P. 53. Within 21 days from today, the parties shall confer with former Judge Murphy to discuss the terms of his appointment as Special Master and to prepare a proposed order reflecting the agreed-upon terms for the Court's signature. If the parties cannot agree on such terms, they shall each submit a proposed order and memorandum of law. Such proposed order or orders and memoranda shall be submitted to the Court within 42 days from today.

11. **Stay.** This case is stayed in all respects through January 3, 2023, except that the Parties shall file the proposed order(s) pursuant to paragraph 10 and shall continue to file the joint status reports pursuant to paragraph 9 and may seek the Court's involvement in determining a payment amount pursuant to paragraph 8 without moving to lift the stay. The parties shall work together to ensure the timely provision of medical care in accordance with paragraphs 1-5 and to address any issues that might arise.

4

5

**IT IS SO ORDERED.**

**DATED:**  May _____, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**