**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Settlement Agreement") is entered into between Plaintiff Cristina Nichole Iglesias (also known as Christian Noel Iglesias) and Defendants Federal Bureau of Prisons ("BOP"), Michael Carvajal, Chris Bina, Ian Connors, Dan Sproul, Jeffery Allen, Alix McLearen, Thomas Scarantino, and Donald Lewis to resolve all of the claims in *Iglesias v. Federal Bureau of Prisons et al.*, No. 19-415 (S.D. Ill.) (the "Case") without the need for further litigation and without any admission of liability. Plaintiff and Defendants are referred to herein as the "Parties."

The Parties do hereby settle all claims, issues, complaints, and actions described in the Case, and any and all other claims, issues, complaints, or actions that have been or could have been asserted by Plaintiff against Defendants in accordance with the following terms and conditions:

1.   **Consideration by Defendants:**   In consideration for Plaintiff's agreement to dismiss her claims with prejudice as set forth herein, Defendants agree as follows:

a. Within two business days after execution of this Settlement Agreement, Defendants will file a Joint Motion for Entry of Stipulated Order ("Joint Motion") in the form attached hereto as Exhibit A. The Joint Motion will seek entry of a Stipulated Order ("Stipulated Order") in the form attached hereto as Exhibit B. Defendants agree not to appeal the Stipulated Order except that Defendants reserve their right to appeal insofar as the Court modifies the Stipulated Order to revise the proposed terms, include additional terms, or remove terms.

b. If, by November 15, 2022, it appears that any of the surgeries identified in paragraphs 3, 4, and 5 of the Stipulated Order will not be performed prior to Plaintiff's release from BOP custody[1] or that the Recovery Period[2] for any such surgery will extend past Plaintiff's release from BOP custody, the Parties shall meet and confer to attempt to reach an agreement on the amount (the "Amount") of the payment that will be due under paragraph 8 of the Stipulated

---

[1] Plaintiff's release from BOP custody is currently scheduled to be December 25, 2022.
[2] The Recovery Period shall be the standard recovery period before Ms. Iglesias can fully return to work, as estimated by the treating surgeon, which can often be 8 to 10 weeks for vaginoplasty.

Order.  That Amount must be sufficient to cover the actual, out-of-pocket costs of any surgeries identified in paragraphs 3, 4, and 5 of the Stipulated Order that will be performed after Plaintiff's release from BOP custody; the actual, out-of-pocket costs of medical care associated with the surgeries for any Recovery Period that extends past Plaintiff's release from BOP custody, including but not limited to necessary and reasonable transportation, lodging, food, and medical supply costs[3] associated with the surgeries and pre- and post-surgery care and recovery, as well as costs associated with any stay in a local skilled nursing facility and any home healthcare and/or personal assistance reasonably required while Plaintiff is incapacitated due to surgery, and any expected federal income taxes on the Amount.  If the Parties cannot reach an agreement on the Amount, the Parties will have seven days to submit a joint filing to the Court discussing their respective positions on the issue.  Within 10 days of the Amount being determined by either the Parties or the Court, BOP shall initiate the process to deposit the Amount into an escrow account with a national banking institution or trust account ("Escrow/Trust Account").

c. An amount in the sum of five hundred and two thousand dollars ($502,000) will also be deposited into the Escrow/Trust Account, of which no more than three hundred and fifty thousand dollars ($350,000) will be available to cover any unexpected medical or associated out-of-pocket costs associated with the surgeries and/or permanent hair removal, including costs related to any additional medical care needed as a result of surgery (including treatment for post-surgical complications or medically necessary revisions),[4] and costs related to administration of the account. The remaining one hundred and fifty-two thousand dollars ($152,000) will be available to cover the estimated or actual tax burden incurred by Ms. Iglesias as a result of any

---

[3] Transportation costs shall not exceed cost of round-trip coach airfare and reasonable ground transportation.  Lodging and food costs shall not exceed U.S. General Services Administration per diem rates, unless a stay at a specialized facility is needed.

[4] Such post-surgery complications or needs for revision can include, but are not limited to: rectovaginal or urethral fistulae; colostomy and subsequent revision; infection; inflammation; local wound care; labiaplasty and/or scar revision; blood clots; bleeding; deep vein thrombosis; issues related to tissue necrosis; issues related to skin sensation or chronic pain; delayed healing; seroma; injury to the rectum, urethra, ureter, bladder, intestine, or other adjacent or deeper structures; vaginal or urethral stenosis; allergic reactions; or issues at the tissue donor site.

disbursements pursuant to this paragraph. The amount deposited pursuant to this paragraph will be in addition to the Amount provided for in Paragraph 1.b and will be deposited into the Escrow/Trust Account at the same time as the Paragraph 1.b Amount, or, if Paragraph 1.b is not triggered, will be deposited into the Escrow/Trust Account at least five days prior to Plaintiff's release from BOP custody.

d.The Escrow/Trust Account will be available to cover costs and expenses as outlined in Paragraphs 1.b. and 1.c for thirteen months from the date of Plaintiff's vaginoplasty surgery, after which any remaining funds will revert to the United States. The account will be administered by former U.S. District Judge G. Patrick Murphy ("Special Master"), and the Special Master will have the authority to approve expenditures, in accordance with Paragraphs 1.b and 1.c from the account. If either party disputes the approval or denial of an expenditure, the parties will have seven days to submit a written statement outlining their respective position to the Special Master. The Special Master's decision thereafter shall be final. Should Judge Murphy no longer be willing or able to serve as Special Master, or should the parties mutually agree that a change in Special Masters is warranted, the parties will work together to agree on a replacement Special Master.

e.Once paid, the amounts described in paragraphs 1.b and 1.c shall not be increased, regardless of any unforeseen or changed circumstances.  Defendants' payment in accordance with Paragraphs 1.b and 1.c shall constitute full and complete satisfaction of Defendants' responsibilities regarding the surgeries described in the Stipulated Order and Defendants shall have no further responsibilities concerning those surgeries or any other medical care, transportation, lodging, or food costs regarding Plaintiff.

f. BOP agrees to pay Plaintiff's counsel the total sum of nine hundred and eighty-three thousand and five hundred fifty-two dollars ($983,552), which is inclusive of any and all attorney's fees and costs, including any and all expert witness fees and any other expenses in this Case.  Payment of the sum in this subparagraph will be made by electronic funds transfer after this

Settlement Agreement is executed by all the signatories and after receipt of necessary information from Plaintiff's Counsel in order to effectuate the payment.

The items set forth in subparagraphs (a) through (f) above constitute all relief to be provided through this Settlement Agreement, including all damages or other monetary relief, equitable relief, declaratory relief, or relief of any form, including but not limited to, attorneys' fees and costs.

2.      **Dismissal with Prejudice.**  Within fourteen days after Defendants make payment pursuant to Paragraph 1.b of this Settlement Agreement, or, if Paragraph 1.b is not triggered, within fourteen days after Defendants make payment pursuant to Paragraph 1.c, Plaintiff shall file with the Court a Stipulation of Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) in the form of Exhibit C.

3.      **Release.** In consideration of the promises of Defendants set forth in this Settlement Agreement, Plaintiff hereby releases, waives, acquits, and forever discharges Defendants from, and is hereby forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any monetary, declaratory, and/or injunctive relief (whether in administrative or judicial proceedings) that have been or could have been asserted in this Case with respect to, in connection with, or which arise out of, the allegations in this Case.

4.      **Return of Refunded Taxes.**  The Parties recognize that there is uncertainty over whether, and to what extent, the amounts provided for in Paragraphs 1.b and 1.c above and authorized to be paid by the Special Master constitute taxable income.  If taxes on those amounts are ultimately paid from the Escrow/Trust Account and any portion of those taxes are later refunded to Plaintiff, Plaintiff shall notify Defendants within 30 days of receiving any such refund. Plaintiff shall repay the portion of the refunded amount attributable to the payments authorized by this Agreement to the United States within 30 days of receiving instructions from Defendants describing how such repayment shall be made.

5.      **The Special Master.**  The duties and authority of the Special Master shall be defined in a proposed order or orders to be submitted to the Court in accordance with paragraph

10 of the Stipulated Order.  The proposed order(s) shall limit the authority of the Special Master to determining whether payments requested to be made from the Escrow/Trust Account are appropriate under this Settlement Agreement.

6.     **No Admission of Liability.**  This Settlement Agreement is not and shall not be construed as an admission by Defendants of the truth of any allegation or the validity of any argument or claim asserted in the Case, or of Defendants' liability therein.  Furthermore, the Parties shall not offer into evidence the terms of the Settlement Agreement in any civil, criminal or administrative action or proceeding other than proceedings that may be necessary to consummate or enforce this Settlement Agreement.  The terms of this Settlement Agreement shall not be construed as an admission by Defendants that the consideration to be given hereunder represents relief that could be recovered through litigation.  This agreement does not constitute, and shall not be construed as, an admission of liability or fault by any Party.

7.     **Acknowledgment.** Defendants acknowledge that BOP has never before provided a gender-affirming surgery for an individual in BOP custody. Defendants acknowledge that BOP has never before provided an individual in BOP custody with vaginoplasty, gender-affirming breast augmentation, facial feminization surgery, or permanent facial hair removal.

8.     **Entire Agreement**.  This Settlement Agreement contains the entire agreement between the Parties, and the Parties acknowledge and agree that no promise or representation not contained in this Settlement Agreement has been made to them, and they acknowledge and represent that this Settlement Agreement contains the entire understanding between the Parties, and contains all terms and conditions pertaining to the compromise and settlement of the disputes referenced herein.  No statement, remark, agreement, or understanding, oral or written, that is not contained herein shall be recognized or enforced, nor does this Settlement Agreement reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of the Case and to resolve the Case without the time and expense of further litigation.

9.     **Stipulated Order.**  The terms of this Settlement Agreement are not intended to be incorporated into the Stipulated Order and shall not be enforceable as part of the Stipulated Order.

The Parties agree that the Court lacks jurisdiction to oversee compliance with this Settlement Agreement.  This Settlement Agreement can be enforced through a separate action to enforce its terms. If the Court does not enter the Stipulated Order within 14 days from the date the Joint Motion is filed or substantively modifies the Stipulated Order to substantively revise the proposed terms, include additional terms, or remove terms, the Parties shall have 14 days to confer, and if the Parties cannot mutually agree in writing within those 14 days that the Settlement Agreement remains valid, then the Settlement Agreement will be null and void.

10.    **Amendments; Waivers.**  This Settlement Agreement cannot be modified or amended except by an instrument in writing, agreed to and signed by the Parties or their counsel, nor shall any provision hereof be waived other than by a written waiver, signed by the Parties or their counsel.  Express waiver of any one provision shall not be deemed a waiver of any other provision.

11.    **Binding Nature of Settlement Agreement.**  This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiff and the Defendants and their respective heirs, executors, successors, assigns, entities, and personal representatives, including any person, entity, department, or agency succeeding to the interests or obligations of any party hereto, or having an interest herein.

12.    **Execution.**  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.  Facsimiles and electronic versions of signatures shall constitute acceptable, binding signatures for purposes of this Settlement Agreement.

13.    **Rule of Construction**.  The Parties through their counsel have negotiated the terms of this Settlement Agreement.  Any rule of construction providing that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement.  This Settlement Agreement shall be construed as if drafted by both Parties.

14.    **Tax and Other Consequences.**  Compliance with all applicable federal, state, and local tax requirements shall be the sole responsibility of Plaintiff and her counsel.  Plaintiff and

Defendants agree that nothing in this Settlement Agreement waives or modifies federal, state, or local law pertaining to taxes, offsets, levies, and liens that may apply to this Settlement Agreement or any settlement proceeds, and that Plaintiff is executing this Settlement Agreement without reliance on any representation by Defendants as to the application of any such law.

15.     **No Assignment.**   Plaintiff represents and warrants that she is the sole and lawful owner of all right, title and interest in and to every claim and other matter which she purports to release herein, and that she has not heretofore assigned or transferred, or purported or attempted to assign or transfer to any person or entity any claims or other matters herein released.  Plaintiff shall indemnify Defendants, and any of their departments, components and current or former employees, whether in their official or individual capacities, against, and defend and hold harmless from, any claims arising out of or relating to any such assignment or transfer of any claims or other matters released herein.

16.     **Severability.**   The provisions of this Settlement Agreement shall be deemed severable, and any invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of the other provisions herein.

17.     **Authorization.**   The Parties hereby warrant, represent, and guarantee that the person(s) executing this Settlement Agreement on their behalves are fully authorized to execute, deliver and perform this Settlement Agreement.  The undersigned represent that they are fully authorized to execute this Settlement Agreement.

May 27, 2022

For Plaintiff:

**Joshua D. Blecher-Cohen**
Roger Baldwin Foundation of
ACLU, Inc.
150 N. Michigan, Suite 600
Chicago, IL 60601

(312) 201-9740, 335
jblechercohen@aclu-il.org

**James Esseks**
**Taylor Brown**
**L. Nowlin-Sohl**
American Civil Liberties Union
125 Broad Street
New York, NY 10004
(212) 519-7887
jesseks@aclu.org
tbrown@aclu.org
lnowlin-sohl@aclu.org

**Frank Battaglia**
**Shannon Lemajeur**
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
fbattaglia@winston.com
slemajeur@winston.com

**Angela M. Povolish**
Feirich Mager Green Ryan
2001 West Main Street
P.O. Box 1570
Carbondale, IL 62903
(618) 529-3000
apovolish@fmgr.com

*Attorneys for Plaintiff Cristina Nichole Iglesias*

For Defendants:

JOSHUA M. KOLSKY
JOHN ROBINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
Tel: 202-305-7664

8

E-mail: joshua.kolsky@usdoj.gov

*Attorneys for Defendants*