# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| CRISTINA NICOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS), | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19-cv-00415-NJR |
| IAN CONNORS, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF JENNA EPPLIN

I, Jenna Epplin, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as National Policy and Program Coordinator (Transgender Inmates) for the BOP's Women and Special Populations Branch of the Reentry Services Division. I have held my current position since August 2020. I have been employed by the BOP since June 2002. Additionally, I serve as a member of the BOP's Transgender Executive Council (TEC) and have done so since August 2020. As the National Policy Coordinator, I am responsible for monitoring and providing guidance on transgender issues. I manage bi-weekly Transgender Executive Counsel (TEC) multi-disciplinary team meetings and review all initial designations and re-designation requests of inmates self-identifying as transgender in the Bureau. I am involved in the development of accommodations, resource information, programs, and policy to ensure the needs of transgender inmates are met.

2. I previously provided declarations in this matter in connection with Defendants' weekly status reports. I provided my first declaration in this matter on March 4, 2022 (Doc. 212-1) and provided subsequent declarations in support of status reports on March 12, 2022 (Doc. 220-1), March

18, 2022 (Doc. 227-2), March 25, 2022 (Doc. 229-1), April 1, 2022 (Doc. 231-1), April 8, 2022 (Doc. 233-1), April 15, 2022 (Doc. 237-1), and April 22, 2022 (Doc. 249-2). I also provided a declaration on May 17, 2022 (Doc. 263-2) in support of the parties' joint motion to modify the Court's April 26, 2022 preliminary injunction. I am providing this declaration in response to the Court's April 18, 2022 Memorandum and Order (Doc. 238), and in support of Defendants' response to that order. Specifically, I address statements in my prior declarations regarding Ms. Iglesias's April 7, 2022 consultation with the surgeon identified in my declarations as "Surgeon 1."

3. Before I began providing declarations in this matter, I did not have knowledge of the day-to-day decisions regarding Ms. Iglesias's medical care. I became aware of Ms. Iglesias's request for gender-confirmation surgery around April 2021 in connection with a TEC meeting that month, but aside from my role on the TEC, I was not involved in in the details of coordinating Ms. Iglesias's care in connection with this matter. I was aware of the Court's December 27, 2021 preliminary injunction and attended the January 24, 2022 TEC meeting. Before I started providing declarations, the TEC members who provided declarations to my knowledge were two of my supervisors, Dr. Alix McLearen, the Acting Assistant Director of BOP for the Reentry Services Division, and Dr. Alison Leukefeld, Acting Deputy Assistant Director for the Reentry Services Division.

4. At some point in February 2022, I became aware that the Court had ordered BOP to show cause why sanctions should not be imposed in connection with BOP's response to the Court's December 27, 2021 preliminary injunction. I understand that Dr. McLearen and Dr. Leukefeld provided declarations in response to the Court's show-cause order and also attended a show-cause hearing on February 22, 2022 but I did not attend the hearing.

5. Shortly after the show-cause hearing, on February 28, 2022, Dr. McLearen advised me that the Court had ordered BOP to file weekly updates every Friday regarding BOP's progress in scheduling a consultation with a surgeon for gender-confirmation surgery for Ms. Iglesias and any

2

other items relating to Ms. Iglesias's care. Dr. McLearen explained that she had previously provided declarations in connection with BOP's updates to the Court and assigned me the task of providing the declarations going forward. I knew that Dr. McLearen, as the head of the entire Reentry Services Division, had significant administrative responsibilities. I also was not aware of any reason why Dr. McLearen needed to be the one providing weekly declarations. I understood the declarations would be based on information gathered from multiple BOP personnel who were directly involved with coordinating Ms. Iglesias's care. Given that my job responsibilities involve extensive gathering and compiling of information from multiple sources on transgender inmate issues, I found it acceptable for me to provide the declarations going forward so that Dr. McLearen could focus on her administrative responsibilities.

6. In preparation for providing the weekly declarations in this litigation, I reviewed a number of filings in this litigation to better familiarize myself with the factual and legal issues presented by the case. These materials included prior declarations from BOP witnesses, the Court's preliminary injunction decision, and the Court's February 10, 2022 show-cause order. I reviewed these materials and discussed recent developments in the case with agency counsel.

7. I submitted my first declaration in this case on March 4, 2022. *See* Doc. 212-1. In connection with preparing that declaration, I emailed and called others at BOP to gather the latest developments relating to Ms. Iglesias's care. Through these communications, I learned that on March 1, 2022, BOP was advised by its contractor that Surgeon 1 had scheduled an appointment for a consultation with Ms. Iglesias on April 7, 2022. I relayed this information in my declaration that was filed with the Court. *See* Doc. 212-1 ¶ 5.

8. I also learned through these communications that on March 3, 2022, in response to a question about hair removal, BOP was advised by its contractor that Ms. Iglesias "must be seen for evaluation before anything else is ordered." The contractor stated that once the surgeon has

3

determined that Ms. Iglesias "meets the clinical criteria and has accepted her then the rest can be entered." The contractor also stated that Surgeon 1 refers patients out to other providers for vaginoplasty and that the contractor would find out who those providers are. I also relayed this information in my declaration that was filed with the Court. *Id.* ¶ 6.

9. Before I learned on March 3 that Surgeon 1 refers patients to other providers regarding vaginoplasty, I did not know that Surgeon 1 does not perform vaginoplasties. Looking back through my emails in preparing this declaration, on February 14, 2022, I was forwarded an email thread from Dr. Alison Leukefeld asking if I could arrange for Ms. Iglesias's medical records to be provided to NaphCare. Further down on the email thread forwarded to me was an internal email that was not originally sent to me which contained a statement purportedly provided by Surgeon 1 that "We do not offer vaginoplasty yet." I did not read that portion of the email thread at the time because it was not directly relevant to the request for medical records, and I do not recall having any awareness that Surgeon 1 did not provide vaginoplasty until March 3. Once I learned the information, I included it in my declaration that was filed with the Court on March 4.

10. I continued to provide weekly declarations in connection with BOP's updates to the Court regarding BOP's progress in securing a surgeon and other issues related to Ms. Iglesias's care through April 22, 2022. For each of those declarations, I followed the same process of emailing and calling others at BOP to gather information that I then relayed in the declarations. For example, I provided a declaration on March 11, 2022, that included an update on BOP's efforts to secure a surgeon and identify a dermatologist who performs permanent hair removal at the surgical site. Doc. 220-1. On March 18, I provided a declaration that included an update that BOP was evaluating whether it might be feasible to have the surgery performed in Chicago should Surgeon 1 not agree to accept Ms. Iglesias as a patient. Doc. 227-2. I also provided an update on BOP's efforts to secure two letters of referral from qualified mental health providers. *Id.* I provided similar updates on March

25 (Doc. 229-1) and April 1 (Doc. 231). I did not include again in these declarations that Surgeon 1 refers patients to other providers for vaginoplasty because I had already included that information in my March 4 declaration, and there was no new information to report on that issue until Ms. Iglesias attended the consultation with Surgeon 1 on April 7.

11. For every declaration that I signed, I took my obligations seriously and reviewed the declaration carefully. I made efforts to obtain all relevant information and reported any information that I learned that seemed relevant to BOP's efforts to secure a surgeon and Ms. Iglesias's care. I worked closely with agency counsel to confirm that the contents of the declarations were accurate and that we were fulfilling our obligations to the Court.

12. I am aware that the Court has questioned BOP's decision to keep the appointment with Surgeon 1 even after it learned that Surgeon 1 refers patients to other providers for vaginoplasty. I was not involved in the decision to schedule the appointment with Surgeon 1 or to keep the appointment with Surgeon 1 after we learned that they refer patients to other providers for vaginoplasty. However, I discussed with others at BOP why they believed that it was appropriate to proceed with the consultation with Surgeon 1, and I summarized those reasons in my April 15, 2022 declaration. *See* Doc. 237-1 ¶¶ 14–15.

13. As I explained in that declaration, my understanding from speaking with others at BOP was that BOP believed that even if Surgeon 1 may not be able to perform all aspects of gender-confirmation surgery, the surgeon could coordinate Ms. Iglesias's care and refer her to other providers as needed. *Id.* ¶ 14. BOP believed that proceeding with the consultation would help to secure a surgeon to perform the vaginoplasty, as BOP's contractor had advised that Surgeon 1 had indicated that they refer patients to other providers for that procedure. *Id.* BOP also believed that it was appropriate to proceed with Surgeon 1 to provide Ms. Iglesias an opportunity to discuss the totality of procedures involved in gender-confirmation surgery and for Surgeon 1 to accept Ms. Iglesias as a

5

patient for whichever procedures they could perform. *Id.* ¶ 15. I understand that Surgeon 1 discussed options for breast augmentation and facial feminization with Ms. Iglesias, determined that they would be helpful in treating Ms. Iglesias's gender dysphoria, and that BOP has agreed to provide these surgeries to Ms. Iglesias. *Id.* I understand that Dr. McLearen is addressing these issues in more detail in her declaration in response to the Court's April 18, 2022 show-cause order.

14. As noted above, I take my obligations to the Court seriously. I understand that the Court has expressed concern with BOP's representations in this case but can assure the Court that I did not knowingly withhold any information from the Court or Ms. Iglesias. Rather, I always tried to relay all relevant information that was provided to me as completely and accurately as possible.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this _29th_ day of June, 2022.

                                                          _____
                                                          JENNA EPPLIN