IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (a.k.a., CRISTIAN NOEL IGLESIAS), <br><br> Plaintiff, <br><br> vs. <br><br> IAN CONNORS, ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 19-cv-00415-NJR <br> ) <br> ) <br> ) <br> ) |

### DECLARATION OF GREGG FEARDAY

I, Gregg Fearday, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as Health Systems Specialist for the BOP's Residential Reentry Branch of the Reentry Services Division. I have held my current position since December 2014. I have been employed by the BOP since April 1994.

2. I am aware the Court ordered the Parties to "file a joint status report updating the Court on significant developments related to the surgeries described [in the Court's May 31, 2022 Stipulated Order] on Friday, June 10, 2022, and every four weeks thereafter, until the Parties believe that such joint status reports are no longer necessary, but in no case extending past Plaintiff's release from BOP custody." (Doc. 269).

3. I write now to update the Court about those developments that have occurred since my last declaration, dated September 2, 2022.

4. After Ms. Iglesias's escape from the Residential Reentry Center (RRC) and subsequent arrest by local authorities on August 21, 2022, she remained in the custody of local authorities. According to the state court website, her state charges were resolved on September 14,

1

2022.[1] In accordance with the detainer that had been lodged by United States Marshals Service (USMS), Ms. Iglesias was released by the state to USMS custody on September 21, 2022.

5. Currently, Ms. Iglesias is being temporarily housed at the Federal Detention Center in Miami, Florida. BOP is in the process of designating Ms. Iglesias to a BOP facility for service of the remainder of her federal sentence. After being received back into federal custody, the BOP updated Ms. Iglesias's sentence computation due to the pause in her sentence during her escape. Her new projected release date is January 22, 2023. Note, however, that this date may be subject to change because BOP is evaluating disciplinary charges resulting from the previously discussed escape and related misconduct that are pending against Ms. Iglesias. It is possible that resolution of those charges could result in the loss of Good Conduct Time credits, the loss of which would delay the projected release date. I am advised that Ms. Iglesias, through counsel, has expressed a desire to proceed first with Surgeon 2 (located in Chicago) and then with Surgeon 1 (located in Miami). Accordingly, BOP plans to transfer Ms. Iglesias to a facility near Chicago, Illinois, in an effort to facilitate an in-person consult and eventual surgery with Surgeon 2.

**Surgeon 1**

6. As noted previously, BOP had scheduled Plaintiff's first surgery with Surgeon 1 to occur on August 23, 2022, but that appointment was cancelled after Ms. Iglesias escaped from federal custody. On September 7, 2022, in response to an earlier question from Surgeon 1's office about how likely it would be that Ms. Iglesias could proceed with facial feminization in October, BOP advised that at that time, Ms. Iglesias was in state custody, and it was unclear exactly when Ms. Iglesias would return to BOP custody. It was therefore difficult to say with certainty if BOP would be able to send her for surgery with Surgeon 1 on the date proposed by Surgeon 1's office (October 7). BOP advised that it would keep everyone updated and would do its best to cancel 2 weeks

---

[1] Case information can be found at https://www2.miami-dadeclerk.com/cjis/CaseSearch.aspx. The case number is 13-2022-CF-015268-0001-XX.

before the surgery date if necessary, as we understand and appreciate Surgeon 1 and her staff's time. BOP respectfully requested that the October 7 appointment stay on the calendar at that time.

7. On September 7, 2022, Surgeon 1's office advised the October 7th date was already given to another patient and was no longer available. BOP was advised that Surgeon 1's staff would be meeting with Surgeon 1 that week to discuss the calendar for the rest of this year and would provide a new date for Ms. Iglesias, in November/December "hopefully if possible." On September 8, BOP asked its contractor to schedule surgery, and the contractor responded to Surgeon 1's office "Thank you. We would like to get her back on the schedule to get the first surgery completed. We realize she will likely need another consult as well. Can you let me know what the availability looks like please?"

8. Surgeon 1's office then responded on September 15, asking how soon Ms. Iglesias could proceed and if she was still in state custody. BOP responded on September 19, that Ms. Iglesias had not yet returned to BOP custody and that BOP was working to determine when Ms. Iglesias could proceed with Surgeon 1. BOP advised that it would keep Surgeon 1's office updated and get back to them as soon as possible. On September 20, BOP asked its contractor to confirm its understanding that the November/December dates would be for another consult and that any surgeries would not take place until next year. BOP's contractor advised BOP that Surgeon 1's office did say another consult would be needed and that the surgeries are "booked out" for the remainder of 2022.

**Surgeon 2**

9. Additionally, as reported previously, BOP, through its contractor, has been following up with Surgeon 2's office to see if Surgeon 2 will move forward with Ms. Iglesias as a patient and schedule an in-person consult. On September 7, 2022, BOP, through its contractor, answered a question about whether Ms. Iglesias would require a law enforcement escort for appointments.

10. On September 15, 2022, BOP's contractor advised Surgeon 2's office that BOP would like to have something tentatively scheduled, and asked for dates for a face to face consult (or alternatively via telemedicine) and potential dates for the surgery as well.  Surgeon 2's office responded the same day that until the patient is reviewed by Surgeon 2, the office is unable to provide a surgical date.  Surgeon 2's office advised they believed Surgeon 2 is booked until early next year for surgery but depending on the consult it could be sooner.  Surgeon 2's office then advised the next step for Ms. Iglesias is an in-person consult and asked whether either October 19 or October 26 would work as those are the next available options for scheduling.  On September 19, 2022, BOP, through its contractor responded that BOP would like to accept either of those appointments and that BOP will continue to communicate as we move closer to the appointment dates, and will advise if any issues arise.  BOP later advised its preference would be for October 26 and was subsequently advised that the appointment is scheduled for that date.

**Hair removal**

11. On September 29, 2022, for purposes of a treatment plan moving forward, BOP inquired with the Dermatologist in Miami who had previously provided Ms. Iglesias with laser hair removal. The Dermatologist advised Ms. Iglesias has completed four sessions; the first session was for one area, and the last three sessions were two areas. The Dermatologist recommends a series of 6 to 8 sessions and then maintenance, the scheduling of which depends on how hormonal changes affect hair growth.  The Dermatologist further advised that no laser hair removal is permanent, rather it is permanent reduction. BOP is researching options for hair removal in Chicago.

12. BOP remains committed to providing Ms. Iglesias appropriate care and continues working diligently with our contractor.  While Ms. Iglesias was not in BOP custody, BOP could not control the medical care provided while she was in the custody of local authorities.

5

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief.  Executed on this 30th day of September 2022.

                                                                           Gregg Fearday