IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTINA NICHOLE IGLESIAS (also known as CRISTIAN NOEL IGLESIAS),<br><br>　　　　Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, MICHAEL CARVAJAL, CHRIS BINA, IAN CONNORS, DAN SPROUL, JEFFERY ALLEN, ALIX MCLEAREN, THOMAS SCARANTINO, and DONALD LEWIS,<br><br>　　　　Defendants. | Case No. 19-CV-415-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

The Court, BOP, and DOJ attorneys have spent a significant amount of time addressing the following events:

1. The Postponement of the July 28, 2021 Hearing;

2. The Misrepresentation of the Court's Order in Doc. 147;

3. The Postponement of the October 19, 2021 Hearing;

4. The Estimates in Time to Meet the Court's Discovery Orders;

5. The Absence of Any Evidence Presented At or Before the Preliminary Injunction Hearing Regarding TEC's Process for Individuals Housed in Halfway Houses;

6. Defendants' Only Witness Provided Inaccurate Testimony on November 22, 2021;

7. The Failure to Clarify Dr. Leukefeld's Inaccurate Testimony Until the Court Ordered Defendants to Show Cause;

8. BOP's Actions Regarding the Court's Preliminary Injunction Orders;

9. TEC's Failure to Meet to Evaluate Iglesias's Request for GCS;

10. TEC's Delay of its Decision;

11. BOP's Failure to Take Steps to Reasonably and Diligently Comply with the Order;

12. The Repeated Assertion that Defendants Located an Appropriate Surgeon Since February 14, 2022;

13. BOP's Keeping the Appointment with the First Surgeon After Learning the First Surgeon Only Refers Patients Out to Others for Vaginoplasty; and

14. DOJ Attorney's continued representations in Docs. 204, 212, 220, 221, 227, 229, and 231.

(Docs. 187, 191, 198, 199, 206, 214, 238, 280). Indeed, the Court has ordered BOP and the DOJ attorneys to show cause why sanctions should not be imposed on two occasions. (Docs. 187, 238). The Court held one show cause hearing on February 22, 2022. (Doc. 200).

For the following reasons, the Court's orders to show cause contained in its February 10, 2022 and April 18, 2022 Memorandum and Orders (Docs. 187, 238) are discharged, and no sanctions will be issued for contempt or otherwise against BOP or its counsel.

## DISCUSSION

### I. BOP Contempt

Coercive contempt sanctions are no longer appropriate because of the parties' settlement. *See Ohr ex rel. Nat'l Lab. Rels. Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 479 (7th Cir.

2015) ("If a civil contempt order is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises terminates"). Additionally, Iglesias has received vaginoplasty and breast augmentation. (Doc. 312).

Compensatory sanctions are inappropriate because there is no evidence of a need for further compensation to Iglesias. Thus, the Court agrees that "in situations where the case is terminated by a comprehensive settlement between the parties of all claims raised in the case, a complainant relinquishes all claims to compensation for losses they may have suffered due to an opponent's alleged violation of a court order." (Doc. 280, p. 42); *see also Backo v. Loc. 281, United Bhd. of Carpenters & Joiners of Am.*, 438 F.2d 176, 182 (2d Cir. 1970) ("When the parties choose to effect an out-of-court settlement of a case, unless the settlement specifically states otherwise, all elements of that litigation are deemed settled, including any right to seek a compensatory civil contempt judgment").

## II.     BOP Sanctions

"A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W.&S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (internal quotation marks omitted). "'Bad faith' or 'vexatious' conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct can suffice." *Cavelle v. Chicago Transit Auth.*, 2020 WL 133277, at *4 (N.D. Ill. Jan. 13, 2020).

Starting with its Opposition to Plaintiff's Motion for a Preliminary Injunction, BOP asserted that it "has evaluated plaintiff's suitability for gender affirming surgery and

reached the professional *medical* penological judgment that she is not currently suitable." (Doc. 100, p. 16) (emphasis added). But at the preliminary injunction hearing, the Court learned that the administrative body that makes the decision—the TEC—did not evaluate or treat Iglesias. (Doc. 175, p. 165). In fact, the TEC never conducted a psychological or psychiatric evaluation of Iglesias. (*Id*. at p. 147). And the TEC never provided Iglesias medical treatment (*Id*. at p. 160). The TEC's members are not experts at treating gender dysphoria. (*Id*.). And, while the BOP has consulted experts in gender dysphoria in the past, BOP had not consulted an expert in Iglesias's situation. (*Id*. at p. 134). This was a misrepresentation.[1]

Additionally, BOP misrepresented its process for evaluating and ordering GCS for inmates. Defendants already "acknowledge[d] that [they] failed to clearly communicate the different referral processes for inmates in secure facilities versus halfway houses, and [they] recognize[d] that the Court crafted its preliminary injunction based on its understanding of the process and then felt misled when [they] filed [their] notice describing a different process." (Doc. 206, pp. 14-15).

The Court also finds that BOP misrepresented that the first surgeon was an appropriate surgeon. "BOP recognizes that in its eagerness to make the Court aware of its progress [ ] it may not have made it sufficiently clear that the contractor's identification of what it believed to be a suitable surgeon for Ms. Iglesias was just the beginning, not

---

[1] Indeed, BOP admits "[t]he TEC does not have authority to decide as a medical matter that an inmate should undergo GCS." (Doc. 280, p. 35).

the culmination, of the process of identifying a surgeon (or surgeons) or provide Ms. Iglesias with the medical treatment she requires." (Doc. 280, p. 49). Indeed, BOP explained:

> [B]etween February 11 and 14, 2022, BOP received conflicting messages from its contractor about the procedures Surgeon One does and does not perform. On February 11 BOP received an e-mail from the contractor stating that Surgeon One performs two to three "bottom" surgeries each month, and on February 14 an e-mail forwarded by the contractor from Surgeon One stating, "We do not offer vaginoplasty yet." McLearen July 1 Decl. ¶ 53. BOP did not clearly communicate that information to DOJ counsel, however, out of concern on Dr. McLearen's part that releasing too much information about Surgeon One at that early stage of the contractor's outreach could result in accusations of sole-sourcing a contract in violation of federal procurement laws.

(*Id*. at p. 51).

Nonetheless, further discussion into BOP's sanctionable conduct is unwarranted based on the circumstances of this case. As an exercise of the Court's discretion, the Court will not impose sanctions on Defendants beyond their litigation defeat and the substantial amount BOP has agreed to pay Plaintiff's counsel, "which is inclusive of any and all attorney's fees and costs, including any and all expert witness fees and any other expenses in this Case." (Doc. 267-2, p. 3).

**III.   DOJ Sanctions**

The Court likewise will not sanction the DOJ or its attorneys individually. The actions and representations of DOJ attorneys have been discussed, but there is no evidence that the attorneys' actions were "fraudulent, dilatory, or taken in bad faith." *Kovilic Const. Co. v. Missbrenner*, 106 F.3d 768, 774 (7th Cir. 1997). The Court recognizes

the DOJ attorneys' professionalism during this stressful time—and agrees that it would be valuable to "includ[e] this matter as a case study in future trainings for the entire Branch, so that current and future Branch attorneys can benefit and learn from this unfortunate experience." (Doc. 280-5, p. 6).

**IT IS SO ORDERED.**

DATED:  April 6, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**